**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF MASSACHUSETTS
OFFICE OF THE CLERK
1101 THOMAS P. ONEILL, JR., FEDERAL BUILDING
10 CAUSEWAY STREET
BOSTON, MASSACHUSETTS 0222-1074

**JAMES M. LYNCH**
CLERK

(617)565-6051
FAX (617)565-6087

**WORCESTER OFFICE**
395 MAIN STREET
WORCESTER, MA 01608-2076
(508)793-0518
FAX (508)793-0541

10/29/04

United States District Court
District of Massachusetts
Harold D. Donohue Federal Building & Courthouse
595 Main Street
Worcester, MA 01608

Bankruptcy Case/Adversary Preceeding In Re: Engage Inc. 03-43655
Bankruptcy Case/Adversary Preceeding In Number:

The following is being transmitted to your court:

☑ Copy of Notice of Appeal with Order

☑ Copy of Bankruptcy Docket

☑ Copy of Election to have appeal heard in District Court

☑ Copy of Motion for Leave to Appeal With/Without Objections

☐ Other

**Please acknowledge receipt of these documents by signing the copy of this letter and returning it to this office for filing.**

○ United States Bankruptcy Court
1101 O'Neill Federal Building
10 Causeway Street
Boston, MA 02222-1074

● United States Bankruptcy Court
211 Donohue Federal Building
595 Main Street
Worcester, MA 01608-2076

Date:10/29/04

James M. Lynch
Clerk, U.S. Bankruptcy Court

By the Court,

Anne Harmon
Deputy Clerk
508-770-8913

Receipt is acknowledged of the enclosures referred to above.

District Court Docket Number: **04-40225**

Date: _10/29/04_

By: _Ana B Roland_
Deputy Clerk

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Western Division)

**04-40225**

In re                                         )
                                              )
ENGAGE INC., et al.,                          )     Case Nos. 03-43655-JBR
                                              )          et seq.
                                              )
                        Debtors.              )     Chapter 11
                                              )

## NOTICE OF APPEAL OF ROPES & GRAY LLP

Ropes & Gray LLP ("R&G"), a creditor and party in interest herein, appeals under 28

U.S.C. § 158(a) from the order of the bankruptcy judge [Docket No. 594] sustaining the

objection of the Liquidating Supervisor to the Claim of R&G (the "Lien Order"), entered on

October 8, 2004. A copy of the order and the accompanying Memorandum of Decision [Docket

No. 593] are attached hereto as Exhibit A and Exhibit B, respectively.

The names of all parties to the order appealed from and the names, addresses, and

telephone numbers of their respective attorneys are as follows:

Party:          Craig J. Jalbert, as Liquidating Supervisor
Attorney:       Andrew Z. Schwartz
                Foley Hoag LLP
                Seaport World Trade Center West
                155 Seaport Boulevard
                Boston, Massachusetts 02110
                (617) 832-1000


ROPES & GRAY LLP

Dated: October 18, 2004

D. Ross Martin (BBO#629853)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110
Telephone:   617-951-7000
Telecopier:   617-951-7050

9562010_1

10-18-04
6/14e

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| ENGAGE, INC., *et al.*, | ) | |
| | ) | Case Nos.03-43655-JBR through 03- |
| DEBTOR | ) | 43657-JBR, 03-43659-JBR |
| | ) | 03-43661-JBR and 03-43662-JBR |
| | ) | (Jointly Administered) |
| | ) | (Substantively Consolidated) |

For the reasons set forth in the Memorandum of Decision, the Liquidating Supervisor's

Objection to the Secured Claim of Creditor Ropes & Gray [# 520] is SUSTAINED.

Dated: October 8, 2004

Joel B. Rosenthal
United States Bankruptcy Judge

ach-engage-2.TIF

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

IN RE:                                   )
                                         )    Chapter 11
ENGAGE, INC., *et al.*,                  )
                                         )    Case Nos.03-43655-JBR through 03-
        DEBTOR                           )    43657-JBR, 03-43659-JBR
                                         )    03-43661-JBR and 03-43662-JBR
                                         )    (Jointly Administered)
_____ )    (Substantively Consolidated)

### MEMORANDUM OF DECISION

This matter is before the Court on Liquidating Supervisor Craig Jalbert's Objection

to the Secured Claim of Creditor Ropes & Gray [# 520], Ropes & Gray's Response [# 563], and

the Liquidating Supervisor's Reply thereto [# 569]. The Court held a hearing and took the matter

under advisement. For the reasons set forth herein, the Liquidating Supervisor's Objection is

hereby SUSTAINED.

### BACKGROUND

On June 19, 2003, Engage, Inc. and five of its wholly-owned domestic subsidiaries

(hereinafter the "Debtors") filed their voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* Ropes & Gray (hereinafter "Ropes"), which

provided legal services to the Debtors in connection with the prosecution of various patents, was

scheduled as a creditor in the Debtors' bankruptcy. Shortly after the petition was filed,

substantially all of the Debtors' assets were sold to JDA Software Group, Inc. (hereinafter

"JDA"). Ropes alleges it has an attorney's charging lien pursuant to Mass. Gen. Laws, ch. 221,

§ 50 in "(i) certain patents and patent prosecution actions of the Debtor and (ii) cash proceeds of

-1-

a prepetition sale of other patents."[1]

Ropes timely filed a proof of claim asserting an attorney's charging lien in the amount of $108,737.11; $45,198.29 was for unpaid fees and expenses allegedly secured by the proceeds of the JDA Sale, with the remaining $63,538.82 for unpaid fees and expenses allegedly secured by the proceeds of the pre-petition sale. Ropes also asserted a secured claim in the amount of $737.50 for fees and expenses associated with collection costs pursuant to 11 U.S.C. § 506(b) as well as a general unsecured claim in the amount of $51,400.30 on account of licensing work for which Ropes was unpaid.

This Court entered the Order Confirming Debtors' Seconded Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code on May 20, 2004. Paragraph 13 of this Confirmation Order authorized Craig Jalbert to serve as Liquidating Supervisor. His timely Objection to Ropes' secured claim and the Responses thereto ensued.

**DISCUSSION**

Confronting this Court is a question of first impression in this jurisdiction: whether the Massachusetts charging lien statute, M.G.L. c. 221 § 50[2], applies to proceeds derived from the

---

[1] This pre-petition sale took place on February 20, 2003, approximately four months prior to the date of Debtors' Chapter 11 petition, and yielded $100,000 in cash proceeds.

[2] The Massachusetts attorney's charging lien statute, M.G.L. c. 221 § 50, provides as follows:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon request of the client or of the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien; provided, that the provisions of this

-2-

sale of patents and patent applications. For the reasons that follow, the Court concludes it does not.

Before determining whether Ropes has an attorney's charging lien under Massachusetts law, however, the Court first must grapple with a threshold question: does Massachusetts law even apply? Ropes' office is located in Massachusetts yet the administrative proceedings on which Ropes bases its liens took place before the United States Patent and Trademark Office in Virginia. This initial determination is of paramount importance, as the substantive law that applies will dictate the Court's analysis of the issues before it.

Ropes and the Liquidating Supervisor assume that Massachusetts law applies and base their arguments on this assumption. Indeed, neither party even raises the possibility that substantive law other than that of Massachusetts should apply to this dispute. In support of its argument that it has an attorney's charging lien on certain patents, patent prosecution actions and cash proceeds, Ropes cites decisions from Minnesota and New York, the only jurisdictions to address the issue of whether an attorney's lien could attach to patents. See *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.*, 295 N.W.2d 514 (Minn. 1980); *Hedman, Gibson & Costigan, P.C. v. Tri-Tech Systems International, Inc.*, 1994 WL 18536 (S.D.N.Y. 1994), modified by 1995 WL 555702 (S.D.N.Y. 1995).

In both cases, the attorney's sued under the charging lien statutes of the state in which their offices were located. In this instance, Ropes assumes that the Massachusetts charging lien statute applies, presumably because that is where its office is located. Nevertheless, at no point did either court rule that this is the controlling factor and, upon review of various authorities, this

---

sentence shall not apply to any case where the method of the determination of attorneys' fees is otherwise expressly provided by statute.

-3-

Court concludes that it is not.

A litany of authority suggests that the determination of what state law should apply to a given proceeding is a qualitative analysis determined by the "law of the state in which the legal services are to be performed." *Matter of Fitterer Engineering Associates, Inc.*, 27 B.R. 878, 879-80 (Bankr. E.D. Mich. 1983), citing 7 Am.Jur.2d § 351 at 354 (holding that "the existence and effect of an attorney's lien is governed by the law of the state in which the legal services are to be performed"). That statement, however, begs the question of where "services are performed" when a law firm located in one state represents its client in a different jurisdiction. "The controlling law is that of the state where the judgment was recovered rather than the law of the state where the collection is attempted." John S. McCann, *The Attorney's Lien in Massachusetts*, 69 Mass.L.Rev. 68, 75 (1984) (citations omitted) (hereinafter "McCann"). *See also Lehigh & N.E.R. Co. v. Finnerty*, 61 F.2d 289, 290 (3rd Cir.), *cert. denied* 287 U.S. 668, 53 S.Ct. 292, 77 L.Ed. 576 (1932) ("The contract does not expressly state where the parties intended that suit should be brought, but the employment of an attorney of New Jersey and the bringing of suit in New Jersey indicate that the parties intended that from the first that suit should be brought in that state. And being brought there, the laws of that state control as to the lien."); *U.S. v. 72.71 Acres of Land, More or Less, Situate in Montgomery County, Md.*, 167 F. Supp. 512, 516 (D.Md. 1958) (applying Maryland law in federal condemnation proceeding brought in Maryland and "where the attorneys' contract for compensation was made in and intended to be performed mostly in Maryland."). *See generally* E.H. Schopler, *Conflict of Laws as to Attorneys' Liens*, 59 A.L.R.2d 564 (1954)

> The general rule that the true test for the determination of the proper law of contract is, in the absence of a countervailing public policy, the intent of the parties, express or implied, has been applied in deciding questions of choice of law with respect to

-4-

> attorney's liens. However, a contract between an attorney and his
> client does not ordinarily contain express provisions as to the
> governing law. The generally accepted rule is that the existence
> and effect of an attorney's lien arising under such a contract is
> governed by the law of the place where the contract is to be
> performed, that is, where the contemplated action or proceeding is
> to be instituted, and not by the place where the contract was
> made...

*Id. (footnotes omitted).*

That the law of the jurisdiction where judgment entered should control seems obvious:

but for the judgment, there is no right to enforce a charging lien. Applying Massachusetts choice

of law for contract actions leads to the same conclusion.

"In determining what state law pertains, the court must employ the choice-of-law

framework of the forum state....." *Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d

1, 4 (1st Cir. 1994). Since the underlying right to attorneys' fees arises from its contract, express

or implied, with the Debtor, [3] the Massachusetts choice of law governing contracts should apply.[4]

In *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622, 631-32, 473 N.E.2d 662, 668-69

(1985), the Supreme Judicial Court adopted a "functional"approach, based in large part upon the

Restatement (Second) of Conflicts of Law. It is essentially a "significant contacts" test.[5]

---

[3] The charging lien statute is not merely procedural; it creates substantive rights. This creation of substantive rights, at the very least, raises the specter that the statute is substantive. "Where it is not clear that a rule of law is procedural in the Commonwealth for choice-of-law purposes, we take a functional approach in determining the choice-of-law issues, using established conflicts criteria and considerations." *See Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631-636, 473 N.E.2d 662 668-69 (1985)." *Cosme v. Witin Mach. Works, Inc.*, 417 Mass. 463, 645, 632 N.E.2d 832, 834 (1994).

[4] Ropes has not suggested that its contract with the debtor, if it is express, designated Massachusetts law as controlling any fee disputes.

[5] In the absence of a choice of law by the parties, their rights "are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties...." *See Restatement (Second) of Conflicts of Law §§ 186-87 (1971).*

-5-

Although the only contact with Virginia may be that the Patent and Trademark Office is located there, the filing of the patent applications and obtaining of some patents are fundamental to Ropes' assertion of its lien. But for the patent applications, all of the fees are unsecured. Therefore, while there are more contacts with Massachusetts, the Court finds that the most significant and meaningful one is with Virginia.

Moreover, since, as a general rule, state statutes should not be given extraterritorial effect, *Davis v. Whitt*, 211 Ky. 142, 277 S.W. 311 (1925), applying Virginia law to proceedings commenced there, whether in a state or federal forum, furthers this policy. As such, Virginia, not Massachusetts, law applies.

The Virginia attorney's charging lien statute provides, in pertinent part, as follows:

> A. Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract or for a cause of action for annulment or divorce, may contract with any attorney to prosecute the same, and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause or action or claim. When any such contract is made, and written notice of the claim of such lien is given to the opposite party, his attorney or agent, any settlement or adjustment of the cause of action shall affect the existing law in respect to champertous contracts. In causes of action for annulment or divorce, an attorney may not exercise his claim until the divorce judgment is final and all residual disputes regarding marital property are concluded. Nothing in this section shall affect the existing law in respect to exemptions from creditor process under federal or state law.
>
> B. Notwithstanding the provisions in subsection A, a court in a case of annulment or divorce may, in its discretion, exclude spousal support and child support from the scope of the attorney's lien.

By its very clear language, Virginia law gives a lien only to actions based upon tort or contract claims or in divorce actions; it is far more limited than Massachusetts law. Under Virginia law, Ropes has no lien.

-6-

Even if Massachusetts law were to apply, however, Ropes would not have an attorney's charging lien in the subject matter in question, as it fails to meet the statutory requirements of the Massachusetts attorney's charging lien statute. As an initial matter, Ropes argues at length that M.G.L. ch. 221 § 50 applies to administrative proceedings. The Court agrees with this assertion. The statute, by its express terms, covers proceedings "before any state or federal department, board or commission." Additionally, the Massachusetts Court of Appeals ruled that an attorney may be entitled to an attorney's lien under M.G.L. ch. 221 § 50 if he has "appeared and rendered representation in a Federal or State court or designated administrative agency." *Gormley v. Wilkins*, No. 00-P-1490, 2002 WL 31204473 at ***2 (Mass. App. Ct. October 3, 2002). Nevertheless, three additional requirements must also be met: the attorney's fees must be reasonable; a judgment, decree or other order must have entered in connection with the attorney's representation; the judgment must have been in the client's favor. *Id.* Ropes appeared and rendered representation in the United States Patent and Trademark Office, a federal administrative agency, on behalf of the Debtors. If Massachusetts law applied, there is thus little doubt that M.G.L. c. 221 § 50 would apply to Ropes if the other statutory requirements were met.

The statute and the tribunals to interpret M.G.L. c. 221 § 50 have uniformly required the entry of a judgment, decree or order in accordance with the statute's plain meaning in order for an attorney's lien to become enforceable. *In re Rothwell*, 159 B.R. 374, 380 (Bankr. D. Mass. 1993) (holding that "for an attorney's lien to be enforceable, a condition subsequent must occur, namely the entry of a judgment or other decree in the client's favor to which the lien can attach"). Furthermore, the lien "binds the *judgment or money decree* for payment of expenses incurred and for services rendered by an attorney with respect to the particular action or suit." *Torphy v. Reder*, 357 Mass. 153, 156, 257 N.E.2d 435, 437-38 (1970) (*emphasis added*).

-7-

Ropes asserts that a patent is "a valuable property right that must be issued by the government via administrative proceeding." [Response ¶8]. Ropes further asserts that "patent prosecution work is precisely the kind of work most in need of the support and incentives created by an attorney's lien." *Id.* Ropes falls short, however, of convincing the Court that patent prosecution work falls within the purview of the unambiguous terms of the statute. A patent issues upon notice of allowance to the applicant and payment of a fee, 35 U.S.C. § 151, and grants the patent holder the right to exclude others from making, using, offering for sale, selling or importing a particular invention or process. 35 U.S.C. § 154(a)(1). A patent does not order anyone to do anything or pay any money. Even if a patent could be deemed an order, however, the proceeds derived from its sale do not stem from the actual order of the Patent Office, but rather from the sale of the underlying intellectual property protected by the patent. Since allowance of the applications did not itself require or trigger the payment of any money and no judgment, decree or other order entered in connection with Ropes' representation, it thus follows that no charging lien attached.

Ropes has no greater success with respect to the patent applications. In Massachusetts, when an attorney commences an action on behalf of his client in a state or federal court or agency, an inchoate lien enters in the attorney's favor. *In re Albert*, 206 B.R. 636, 639 (Bankr. D. Mass. 1997); *In re Leading Edge Prods.*, 121 B.R. 128, 131 (Bankr. D. Mass. 1990). The lien matures and becomes choate when a judgment, decree or other order is entered in the client's favor. *Id. See also Torphy v. Reder*, 257 N.E.2d at 437-38 (Mass.1970) (holding that the attorney's lien attaches to and "binds the judgment or money decree for payment of expenses incurred and for services rendered by an attorney with respect to the particular action or suit"). Based on the foregoing, Ropes thus held an inchoate lien for each action it filed on behalf of the

-8-

Debtors in the United States Patent and Trademark Office, a federal administrative agency.[6]

Ropes acknowledges that its liens are "inchoate prior to the actual judgment, degree or other order." [Response ¶11]. It urges, however, that Section 363 of the Bankruptcy Code permits the sale of its property free and clear of the attorney's lien in exchange for a lien on the proceeds. According to Ropes, the inchoateness of its lien is overcome by other events that can make the lien choate, such as "realization of benefit for the client and immediately susceptible valuation." [Response ¶18]. Ropes then goes on to analogize its position with the manner in which bankruptcy courts "routinely deal" with other types of inchoate liens, such as real estate tax liens. On these assertions, Ropes is on unstable ground. The matter before the Court deals with patents, not real estate taxes. Furthermore, the Massachusetts attorney's charging lien statute and the courts interpreting it have clearly stated that an attorney's lien can only exist and become choate when all of the elements are met. Ropes' inchoate lien would thus only mature and become choate if the patents, patent applications and the proceeds deriving therefrom rightly constitute a "judgment, decree or other order" pursuant to M.G.L. c. 221 § 50. They do not.

In attempting to persuade this Court that it has a valid and enforceable attorney's lien, Ropes also points to two instances in which courts in other jurisdictions have ruled that an attorney's lien attaches to patents. In *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.*, 295 N.W.2d 514 (Minn. 1980), the Supreme Court of Minnesota applied the Minnesota charging lien statute, Minn. Stat. § 481.13, which provides, in relevant part, as follows:

> (a) An attorney has a lien for compensation whether the agreement

---

[6] Under Massachusetts law, each patent must be examined independently because an attorney's lien is only valid with respect to the particular proceeding in which it arises. It cannot be transformed into a general lien for any other services. *Id.* at 438.

ach-engage-1.TIF

> for compensation is express or implied (1) upon the cause of action
> from the time of the service of the summons in the action, or the
> commencement of the proceeding, and (2) upon the interest of the
> attorney's client in any money or property involved in or affected
> by any action or proceeding in which the attorney may have been
> employed, from the commencement of the action or proceeding,
> and, as against third parties, from the time of filing the notice of
> the lien claim, as provided in this section.

The language encompassed in the Minnesota statute is significantly broader than that contained

in the Massachusetts statute. Indeed, if the Massachusetts statute were identical to that of

Minnesota, the Court's analysis, and indeed its conclusion, assuming *arguendo* Massachusetts

law applies, would be different. Nevertheless, the Court must interpret the statute at issue here

as it is plainly written, distinguishing it from other statutes that by their terms are broader in

scope. As the Massachusetts statute does not include within its ambit "any money or property

involved in or affected by any action or proceeding in which [the attorney] may have been

employed," this Court is simply unable to find an enforceable attorney's lien on the proceeds

associated with representation unaccompanied by a "judgment, decree or order."

Ropes also points to *Hedman, Gibson & Costigan, P.C. v. Tri-Tech Systems*

*International, Inc.*, 1994 WL 18536 (S.D.N.Y. 1994), modified by 1995 WL 555702 (S.D.N.Y.

1995), in which the court applied New York law in granting the attorneys a charging lien in their

client's patents. The New York statute, N.Y.Jud.L. § 475 provides as follows:

> From the commencement of an action, special or other proceeding
> in any court or before any state, municipal or federal government,
> except a department of labor, or the service of an answer
> containing a counterclaim, the attorney who appears for a party has
> a lien upon his client's cause of action, claim or counterclaim,
> which attaches to a verdict, report, determination, decision,
> judgment or final order in his client's favor, and the proceeds
> thereof in whatever hands they may come; and the lien cannot be
> affected by any settlement between the parties before or after
> judgment, final order or determination. The court upon the petition

-10-

of the client or attorney may determine and enforce the lien.

Although the language of the New York statute is slightly more akin to the language of the Massachusetts statute, it includes within its purview a "verdict, report, determination [and] decision." The finding of an enforceable lien under such a statute is much more plausible than it is under a statute with far more limited language. Furthermore, the *Hedman* court made no distinction between the intellectual property and the patent that protected it. This distinction is of paramount importance because a lien must attach to proceeds from a "judgment, decree or order," not to the proceeds resulting from a client's interest in property it already owns. *Petition of Rosenman & Colin*, 850 F.2d 57, 61, 11 Fed.R.Serv. 595, 599 (NY.1988); *Ekelman v. Marano*, 167 N.E. 211, 212, 251 NY 173, 174 (N.Y.1929); *Theroux v. Theroux*, 145 A.D.2d 625, 536 N.Y.S.2d 151, 153 (2d Dep't. 1988); *Matter of Golden*, 125 A.D.2d 942, 510 N.Y.S.2d 340 (4th Dept 1986); *Desmond v. Socha*, 38 A.D. 2d 22, 24, 327 N.Y.S.2d 178, 180 (3d Dept 1971), aff'd, 31 N.Y.S.2d 687, 337 N.Y.S.2d 261, 289 N.E.2d 181 (1972); *Snitow v. Jackson*, 4 Misc.2d 351, 158 N.Y.S.2d 304, 306 (N.Y.Sup.Ct. 1956); *In re Schick*, 215 B.R. 13, 15 (Bankr. S.D.N.Y. 1997). Equally important, neither the Minnesota nor the New York court found an attorney's lien to attach to the proceeds of patent applications. The Court knows of no authority in this jurisdiction providing an attorney with a lien simply in the subject matter of his client's cause of action. Indeed, for an attorney's charging lien to attach, the plain language of the statute mandates that there be a "judgment, decree or other order."

The Court finds unpersuasive Ropes' assertion that a patent, patent application or patent prosecution (or, for that matter, the proceeds stemming therefrom) constitutes a "judgment, decree or other order." Faced squarely with this issue, Judge Gabriel refused to "torture the plain meaning of G.L. c. 221, § 50" in holding that proceeds must result from the judgment, order or

-11-

decree in order for a choate attorney's lien to attach. *In re Leading Edge*, 121 B.R. at 132 .

Ropes acknowledges yet argues that it was merely in "passing *dictum*" that the attorney's lien at

issue in *In re Leading Edge* attached "only to proceeds of a judgment and not to proceeds of the

action." (Response ¶17). Ropes asserts that this "dictum" is incorrect and invites the Court to

repudiate it. The Court declines the invitation. As an initial matter, the Court disagrees with

Ropes' characterization that this was merely "passing *dictum*." More than a mere passing matter

in *In re Leading Edge* was how the phrase "proceeds derived therefrom" applied to a "judgment,

decree or other order." *In re Leading Edge*, 121 B.R. at 131. Additionally, other courts

confronted with this very issue have read the plain meaning of the statute in a manner consistent

with Judge Gabriel's reading. Consequently, the "passing dictum" found in *In re Leading Edge*

and its progeny interpreting M.G.L. c. 221 § 50 will remain in full force and effect.

**CONCLUSION**

The Court need not go any further. Even if Massachusetts law applies to this dispute, and

this Court rules it does not, Ropes has nothing more than an inchoate lien in the proceeds of its

patents, applications and patent prosecution actions. Ropes' claim is not secured and the

Objection of the Liquidating Supervisor is SUSTAINED.

A separate order will issue.


Dated: October 8, 2004

Joel B. Rosenthal
United States Bankruptcy Judge


-12-


ach-engage-1.TIF