UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
            :

In re:                           :

ENGAGE INC., et al.,          :      Case Nos. 03-43655-JBR,
            :                      *et seq.*
            :

          Debtors.    :      Chapter 11
            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
            :

ROPES & GRAY LLP, Appellant   :
            :
            :

         v.           :      Case No. 04-cv-40225-DPW
            :

CRAIG J. JALBERT,        :
*as Liquidating Supervisor,*  Appellee  :
            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER CERTIFYING LEGAL QUESTIONS TO THE
SUPREME JUDICIAL COURT OF MASSACHUSETTS PURSUANT TO
<u>THE UNIFORM CERTIFICATION OF QUESTIONS OF LAW RULE</u>**

      Pursuant to Supreme Judicial Court Rule 1:03, the Uniform Certification of Questions of

Law Rule, and upon motion of a party in the cause, the United States District Court for the

District of Massachusetts certifies the following questions to this honorable Supreme Judicial

Court.  Such questions are proper for certification because they are determinative of the above

captioned cause pending before the District Court and it appears to the District Court that there is

no controlling precedent in the decisions of this court.

- 1 -

## I.  QUESTIONS OF LAW TO BE ANSWERED

1.  When a Massachusetts lawyer is representing a Massachusetts client before a federal administrative agency, is the existence of an attorney's lien established by Massachusetts law or by the law of the state in which the federal agency's office happens to be located?

2.  Does chapter 221, section 50 of the Massachusetts General Laws grant a Massachusetts attorney a lien on patents and patent applications for patent prosecution work performed on behalf of a client?

3.  As a matter of Massachusetts statutory or common law, when a Massachusetts attorney has a lien on a particular cause of action or administrative proceeding, and the action or administrative rights are sold during the pendency of such action or proceeding (e.g., the sale of receivables during a collection action or sale of a patent application), is the attorney's lien extinguished or does it attach to the proceeds of the sale?

## II.  NATURE OF THE CONTROVERSY IN WHICH THE QUESTIONS AROSE

1.  The certified questions arose in the context of a dispute between a liquidating supervisor in a Chapter 11 bankruptcy proceeding and a former attorney for the debtor who asserts a claim for unpaid bills, including a secured claim with certain patents, patent applications and sale proceeds thereof as collateral.  The liquidating supervisor objected to the attorney's asserted secured claim.

2.  Ropes and Gray, LLP ("R&G") performed legal services, including prosecution of patents and patent applications, for Engage, Inc. and certain of its subsidiaries.

3.  On June 19, 2003, Engage, Inc., five of its wholly-owned domestic subsidiaries, and their administratively and substantively consolidated estates (collectively, the "Debtors") filed their petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.*  Shortly before the petition date, the Debtors sold a number of their patents and patent applications to a third party in an arm's length transaction for a price of $100,000 (the "Pre-Bankruptcy Patent Sale").  Many of the patents and patent applications sold in the Pre-Bankruptcy Patent Sale had been filed and prosecuted by R&G.  After the petition date, the

Debtors sold substantially all of their remaining assets for $2 million (the Post-Bankruptcy

Patent Sale" and, together with the Pre-Bankruptcy Patent Sale, the "Patent Sales"), a substantial

portion of which was allocated to intellectual property consisting almost entirely of patents and

patent applications that had been filed and prosecuted by R&G.

4. R&G filed a timely proof of claim in the Debtors' bankruptcy asserting a claim of

$160,874.91 in total for legal services, of which $108,737.11 was for work performed in

prosecuting patent applications for the Debtors.[1]  R&G has consistently maintained that pursuant

to Mass. Gen. Laws ch. 221 § 50 (the "Massachusetts Attorney's Lien Statute")[2] the portion of

its claim ($108,737.11) resulting from patent prosecution work is secured by an attorney's lien in

the patents and patent applications which were the subject of the work.   R&G further maintains

that because such patents and patent applications were sold in the Patent Sales, R&G now has a

lien in the proceeds of such sales.  R&G acknowledges that the remaining portion of its claim

($52,137.80) is unsecured.

5. On May 20, 2004, the Bankruptcy Court entered an Order Confirming the Debtors'

Second Amended Plan of Liquidation (the "Plan"), and the Plan became effective on or about

June 2, 2004.  Under the Plan, the Liquidating Supervisor is charged with, inter alia, any and all

objections to claims.  The Plan officially reserved $108,737.11 in cash pending the resolution of

the dispute over whether R&G's claim is secured.

---

[1] Some of R&G's patent prosecution work on behalf of the Debtors resulted in patents being granted, while in other instances, the patent applications remained pending as of the petition date.

[2] The relevant text of the statute provides:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom.  Mass. Gen. Laws ch. 221, § 50.

6. On August 4, 2004, the Liquidating Supervisor filed an objection to the secured portion of R&G's claim, arguing that the Massachusetts Attorney's Lien Statute does not create lien in favor of R&G in the patents and patent applications which were the subject of R&G's legal services because such statute is not applicable in the patent prosecution context.

7. On September 10, 2004, R&G filed a Response to the Liquidating Supervisor's Objection, arguing that the Massachusetts Attorney's Lien statute was indeed applicable in the patent context.

8. On October 8, 2004 the Bankruptcy Court entered a Memorandum of Decision concluding, *sua sponte*, that under Massachusetts choice of law principles, the Virginia attorney's lien statute applied rather than the Massachusetts Attorney's Lien Statute even though there was no connection to Virginia other than the fact that the U.S. Patent and Trademark office is located in Virginia. The Bankruptcy Court went on to hold that under the Virginia statute, R&G did not hold an attorney's lien. The Bankruptcy Court held in the alternative that, even if the Massachusetts Attorney's Lien Statute were applicable, R&G did not have a lien pursuant thereto. Finally the Bankruptcy Court held that the intervening sales, both pre-and post- petition would necessarily extinguish any attorney's lien R&G could assert.

9. On October 18, 2004, R&G appealed the Bankruptcy Court's decision to the United States District Court for the District of Massachusetts.

III. THE LEGAL LANDSCAPE

*A. Choice of Law*

1. In their briefs and at oral argument in the Bankruptcy Court, both R&G and the Liquidating Supervisor assumed and accepted that the existence of R&G's attorney's lien was determined by reference to Massachusetts law.

- 4 -

2.  The Bankruptcy Court, however, *sua sponte* held that because the United States Patent and Trademark office is located in Virginia, and the patents in question were issued out of such office, the Virginia attorney's lien statute applied.

3.  Citing *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622 (1985), the Bankruptcy Court explained that this Supreme Judicial Court has adopted a "functional" approach to choice of law analysis.  Such approach is based in large part on the Restatement (Second) of Conflicts of Law §§186-87 (1971), which explains that in the absence of a choice of law by the parties, their rights "are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties…."  The Bankruptcy Court characterized this approach as "essentially a significant contacts test."

4.  The Bankruptcy Court went on to hold that although the only contact with Virginia is that the Patent and Trademark Office is located there, that is the most significant contact because the patent applications are filed and patents are obtained through such office.

5.  There is no controlling precedent in the decisions of the Supreme Judicial Court addressing the issue of whether the location of a federal agency may determine the choice of law when all other relevant contacts are with Massachusetts, and this issue is determinative of the case because it appears that the Virginia attorney's lien statute would not create a lien in favor of R&G.

6.  Accordingly, this District Court certifies the following question to the Supreme Judicial Court:

> When a Massachusetts lawyer is representing a Massachusetts client before a federal administrative agency, is the existence of an attorney's lien established by Massachusetts law or by the law of the state in which the federal agency's office happens to be located?

*B.  Attorney's Liens in the Context of Patent Prosecution*

1.  The Bankruptcy Court alternatively held that, even if Massachusetts Law applied, R&G holds no lien because neither a patent nor a patent application is a "judgment, decree or other order" within the meaning of the Massachusetts Attorney's Lien Statute and therefore the statute does not apply in the patent context at all.

2.  In so holding, the Bankruptcy Court purported to distinguish two cases from other jurisdictions holding that attorney's liens may attach to patents. *See Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.,* 295 N.W.2d 514 (Minn. 1980); *Hedman, Gibson & Costigan, P.C. v. Tri-Tech Systems International, Inc.,* 1994 WL 18536 (S.D.N.Y. 1994), modified by 1995 WL 555702 (S.D.N.Y. 1995).

3.  In support of its argument, R&G cited *Webber v. Napolitano*, 320 Mass. 765 (1947), in which the Supreme Judicial Court affirmed a Superior Court's order that under the Massachusetts Attorney's Lien Statute an attorney's lien attaches to a lodging-house license obtained in a municipal administrative proceeding.  The Bankruptcy Court did not cite or discuss *Webber* in its decision.

4.  There is no controlling precedent in the decisions of this court addressing the issue of whether the Massachusetts Attorney's Lien Statue applies in the patent context, and this issue is determinative of the case because the secured status of R&G's claim hinges on whether R&G may assert a lien in the Debtor's patens and/or patent applications.

5.  Accordingly, the District Court certifies the following question to the Supreme Judicial Court:

> Does chapter 221, section 50 of the Massachusetts General Laws grant a Massachusetts attorney a lien on patents and patent applications for patent prosecution work performed on behalf of a client?

*C. Effect of Sale*

1.  The Massachusetts Attorney's Lien Statute provides that an attorney shall have a lien "upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order entered in his client's favor … and upon the proceeds derived therefrom." Mass. Gen. Laws. ch. 221, § 50. R&G argued that this language conveys a lien on the action, such that when the action is sold (e.g., a sale of a receivable in collection, or sale of a patent application) that the attorney's lien continues in the proceeds of the sale.

2.  However, citing *In re Leading Edge Prods. Inc.*, 121 B.R. 128 (Bankr. D. Mass. 1990), the Bankruptcy Court held that the phrase in the Massachusetts Attorney's Lien Statute "proceeds derived therefrom" modifies only "judgment, decree or other order" and not "cause of action, claim or counterclaim." Combining this interpretation of the statute with the Bankruptcy Court's additional holding that a patent is not a "judgment, decree or other order," the Bankruptcy Court has interpreted the Massachusetts Attorney's Lien Statue in such a way that a sale of a patent or patent application necessarily extinguishes an attorney's lien.

3.  There is no controlling precedent in the decisions of this court addressing the issue whether a sale extinguishes an attorney's lien under the Massachusetts Attorney's Lien Statute, and this issue is determinative of the case because all of the patents and patent applications to which R&G asserts a lien have been sold.

4.  Accordingly, the District Court certifies the following question to the Supreme Judicial Court:

> As a matter of Massachusetts statutory or common law, when a Massachusetts attorney has a lien on a particular cause of action or administrative proceeding, and the action or administrative rights are sold during the pendency of such action or proceeding (e.g., the sale of receivables during a collection action or sale of a patent application), is the attorney's lien extinguished or does it attach to the proceeds of the sale?

- 8 -

WHEREFORE the District Court for the District of Massachusetts hereby certifies the

foregoing questions to the Supreme Judicial Court.


SO ORDERED.

DATED: November _____, 2004.                    _____

                                                                      Judge Douglas P. Woodlock
                                                                      Presiding Judge