UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | ) |
| | ) |
| ENGAGE INC., <u>et al</u>., | ) Case Nos. 03-43655-JBR, |
| | ) *et seq.* |
| Debtors. | ) Chapter 11 |
| | ) |
| ROPES & GRAY LLP, Appellant | ) |
| | ) |
| v. | ) Case No. 04-cv-40225-DPW |
| | ) |
| CRAIG J. JALBERT, | ) |
| *as Liquidating Supervisor*,  Appellee | ) |

## **BRIEF OF APPELLANTS**

TABLE OF CONTENTS

Page

STATEMENT OF BASIS OF APPELLATE JURISDICTION..........................................1

STATEMENT OF ISSUES ...................................................................................1

STATEMENT OF STANDARD OF REVIEW ..........................................................2

STATEMENT OF THE CASE................................................................................2

STATEMENT OF FACTS .....................................................................................5

SUMMARY OF ARGUMENT ...............................................................................6

ARGUMENT ......................................................................................................8

I.    When a Massachusetts lawyer represents a Massachusetts client in a
      federal administrative proceeding, the existence of any attorney's lien
      should be established by reference to Massachusetts law, not to the law of
      the jurisdiction in which the federal administrative office happens to be
      located.................................................................................................8

      A.    Conflict of laws principles do not apply in this case, which
            involves the enforceability of a state-law attorney's lien in the
            context of a federal administrative proceeding.............................8

      B.    Proper application of Massachusetts conflicts of law principles
            would lead to the choice of Massachusetts law to determine the
            status of R&G's lien....................................................................9

      C.    The Bankruptcy Court's arbitrary choice of law analysis resulted in
            an unconstitutional violation of due process.............................12

II.   The Massachusetts Attorney's Lien Statute expressly protects the interests
      of attorneys for services rendered and appearances made in administrative
      proceedings such as applications for patents before the Patent and
      Trademark Office..............................................................................13

      A.    The plain language of the Massachusetts Attorney's Lien Statute
            supports its application to patent prosecution work by
            Massachusetts lawyers.................................................................13

      B.    Precedent from the Massachusetts Supreme Judicial Court favors a
            ruling that R&G had a valid lien on the Debtors' patents and patent
            applications prior to their sale...................................................15

      C.    Persuasive authority from other jurisdictions supports the
            extension of *Webber* to patents and patent applications. .........17

III.  Massachusetts law clearly provides that an attorney's lien attaches to the
      proceeds of a client's claims and counterclaims asserted in a cause of
      action or administrative proceeding, as well as to the proceeds of an
      administrative decision or court judgment...................................20

      A.      The Massachusetts law of attorney's liens unequivocally grants R&G a lien on the proceeds of the Debtors' patent applications, as it would on the proceeds of any other claims or counterclaims asserted in a cause of action or administrative proceeding..................... 20

      B.      Under Massachusetts law, an attorney's lien becomes enforceable upon the sale of the subject of the lien..................................................... 23

IV.    R&G's lien on the proceeds of the Post-Petition Sale are protected by the Bankruptcy Code and the Bankruptcy Court's Order approving the Post-Petition Patent Sale. ................................................................................. 25

      A.      The Bankruptcy Court's Ruling contradicts the clear intention of the Bankruptcy Code to protect secured creditors in a free-and-clear sale............................................................................................. 25

      B.      The Post-Petition Sale rendered R&G's liens against the patent applications sold therein choate as a matter of both State Law and Bankruptcy Law................................................................................. 27

CONCLUSION............................................................................................. 29

## TABLE OF AUTHORITIES

### CASES

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981)...............................................................12,13

*Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241 (1993)........................................................29

*Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622 (1985)........................................10

*Chimko v. Lucas (In re Lucas),* Civ. A. 03-40277-WGY, 2004 WL 2430089
    (D. Mass. Sept. 30, 2004) ....................................................................................2

*Friedman and Atherton v. Leading Edge Prods., Inc. (In re Leading Edge Prods., Inc.)*,
    Civ. A. No. 90-13112-Z, 1991 WL 97459 (D. Mass. May 28, 1991) ......... 21-22n4

Golfview Dev. Ctr. v. All-Tech Decorating Co. (In re Golfview Dev. Crt.),
    309 B.R. 758 (Bankr. N. D. Ill. 2004) ................................................................28

*Gormley v. Wilkins*, No. 00-P-1490, 2002 WL 31204473 (Mass. App. Ct.
    October 3, 2002) (unpublished disposition)................................................. 13-14

*Hartford Accident & Indem. Co. v. Delta & Pine Land Co.*, 292 U.S. 143 (1934)...........12

*Hedman, Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l Inc.*,
    No. 92 Civ. 2757, 1994 WL 18536 (S.D.N.Y. 1994) ....................................18, 26

*Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970) .......................................................12

*Home Ins. Co. v. Dick*, 281 U.S. 397, (1930) ....................................................................13

*In re Albert*, 206 B.R. 636 (Bankr. D. Mass. 1997)...........................................................23

*In re American Colonial Broadcasting, Corp.*, 758 F.2d 794 (1st Cir. 1985)..................20

*In re Engage, Inc.*, 315 B.R. 208 (Bankr. D. Mass 2004). .................9, 9n2, 14, 15, 19, 23

*In re Leading Edge Prods., Inc.*, 121 B.R. 128 (Bankr. D. Mass. 1991)..................... 21-22

*LaRoche v. Amoskeag Bank (In re LaRoche)*, 969 F.2d 1299 (1st Cir. 1992).....................2

*Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods, Inc.*,
    295 N.W.2d 514 (Minn. 1980)......................................................................17, 18

*United States v. New Britain*, 347 U.S. 81 (1954) ...........................................................24

*Webber v. Napolitano*, 320 Mass. 765 (1947) ........................................................... 15-17

## STATUTES

11 U.S.C. § 101(5) .................................................................................................27

11 U.S.C. § 361 ...............................................................................................25, 26

11 U.S.C. § 363 ...............................................................................................25, 26

11 U.S.C. § 364 .......................................................................................................25

11 U.S.C. § 506(a) ..................................................................................................27

28 U.S.C. § 158(a) ....................................................................................................1

28 U.S.C. § 158(c) ....................................................................................................1

Mass. Gen. Laws. Ch. 221, § 50 ..............................................2, 3, 13, 20, 22

Mass. Gen. Laws, ch. 221, § 50A ..................................................................... 22-23

Mass. Rev. Laws, ch. 165, § 48 (1902)..................................................................14

N.Y. Judiciary Law § 475 (McKinney 1983) .................................................18

## SECONDARY AUTHORITY

*Black's Law Dictionary* (Abridged, 6th ed.)................................................14, 19

Robert A. Leflar, *American Conflicts Law* § 93 (1977). ......................................9

John S. McCann, "The Attorney's Lien in Massachusetts" 69 Mass. L.J. 68 (1984) ......17

3 Queenan, et al., *Chapter 11 Theory and Practice:*
        *A Guide to Reorganization* § 16.03 (1994)...............................................25

Restatement of the Law (Second) Conflict of Laws § 2  (1971). .......................9

Restatement of the Law (Second) Conflict of Laws § 6 (1971). ..................9, 10

Restatement of the Law (Second) Conflict of Laws § 188 (1971). ..................10

E.H. Schopfer, Annotation, *Conflict of Laws as to Attorney's Liens,*
        59 A.L.R.2d 564 (1954).............................................................................8

Social Security Administration website
        (www.ssa.gov/oha/r1/boston.html)................................................. 11-12

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

Ropes & Gray LLP ("R&G") is a creditor and party in interest in *In re Engage, Inc.*, Case Nos. 03-43655-JBR *et seq.* in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Cases").  R&G appeals from the order of the bankruptcy judge disallowing in its entirety the secured claim of R&G against the proceeds of certain patents and patent applications (the "Lien Order").  The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a), which grants the district courts of the United States jurisdiction to hear appeals "from final judgments, orders and decrees" of bankruptcy judges.  28 U.S.C. § 158(a)(1).[1]  R&G timely filed its election pursuant to 28 U.S.C. § 158(c)(1)(A) to have the appeal from the Lien Order heard by this Court, which is the "district court for the judicial district in which bankruptcy judge is serving." 28 U.S.C. § 158(a).

## STATEMENT OF ISSUES

1.     When a Massachusetts lawyer is representing a Massachusetts client before a federal administrative agency, is the existence of an attorney's lien established by Massachusetts law or by the law of the state in which the federal agency's office happens to be located?

---

[1] Even if the Lien Order were not a final order, this Court would have jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(3), which grants district courts of the United States jurisdiction to hear appeals, with leave of the court, from interlocutory orders and decrees.  Simultaneously with its Notice of Appeal, R&G filed the Protective Motion of Ropes & Gray LLP under 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8003 for Leave to File Interlocutory Appeal (the "Protective Motion").  R&G filed the Protective Motion solely as a protective measure in anticipation of any argument by the Liquidating Supervisor regarding the appealability of the Lien Order.  Indeed, the Liquidating Supervisor apparently disputes that the Lien Order is a final order of the bankruptcy judge.  However, the Liquidating Supervisor agrees that this is a proper interlocutory appeal as to two of the four appellate issues identified by R&G.

2.    Does chapter 221, section 50 of the Massachusetts General Laws grant a Massachusetts attorney a lien on patents and patent applications for patent prosecution work performed on behalf of a client?

3.    As a matter of Massachusetts statutory or common law, when a Massachusetts attorney has a lien on a particular cause of action or administrative proceeding, and the action or administrative rights are sold during the pendency of such action or proceeding (e.g., the sale of a receivable during a collection action or sale of a patent application), is the attorney's lien extinguished or does it attach to the proceeds of the sale?

4.    As a matter of federal bankruptcy law, when a Massachusetts attorney has a lien on a particular cause of action or administrative proceeding, and the action or administrative rights are sold pursuant to a bankruptcy court order that specifically provided that liens attach to the proceeds of the sale, is the attorney's lien extinguished by the sale or does it attach to the proceeds of the sale?

## STATEMENT OF STANDARD OF REVIEW

The decision below disallowed R&G's secured claim in the Bankruptcy Cases as a matter of law.  On appeal a district court reviews the bankruptcy judge's conclusions of law *de novo*.  *See, e.g.*, *LaRoche v. Amoskeag Bank (In re LaRoche)*, 969 F.2d 1299, 1301 (1st Cir. 1992); *Chimko v. Lucas (In re Lucas)*, Civ.A. 03-40277-WGY, 2004 WL 2430089, at *4 (D. Mass. Sept. 30, 2004).

## STATEMENT OF THE CASE

Engage, Inc. and certain of its affiliates (the "Debtors") commenced voluntary bankruptcy cases on June 19, 2003 (the "Petition Date").  Prior to the Petition Date, R&G provided legal services to the Debtors, including the filing and prosecution of patent

applications.  Some of those applications were granted, while others were pending as of the Petition Date.  The Debtors were companies located in Massachusetts, and all legal work performed by R&G was performed in Massachusetts.  As of the Petition Date, R&G was owed $160,874.91 in total for legal services, of which $108,737.11 was for work performed in prosecuting patent applications for the Debtors.

Shortly prior to the Petition Date, the Debtors sold a number of their patents and patent applications to a third party in an arm's length transaction for a price of $100,000 (the "Prebankruptcy Patent Sale").  The patents and patent applications sold in the Prebankruptcy Patent Sale had been filed and prosecuted by R&G.

After the Petition Date, pursuant to Section 363 of the Bankruptcy Code, the Debtors sold substantially all of their remaining assets, including their remaining patents and patent applications, for $2 million.  A substantial portion of the sale price was allocated to intellectual property consisting almost entirely of patents and patent applications that had been filed and prosecuted by R&G (the "Postbankruptcy Patent Sale" and, together with the Prebankruptcy Patent Sale, the "Patent Sales").

R&G was not paid prior to the Petition Date for the $108,737.11 of legal work relating to the patents and patent applications sold in the Patent Sales, nor has R&G since been paid for such work.

Since the very commencement of the bankruptcy case, R&G has consistently asserted that, pursuant to the Massachusetts Attorney's Lien Statute, Mass. Gen. Laws c.221, § 50 (the "Massachusetts Attorney's Lien Statute"), it has an attorney's lien to secure payment for its approximately $108,000 of patent prosecution work (but not for other services it rendered to the Debtors).  R&G asserts as a matter of state law and

3

bankruptcy law that such lien attached to the cash proceeds of the Patent Sales (with respect to the patents and patent applications sold at each respective sale).

R&G has filed a timely proof of claim in the bankruptcy case asserting these amounts, breaking down the amounts owed on a patent-by-patent basis.

The Bankruptcy Court has separately held that R&G was adequately protected in the bankruptcy case.  In connection with the Postbankruptcy Patent Sale the Bankruptcy Court (i) ordered that the patents and patent applications be sold free and clear of liens, with liens attaching to the sale procceds, and (ii) expressly required that a cash reserve be held in an amount equal to R&G's asserted lien, pending litigation over the validity of the such lien.

On or about May 20, 2004 the Bankruptcy Court confirmed a plan of liquidation for the Debtors, pursuant to which the Debtors (and their Liquidating Supervisor who is now charged with handling the remaining liquidation) are required to continue to maintain a $108,737.11 reserve pending the outcome of litigation over the R&G attorney's lien.

The Liquidating Supervisor objected to the R&G claim, specifically on the grounds that R&G has no attorney's lien.  In his claim objection the Liquidating Supervisor also objected to the overall amount of R&G fees, but only on grounds that R&G had not attached any detailed time records to its proof of claim.  R&G did not file those detailed records publicly in order to preserve the attorney-client privilege (which the Liquidating Supervisor controls, as successor to the Debtor), and has since provided full copies of its detailed time and expense records to the Liquidating Supervisor.

4

The parties briefed to the Bankruptcy Court a number of issues relating to the applicability of the Massachusetts Attorney's Lien Statute to patent prosecution work, and to whether such a lien attaches to the proceeds of the sale of patent applications. No party questioned that the Massachusetts Attorney's Lien Statute applied to the dispute.

At oral argument before the Bankruptcy Court, the Liquidating Supervisor and R&G agreed that the issues before the court — as to whether R&G had an attorney's lien for its patent prosecution work and whether the lien attached to the cash proceeds being held in reserve by the Liquidating Supervisor — were essentially a summary judgment motion by the Liquidating Supervisor. In the order being appealed from, the Bankruptcy Court sustained the Liquidating Supervisor's claim objection, thus granting his summary judgment motion and disallowing R&G's secured claim.

The Bankruptcy Court gave several grounds for its ruling. First, it concluded, *sua sponte* and without ever having raised the issue with the parties, that Massachusetts choice of law principles required the application of Virginia attorney's-lien law to this dispute simply because the federal government has chosen to locate the United States Patent and Trademark Office in the Commonwealth of Virginia. Second, the Bankruptcy Court concluded that the Massachusetts Attorney's Lien Statute does not apply to patent prosecution work done by lawyers, and that even if it did, that the attorney's lien was effectively stripped away from pending patent applications when the Debtor sold those applications in the Patent Sales, leaving R&G with no lien protection.

## STATEMENT OF FACTS

The issues presented for review relate to the facts set forth in the Statement of the Case.

## SUMMARY OF ARGUMENT

In denying R&G's secured claim in its entirety, the Bankruptcy Court stripped R&G of valuable protections granted by the Massachusetts legislature for patent prosecution work under the plain terms of the Massachusetts Attorney's Lien Statute. Although professing to apply the straightforward meaning of statutory provisions and related case law, the Bankruptcy Court arrived at its conclusions via an inappropriate detour into Virginia law and by disregarding the clear textual signs given by the legislature that the provisions of the Massachusetts Attorney's Lien Statute apply broadly to work done by Massachusetts attorneys in state and federal administrative proceedings, including patent prosecution work.

Although the parties neither briefed nor argued the choice of law below, the Bankruptcy Court *sua sponte* concluded that Massachusetts conflict of laws principles required that Virginia law determine whether R&G has a lien on the Debtors' patents and patent applications. This decision rested primarily on secondary authority setting forth a general rule that applies to attorney's liens in state-to-state conflicts only. In contrast, the Commonwealth of Virginia had no interest in R&G's appearing before the United States Patent and Trademark Office that required the protection of conflict of laws doctrine. The application of Virginia law to R&G's contract with the Debtors defies all reasonable expectations and should therefore be reversed.

In its alternative holding under the provisions of the Massachusetts Attorney's Lien Statute, the Bankruptcy Court ignored the plain meaning of the text and overlooked relevant authority from the Massachusetts Supreme Judicial Court suggesting that the statute should apply broadly to work done before administrative agencies. Instead, the Bankruptcy Court favored an artificially restrictive reading of the Massachusetts

6

Attorney's Lien Statute and imposed an extraneous requirement found nowhere in the statute that an attorney must secure a judgment, decree or other order that triggers the payment of money to have an enforceable attorney's lien.  Finally, the Bankruptcy Court also improperly distinguished persuasive authority from other jurisdictions finding that the similarly worded attorney's lien statutes of Minnesota and New York covered patent prosecution work.

In the view of the Bankruptcy Court, even if the Massachusetts Attorney's Lien Statute were held to apply to patents and the proceeds thereof, it does not apply to the proceeds of patent applications.  The Bankruptcy Court made this determination on a textual analysis that is flatly contradicted by related provisions of the Massachusetts Attorney's Lien Statute, as well as by common sense.  The Massachusetts legislature expressed a clear intent that an attorney has a statutory lien on the proceeds of any claim, counterclaim or cause of action or, in this case, a patent application.

Lastly, the Bankruptcy Court's holding that R&G's lien on the Debtors' patent applications evaporated upon the closing of the Post-Petition Patent Sale directly contravenes the provisions of Section 363 of the Bankruptcy Code and the Bankruptcy Court's own order, which expressly provided that R&G's lien would attach to the proceeds of such sale.

The Bankruptcy Court's ruling with respect to the Massachusetts Attorney's Lien Statute and the Bankruptcy Code finds no support in the text of either statute.  Moreover, the Bankruptcy Court's decision thwarts the purpose of these statutes and the protections they afford to attorneys and secured creditors.  Consequently, the Bankruptcy Court's decision should be reversed on all issues presented in this appeal.

## ARGUMENT

I.    **When a Massachusetts lawyer represents a Massachusetts client in a federal administrative proceeding, the existence of any attorney's lien should be established by reference to Massachusetts law, not to the law of the jurisdiction in which the federal administrative office happens to be located.**

A.    Conflict of Laws Principles do not apply in this case, which involves the enforceability of a state-law attorney's lien in the context of a federal administrative proceeding.

Contrary to the holding of the Bankruptcy Court, the dispute between R&G and the Liquidating Supervisor over the existence of R&G's attorney's lien on the proceeds of the Patent Sales poses no genuine choice of law question.  None of the Bankruptcy Court's "litany of authority" addresses circumstances  in which an attorney from one state is representing a client before a federal administrative body.  *In re Engage, Inc.*, 315 B.R. 208, 211 (Bankr. D. Mass 2004).  Indeed, the overarching authority cited by the Bankruptcy Court for its selection of Virginia law, an *American Law Reports* annotation, explicitly excludes from its scope the application of state attorney's lien law in federal proceedings:  "*Because not involving a conflict of laws problem in the customary sense of the term*, the question whether the existence, scope, or enforcement of an attorney's lien in a federal court is governed by state or federal law is not discussed herein."  E.H. Schopfer, Annotation, *Conflict of Laws as to Attorney's Liens*, 59 A.L.R.2d 564 (1954) (emphasis added).

The simple black-letter law of conflicts leads to the inescapable conclusion that Massachusetts law governs here and that this situation presents a false conflict.  As a matter of first principles, conflict of laws doctrine addresses a balancing of the policies and sovereign interests of the forum state, on the one hand, and other interested states, on the other.  *See Restatement (Second) of Conflict of Laws* § 6 (1971).  When R&G

8

represented the Debtors before the Patent and Trademark Office, the Commonwealth of
Virginia had no interest whatsoever in the proceedings. The prosecution of the Debtors'
patents involved no question of Virginia state law, nor did it implicate any local rules of
trial administration. *See id.* § 6 cmt. e. The entire proceedings were governed by federal
law and federal rules. Conflict of laws doctrine rests on a presumption of significant
relationships to more than one state. *See id.* § 2. Far from significant, the relationship
between R&G's patent prosecution work and the Commonwealth of Virginia is merely
fortuitous.[2] Such an absence of interest gives rise to what is known as a "false conflict."
Robert A. Leflar, *American Conflicts Law* § 93 (1977).

B.    Proper application of Massachusetts conflicts of law principles would lead
to the choice of Massachusetts law to determine the status of R&G's lien.

Even if a conflict of laws issue arises as a result of R&G's representation of the
Debtors before the Patent and Trademark Office, proper application of choice of law
principles would lead to the conclusion that Massachusetts law establishes the existence
of R&G's attorney's lien. The Bankruptcy Court properly determined that, in the event a
conflict of laws were to arise in connection with the Liquidating Supervisor's objection to
R&G's claim, Massachusetts choice of law principles would govern the resolution of
such conflict. However, instead of applying the rules set forth in the applicable cases of
the Massachusetts Supreme Judicial Court and weighing the relevant factors, the
Bankruptcy Court for some reason fixed its attention on the alleged "extraterritorial effect
of Massachusetts law" in the application of the Massachusetts Attorney's Lien Statute to
R&G's claim. *In re Engage* at 213.

---

[2] Even the Bankruptcy Court admitted this, stating that "the only contact with Virgina may be that
the Patent and Trademark Office is located there." *In re Engage, Inc.*, 315 B.R. 208, 213 (Bankr. D. Mass
2004).

Massachusetts conflict of laws principles are clear and well-developed. Massachusetts courts follow the guidelines set forth in the *Restatement (Second) of Conflict of Laws* when making a choice of law. *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 632 (1985). In the absence of an effective choice of law between two contracting parties (which is admitted by both parties here), the "rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." *Restatement* § 188(1). The principles stated in Section 6 of the *Restatement* include:

> (a)    the needs of the interstate and international systems,
>
> (b)    the relevant policies of the forum,
>
> (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d)    the protection of justified expectations,
>
> (e)    the basic policies underlying the particular field of law,
>
> (f)    certainty, predictability and uniformity of result, and
>
> (g)    ease in the determination and application of the law to be applied.

*Id.* § 6(2). In addition, the contacts to be taken into account in applying these principles to determine what law governs a particular issue in contract include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2).

When a Massachusetts lawyer is representing a Massachusetts client before a federal administrative board that happens to be located in another state, Massachusetts

choice of law principles require the application of Massachusetts law to claims for

payment by attorneys.  Contrary to a traditional state-to-state conflict of laws, giving

effect to the Massachusetts Attorney's Lien Statute in such circumstances poses no threat

to the interstate system: there is no impairment of any other state's sovereignty by the

application of Massachusetts law nor is there any question of full faith and credit as

between states.  Furthermore, the policies and interests of Massachusetts roundly

outweigh any corresponding policies and interests of the state in which the federal

administrative office happens to be located.  Members of the Massachusetts bar and their

clients expect that Massachusetts law will govern their relationship.

As noted above, the Bankruptcy Court appears to have based its conflicts analysis

not on any of these factors, but rather on some fear regarding the extraterritorial

application of Massachusetts law.[3]  In fact, the Bankruptcy Court's choice of law would

appear to lead to a dramatic extraterritorial effect of Virginia law, along with whatever

rules the Virginia legislature and state judiciary promulgate for the attorney-client

relationship.  Under the Bankruptcy Court's ruling, Virginia attorney-client law now

governs the attorney-client relationship of every patent and trademark lawyer in the

nation.  Furthermore, under this mode of analysis, Rhode Island law will govern whether

the solo practioner in Taunton, Massachusetts who files a Social Security benefits appeal

can enforce an attorney's lien to get paid simply because the Hearing Office is in

Providence.  *See* Social Security Administration website,

www.ssa.gov/oha/r1/boston.html (residents of Attleboro, Fall River, Taunton and New

---

[3] The Bankruptcy Court raised the conflicts issue *sua sponte* and for the first time in its decision, and it did not have the benefit of briefing by the parties on this issue.

Beford areas must file appeals in Providence); *see also id.* (all appeals from Vermont are heard in New Hampshire).

Situations involving federal agencies are thus fundamentally different than the case of a Massachusetts lawyer representing a Massachusetts client in another state's court. When representing clients in the courts of a state other than Massachusetts, attorneys would expect that state's law to have an impact on their relationship with the client, as would the clients themselves. The attorney would be governed by the laws and courts of the other state, and, together with the client, would have availed himself of that state's courts, laws, and legal rules. However, this general rule for state actions defies all reasonable expectations when applied to patent prosecution work.

     C.    The Bankruptcy Court's arbitrary choice of law analysis resulted in an unconstitutional violation of due process.

Indeed, the contacts with the Commonwealth of Virginia are so tenuous that the application of Virginia attorney's lien law to R&G's contract with the Debtors is an unconstitutional violation of due process. The United States Supreme Court has consistently held that a choice of law of a state is unconstitutional if the state "has no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981); *see also Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 314 n.2 (1970) ("There must be at least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction."); *Hartford Accident & Indem. Co. v. Delta & Pine Land Co.*, 292 U.S. 143, 149 (1934) (holding application of Mississippi law to valid Tennessee insurance contract unconstitutional deprivation of due process when such application would render the

contract inoperative); *Home Ins. Co. v. Dick*, 281 U.S. 397, 407–08 (1930) (invalidating

application of Texas law to an insurance contract executed in Mexico by two Mexico

residents when neither Texas law nor the Texas courts were invoked for any purpose

other than the instant suit).  In the dispute between R&G and the Debtors, neither party

reverted to Virginia law or the Virginia federal or state courts for any purpose

whatsoever, even including the present litigation, rendering the Bankruptcy Court's *sua*

*sponte* application of Virginia law "arbitrary [and] fundamentally unfair." *Allstate*, 449

U.S. at 308.

II.    **The Massachusetts Attorney's Lien Statute expressly protects the interests of
       attorneys for services rendered and appearances made in administrative
       proceedings such as applications for patents before the Patent and
       Trademark Office.**

       A.    The plain language of the Massachusetts Attorney's Lien Statute supports
             its application to patent prosecution work by Massachusetts lawyers.

       The plain language of the Attorney's Lien Statute demonstrates that the

Massachusetts legislature intended its protections to apply to administrative proceedings.

In pertinent part, the Massachusetts Attorney's Lien Statute reads:

>      From the authorized commencement of an action, counterclaim or
>      other proceeding in any court, or appearance in *any proceeding*
>      *before any state or federal department, board or commission*, the
>      attorney who appears for a client in such proceeding shall have a
>      lien for his reasonable fees and expenses upon his client's cause of
>      action, counterclaim or claim, upon the judgment, decree or other
>      order in his client's favor entered or made in such proceeding, and
>      upon the proceeds derived therefrom.

Mass. Gen. Laws ch. 221, § 50 (emphasis added).  There can be no dispute that, by filing

applications for patents with the Patent and Trademark Office ("PTO") on behalf of the

Debtors, R&G attorneys made appearances and rendered legal services in proceedings

before a "federal department, board or commission."  *See, e.g.*, *Gormley v. Wilkins*, No.

13

00-P-1490, 2002 WL 31204473, at ***2 (Mass. App. Ct. October 3, 2002) (unpublished disposition) (stating that, to be entitled to an attorney's lien under the statute, a lawyer "must have appeared and rendered representation in a Federal or State court or *designated administrative agency*") (emphasis added).

The Bankruptcy Court agreed that the United States Patent and Trademark Office is a covered federal agency, but then grafted a requirement onto the statute that the administrative ruling must "trigger the payment of money." *In re Engage*, 315 B.R. at 214. However, the statute as in effect imposes no such requirement. To the contrary, the statute confers a lien on any "claim" and "claims" are precisely what the Debtors asserted in their patent applications. *See, e.g.,* Black's Law Dictionary at 169 (abridged 6th ed) ("In patent law . . . claims of a patent define the invention and the extent of the grant."). The current statute's language must be read in light of the statute it replaced — because the current statute broadens the lien. Prior to September 1, 1945, Massachusetts law recognized attorney's liens in only narrow circumstances:

> An attorney who is lawfully possessed of an execution, or who has prosecuted a suit to final judgment in favor of his client, shall have a lien thereon for the amount of his fees and disbursements in the cause . . . .

R.L. 1902 ch. 165, § 48 (text available in Mass. Gen. Laws. Ann. ch.221, § 50, statutory history annotation (West 1993). Certainly, this earlier version of the statute presumes that an enforceable attorney's lien required an order to pay money, either in the form of an execution or a final judgment. However, the current Massachusetts Attorney's Lien Statute, which was enacted in 1945, dramatically expanded statutory protections for attorney's fees by specifying, first, that attorneys who represent clients before administrative agencies are entitled to the protections of an attorney's lien and, second,

that the lien attaches upon the authorized commencement of any proceeding and not only

upon possession of an execution or entry of a final judgment.  There is no explicit or

implicit requirement that an order to pay a money judgment is required for an enforceable

attorney's lien to attach.  The 1945 amendment to the Massachusetts Attorney's Lien

Statute confirms that R&G had a valid lien on the Debtors' patents, patent applications,

and their proceeds from the filing of each respective patent application.

B.    Precedent from the Massachusetts Supreme Judicial Court favors a ruling that R&G had a valid lien on the Debtors' patents and patent applications prior to their sale.

The Bankruptcy Court flatly ignored Supreme Judicial Court case-law authority

when it ruled in the alternative that R&G would not have a lien on the proceeds of the

Debtors' patents and patent applications even under Massachusetts law.  Notwithstanding

the fact that the parties both briefed and discussed *Webber v. Napolitano*, 320 Mass. 765

(1947), the Bankruptcy Court professed to knowing "of no authority in this jurisdiction

providing an attorney with a lien simply in the subject matter of his client's cause of

action.  Indeed, for an attorney's charging lien to attach, the plain language of the statute

mandates that there be a 'judgment, decree or other order.'" *In re Engage, Inc.*, 315 B.R.

208, 216 (Bankr. D. Mass. 2004).   As discussed above, the statute imposes no such

requirement.

*Webber v. Napolitano* — again, ignored by the court below — involved a suit by

an attorney to recover fees for legal services against a client for whom he had obtained a

lodging house license from the municipal licensing board of Boston.   *Webber*, 320 Mass.

at 765.  The client filed a counterclaim alleging that the attorney had "unreasonably,

maliciously and without right retained possession of the lodging house keeper's license

… and despite repeated demands therefor … refused and neglected to turn over said

15

license to the [client] for a period of twenty (20) days." *Id.* As an affirmative defense to these allegations, the attorney asserted that he had had a valid lien on the license pursuant to the Massachusetts Attorney's Lien Statute. *Id.* The Massachusetts Superior Court dismissed the client's counterclaim, finding, among other things, that the attorney's fees were reasonable and that the lawyer's services in obtaining the lodging house license were for the benefit of the client. *Id.* These findings clearly show that the Superior Court's ruling on the counterclaim was grounded in the attorney's lien granted by the Massachusetts Attorney's Lien Statute. In particular, the Superior Court would not have needed to address the reasonableness of the attorney's fees or the favorable outcome for the client in a simple contract action outside this statutory framework.

On appeal from the dismissal, the Massachusetts Supreme Judicial Court affirmed the lower court's decision in a rescript opinion. The court held that the dismissal of the counterclaim was not erroneous and, further, was not inconsistent with the admitted facts, including the client's demands that the attorney turn over the lodging house license before his fees had been paid and the attorney's refusal to do so. *Id.* Moreover, in the opinion of the Court, the attorney would have had a valid lien on the lodging house license even absent the protections of the Massachusetts Attorney's Lien Statute: "The admitted facts . . . did not require a finding that the [attorney] retained the license 'unreasonably, maliciously and without right.' This is true whether or not the plaintiff had any right under [the Massachusetts Attorney's Lien Statute]." *Id.*

The *Webber* case directly supports the conclusion that the attorney's lien applies to patent prosecution work. Like a lodging house license, a patent is a sovereign grant of a valuable commercial property right. In *Webber*, the Supreme Judicial Court recognized

16

that an attorney is entitled to a lien on economically valuable assets that are created by

virtue of that attorney's services.  Indeed, the Court acknowledged the existence of the

lien both under the Massachusetts Attorney's Lien Statute and as a matter of general

equitable principles.  In this respect, an attorney's lien is much like a mechanic's lien,

which grants a laborer security in property for the value the laborer has created by

improving such property.  *See* John S. McCann, "The Attorney's Lien in Massachusetts"

69 Mass. L. Rev. 68, 74 (1984).  R&G's efforts on behalf of the Debtors filing

applications in and securing patents from the Patent and Trademark Office resulted in a

clear benefit to the client, creating valuable property rights that the Debtors were

subsequently able to sell for value both before and after the Petition Date.

     C.    Persuasive authority from other jurisdictions supports the extension of
*Webber* to patents and patent applications.

     Both the Supreme Court of Minnesota and the United States District Court for the

Southern District of New York have held, respectively, that the Minnesota and New York

attorney's lien statutes apply to patent prosecution work.  In *Schroeder, Siegfried, Ryan*

*& Vidas v. Modern Elec. Prods., Inc.*, 295 N.W.2d 514 (Minn. 1980), a law firm brought

a foreclosure suit against the successor in interest of a client for whom the firm had

obtained a patent in proceedings before the Patent and Trademark Office.  The trial court

held that the attorney had a valid charging lien under the Minnesota attorney's lien statute

and ordered that the patent be sold to satisfy the lien.  *Id.* at 515.  The Minnesota

attorney's lien statute provides, in pertinent part, that an attorney has a lien for

compensation:

> Upon the cause of action from the time of the service of the
> summons therein, or the commencement of the proceeding, and
> upon the interest of his client in any money or property involved in

> or affected by any action or proceeding in which he may have been
> employed, from the commencement of the action or proceeding . . .

*Id.* at 516.  On appeal, the Minnesota Supreme Court held that the patent firm did

have a valid charging lien, in part on the specific grounds that the word

"proceeding" was broad enough to encompass the procedures of the Patent and

Trademark Office in respect of a patent application.  *Id.*

Similarly, in *Hedman, Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l Inc.*, No. 92

Civ. 2757, 1994 WL 18536 (S.D.N.Y. 1994), the United States District Court for the

Southern District of New York granted a law firm's motion to conduct a public judicial

sale of patents on the grounds that the firm had a valid charging lien under the New York

attorney's lien statute.   Section 475 of the New York Judiciary Law provides:

> From the commencement of an action, special or other proceeding
> in any court or before any state, municipal or federal department,
> except a department of labor, or the service of an answer
> containing a counterclaim, the attorney who appears for a party has
> a lien upon his client's cause of action, claim or counterclaim,
> which attaches to a verdict, report, determination, decision,
> judgment or final order in his client's favor, and the proceeds
> thereof in whatever hands they may come; and the lien cannot be
> affected by any settlement between the parties before or after
> judgment, final order or determination. The court upon the petition
> of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475 (McKinney 1983).  The court emphasized that the terms of the

New York statute applied broadly and, not least of all, to "proceedings before federal

departments that require complex legal representation." *Hedman*, at *4.

The Bankruptcy Court based its alternative holding on the notion that the

Massachusetts Attorney's Lien Statute is narrower than the attorney's lien statutes of

Minnesota and New York in a manner dispositive of this case.  However, the Bankruptcy

Court applies its plain language analysis selectively.  On the one hand, it argues that the

18

*Schroeder* decision hinges on the fact that the Minnesota statute authorizes an attorney's lien on the client's interest in "property involved in or affected by" a proceeding in which the attorney represents the client.  *In re Engage* at 215.  On the other hand, the Bankruptcy Court ignores the fact that the Massachusetts Attorney's Lien Statute, by its terms, applies to "claims."  Similarly, the Bankruptcy Court argues that no charging lien attaches in the absence of a judgment, order or decree, *In re Engage*, at 214, when the Massachusetts Attorney's Lien Statute clearly states that the attorney has a lien "upon his client's cause of action, counterclaim or claim."

The Bankruptcy Court conceded that the language of New York statute is close to the text of the Massachusetts Attorney's Lien Statute.  Nevertheless, it tried to distinguish *Hedman* using a hypertechnical statutory analysis, noting that the New York statute's phrase "verdict, report, determination [and] decision" is broader than the Massachusetts statute's "judgment, decree or other order." *Id.*  Such an argument splits hairs over the choice of synonyms.  Indeed, it is plain language analysis without reference to a dictionary.  *Black's Law Dictionary*, for example, defines the word "order" to mean "the final *decision* of the court resolving the dispute and *determining* the rights and obligations of the parties," (emphasis added) and the word "decree" to mean "a sentence or order . . . *determining* the rights of all the parties" (emphasis added).  Thus, mere recourse to the dictionary shows that the words of the Massachusetts Attorney's Lien Statute encompass the additional synonyms that appear in the New York statute and that any difference between the two is a matter of style and not substance.  Does the Bankruptcy Court mean to imply that the New York statute does not cover a paper issued by a New York court that happens to be labeled as a "decree," the traditional term for any

decision by a court sitting in equity? To deny an attorney a lien based on the term of art applied to dispositions in a particular administrative agency or court would clearly frustrate the purpose of the Massachusetts Attorney's Lien Statute.

Finally, to the extent that the Court wishes to distinguish *Schroeder* and *Hedman* on these or similar grounds, it should first refer to *In re American Colonial Broadcasting, Corp.*, 758 F.2d 794 (1st Cir. 1985), in which the First Circuit decided almost this precise textual question in a bankruptcy case. *In re American Colonial* presented the question whether the words "final judgment, order or decree" has a different meaning that "final decisions, judgments, orders and decrees." The court concluded that the addition of the word "decision" in one statutory provision was only "an immaterial wording change" and that "decisions" and "judgments" are equivalent. *Id.* at 801.

**III.    Massachusetts law clearly provides that an attorney's lien attaches to the proceeds of a client's claims and counterclaims asserted in a cause of action or administrative proceeding, as well as to the proceeds of an administrative decision or court judgment.**

A.    The Massachusetts law of attorney's liens unequivocally grants R&G a lien on the proceeds of the Debtors' patent applications, as it would on the proceeds of any other claims or counterclaims asserted in a cause of action or administrative proceeding.

Under a proper interpretation of the Massachusetts Attorney's Lien Statute, R&G has a lien on proceeds of the Patent Sales, including the proceeds allocable to the Debtors' patent applications. The statute states plainly that the lien is "upon his client's *cause of action, counterclaim or claim*, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and *upon the proceeds derived therefrom*." Mass. Gen. Laws ch. 221, § 50 (emphasis added). Any straightforward reading of this provision would recognize that the phrase "the proceeds derived therefrom" refers back to both previous clauses and, therefore, encompasses the proceeds

derived from a "cause of action, counterclaim or claim." The statute contains a list of three things upon which an attorney receives a lien: the claim, any favorable order, and the proceeds thereof. The statute uses the "serial comma" between each of these items, meaning that the third clause (lien on proceeds "derived therefrom") is not part of the second clause (lien on judgments, decrees, or other orders). The natural reading of this sentence provides a lien on proceeds on all of the foregoing, not just proceeds of the items contained in the second clause.

Notwithstanding this unambiguous syntax, the Bankruptcy Court adopted a contrary gloss on the Massachusetts Attorney's Lien Statute made in *In re Leading Edge Prods., Inc.*, 121 B.R. 128 (Bankr. D. Mass. 1990). In the *Leading Edge* case a law firm asserted an attorney's lien on the proceeds of post-petition settlement in a breach of contract action it had filed pre-petition for a chapter 11 debtor. The currency of the settlement was not a cash payment or transfer of other property, however, but rather the reduction of a creditor's claim against the bankruptcy estate. *Id.* at 129. The *Leading Edge* court held that the claim reduction was not property, and so there were no proceeds to which the attorney's lien might attach after settlement and dismissal of the underlying action. *Id.* at 131. In the course of its analysis, the *Leading Edge* court ventured the opinion that "[a]lthough from a grammatical point of view it is not inconceivable that the phrase, 'the proceeds derived therefrom' has dual antecedents, the Court finds that in fact that phrase modifies the prior phrase, 'upon the judgment, decree or other order . . .' only." *Id.* The Bankruptcy Court disputed R&G's characterization of this analysis as *dictum*.[4] Whether or not the *Leading Edge* court's interpretation of the phrase "the

---

[4] This Court affirmed the *Leading Edge* court's decision without reaching the interpretation of the phrase "the proceeds derived therefrom": "The language of § 50 is ambiguous as to whether an attorney's

proceeds derived therefrom" is *dictum*, as R&G contends, or "more than a mere passing

matter," as the Bankruptcy Court asserts, *In re Engage*, 315 B.R. at 216, this gloss on the

Massachusetts Attorney's Lien Statute is plainly incorrect.

 The dispute over the phrase "the proceeds derived therefrom" is answered quite

simply and conclusively by reference to a companion provision of the Massachusetts

Attorney's Lien Statute. Section 50A of chapter 221 of the Massachusetts General Laws,

which addresses the liability of the Commonwealth and its political subdivisions for an

attorney's lien, provides as follows:

> Payment by the commonwealth or by any political subdivision
> thereof to a client in full or in settlement of any claim,
> counterclaim, cause of action, judgment, execution, order or decree
> shall discharge the commonwealth or such political subdivision
> from all liability on account of *any attorney's liens thereon or on
> the proceeds derived therefrom* unless the state treasurer or the
> treasurer of such political subdivision, as the case may be, has
> received written notice from an attorney having a lien under
> section fifty that he claims such lien.

Mass. Gen. Laws, ch. 221, § 50A (emphasis added).[5] Although the Bankruptcy Court

may have been misled by the multiple prepositional phrases in Section 50, any ambiguity

surrounding the antecedent reference of the phrase, "the proceeds derived therefrom," is

swept away by the straightforward exposition of Section 50A. Here, both the words

"thereon" and "therefrom" plainly refer back to all elements of the enumerated subjects

of the attorney's lien under Section 50: "claim, counterclaim, cause of action, judgment,

execution, order or decree." Furthermore, the parallel construction "*liens thereon* and *on*

---

lien may attach to a pre-judgment settlement. Nor has the question ever been squarely addressed by
Massachusetts state courts. *Even if such proceeds may be attached*, the decision of the bankruptcy judge
must be affirmed here." *Friedman and Atherton v. Leading Edge Prods., Inc. (In re Leading Edge Prods.,
Inc.)*, Civ. A. No. 90-13112-Z, 1991 WL 97459, at *1 (D. Mass. May 28, 1991) (emphasis added).
 [5] The juxtaposition of Section 50 with Section 50A is warranted not only by the fact that each is a
part of an overall statutory scheme governing attorneys' liens, but also by the fact that Section 50A was
enacted simultaneously with the 1945 amendment to Section 50. *See supra*.

the proceeds derived therefrom" leaves no doubt that the attorney's lien attaches to any proceeds of a "claim, counterclaim, or cause of action."

      B.    <u>Under Massachusetts law, an attorney's lien becomes enforceable upon the sale of the subject of the lien.</u>

      Contrary to the Bankruptcy Court's argument, the Massachusetts Attorney's Lien Statute does not require "entry of a judgment, decree or order . . . in order for an attorney's lien to become enforceable." *In re Engage*, 315 B.R. at 214. Again, reference to Section 50A is instructive. The explicit premise of Section 50A is that an attorney's lien may attach to any funds paid by the Commonwealth of Massachusetts or one of its political subdivisions in full or in settlement of a client's "claim, counterclaim, [or] cause of action" as well as in respect of a "judgment, execution, order or decree." Mass. Gen. Laws, ch. 221 § 50A.[6] Nothing in the text of Section 50A suggests that it is restricted to post-judgment payments or settlements, or that it requires entry of an order approving the payment in full or in settlement of a claim or counterclaim.

      Although an attorney's lien may be inchoate at the commencement of a cause of action or administrative proceeding, *In re Albert*, 206 B.R. 636 (Bankr. D. Mass. 1997), the lien may become choate – and, therefore, enforceable – other than by a "judgment, decree or other order." What makes the attorney's lien inchoate in these circumstances are two unknowns: 1) whether the attorney will succeed in securing property or creating a fund for the benefit of the client and 2) how much time and expense will be required for the attorney to accomplish that goal in the action or administrative proceeding. Once these variables are fixed, the conditions precedent to the enforcement of the lien have

---

[6] Of course, this language also dispels any uncertainty over whether, under the Massachusetts Attorney's Lien Statute, an attorney's lien attaches to a pre-judgment settlement. *See Friedman and Atherton v. Leading Edge Prods., Inc. (In re Leading Edge Prods., Inc.)*, Civ. A. No. 90-13112-Z, 1991 WL 97459, at *1 (D. Mass. May 28, 1991).

been satisfied: the value of the property against which the lien may attach has been, or may readily be, determined, and the size of the attorney's claim against the property may be established. *See, e.g.*, *United States v. City of New Britain, Conn.*, 347 U.S. 81, 86 (1954) (stating that an inchoate lien becomes choate once there is certainty as to the identity of the lienor, the property subject to the lien, and the amount of the lien). Although these conditions are most often satisfied by "entry of a judgment, decree or other order," Section 50A makes clear that the liquidation of a client's cause of action or administrative proceeding by other means also creates an enforceable lien under the Massachusetts Attorney's Lien Statute.

The sale of most kinds of administrative proceeding rights and lawsuits (to which attorney's liens attach) is admittedly not widespread. However, it would be absurd and wholly inconsistent with the statutory scheme created by Section 50 and Section 50A if, as the Bankruptcy Court supposes, the attorney's lien were to disappear upon any pre-ruling sale of the claim or cause of action, but not on a settlement of the same claim or cause of action. And there are indeed some kinds of lawsuits and rights that are sold frequently — consider the collection rights on an account receivable. Accounts receivable are often sold as part of financing arrangements and as separate assets in the sale of a business. Real dollars are allocated to the value of such receivables, and often contingency fee counsel is retained to prosecute the collection action on an unpaid receivable. It is clear under the Massachusetts Attorney's Lien Statute that such an attorney would be entitled to a lien for reasonable fees and expenses on any judgment or amount collected in settlement of the collection action. Given the broad protections

24

afforded by the Massachusetts Attorney's Lien Statute, it is inconceivable that no lien would attach to the proceeds of the sale of the very same collection action.

By analogy, there can be no rational basis on which the Massachusetts legislature would permit a lien on the proceeds of the sale of patents without also granting a lien on the proceeds of the sale of patent applications prior to the issuance of the patents. There is no dispute that the patent applications filed by R&G on behalf of the Debtors generated a fund to which R&G's attorney's lien can attach. To deny R&G the benefit of its lien on the patent application by extinguishing its secured claim against "the proceeds derived therefrom" would be a clear frustration of the Massachusetts Attorney's Lien Statute.

**IV.    R&G's lien on the proceeds of the Post-Petition Sale are protected by the Bankruptcy Code and the Bankruptcy Court's Order approving the Post-Petition Patent Sale.**

A.    The Bankruptcy Court's ruling contradicts the clear intention of the Bankruptcy Code to protect secured creditors in a free-and-clear sale.

It is axiomatic that a secured creditor is entitled to adequate protection of its lien on collateral in any bankruptcy case. *See, e.g.*, 11 U.S.C. §§ 361, 363 and 364. Although the Bankruptcy Code enables a debtor, with the approval of the court, to exercise control over and dispose of a secured creditor's collateral in a way that would not otherwise be possible without that creditor's consent, it is an unexceptionable proposition that the Bankruptcy Code protects a secured creditor's right to the value of its lien. *See, e.g.*, 3 Queenan, et al., *Chapter 11 Theory and Practice: A Guide to Reorganization* § 16.03 (1994) ("Bankruptcy law transforms the secured creditor's right to its collateral into a right to eventually receive the *value* of the collateral."). The Bankruptcy Court's ruling that the R&G attorney's lien evaporated as to the patent applications sold in the Post-

Petition Patent Sale violates this fundamental protection granted by the Bankruptcy Code to secured creditors.

In the context of a chapter 11 debtor's sale of assets free and clear of liens under Bankruptcy Code, the statutory scheme could not be more clear.  Section 363(e) provides, in pertinent part, that:

> at any time, on request of an entity that has an interest in property used sold or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).  Bankruptcy Code Section 361, in turn, defines adequate protection to include providing the secured creditor of "an additional or replacement lien," 11 U.S.C. § 361(2), and "granting such other relief . . . as will result in the realization of such entity of the indubitable equivalent of such entity's interest  in such property," 11 U.S.C. § 361(3).

It is customary upon a sale of encumbered assets under Section 363 for the secured creditor to be adequately protected by virtue of its  lien on the proceeds of the sale, a lien that is usually confirmed by the bankruptcy court's order approving the sale.  Indeed, if for any reason the lienholder does not have a lien on proceeds, bankruptcy sale orders customarily grant a new replacement lien on the proceeds as adequate protection.  Such was the case here.  In the order approving the Post-Petition Sale, the Bankruptcy Court expressly conveyed the patent applications to the purchaser free of R&G's lien (as granted by the Massachusetts Attorney's Lien Statute's "lien on the cause of action, counterclaim or claim").  Consequently, R&G cannot pursue the buyer, as it could at state law.  *See Hedman*, 1994 WL 18536, at * 1-2 (foreclosure of attorney's lien on property in hands of buyer).  However, paragraph G of the sale order granted creditors with liens on

26

the assets sold replacement liens on the proceeds of sale and, further, expressly required that a cash reserve be held in an amount equal to R&G's asserted lien, pending litigation over the validity of the such lien.  Thus, the Bankruptcy Court's ruling that the R&G attorney's lien was extinguished by the Post-Petition Patent Sale not only violates the clear provisions of the Bankruptcy Code, but also contradicts the Bankruptcy Court's own order authorizing the Post-Petition Patent Sale.

     B.     <u>The Post-Petition Sale rendered R&G's liens against the patent applications sold therein choate as a matter of both State Law and Bankruptcy Law.</u>

The Bankruptcy Court wrongly decided that R&G's liens on the Debtors' patent applications remained inchoate — and, therefore, unenforceable — after the Post-Petition Sale.  As argued above, the plain language of the Massachusetts Attorney's Lien Statute grants an attorney a lien on a client's patent application, as well as on any proceeds of such application.  Contrary to the Bankruptcy Court's contention, the statute does not require the entry of a "judgment, decree or other order" for an inchoate attorney's lien to become choate and enforceable.  Finally, it is clear that the Massachusetts Attorney's Lien Statute does not limit the occasions on which an attorney's lien may attach to a claim or cause of action, like a patent application.  Whether an attorney's efforts generate a fund or other valuable asset by settlement, sale or judgment, the Massachusetts legislature unequivocally intended to secure the payment of attorneys's fees by granting a statutory lien on such proceeds.

Furthermore, the Bankruptcy Court's ruling is incorrect as a matter of bankruptcy law and practice.  Bankruptcy Code Sections 101(5) and 506(a) speak clearly and dispose of any "inchoateness" argument.  11 U.S.C. §§ 101(5), 506(a).  A claim is any right to payment, including a contingent right to payment.  Thus the holder of an inchoate lien

27

(including an attorney's lien) has a claim.  *See, e.g.*, *Golfview Dev. Ctr. v. All-Tech Decorating Co. (In re Golfview Dev. Crt.)*, 309 B.R. 758 (Bankr. N. D. Ill. 2004). Section 506(a) commands that the claim be allowed in the amount of the value of the collateral securing the claim.  Other provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure allow for estimation of contingent claims.

Bankruptcy Courts routinely deal with "inchoate" liens in this manner.  For example, real estate tax liens are inchoate until the tax bill is sent.  However, no one disputes that the taxing authority has a lien on the proceeds of a free-and-clear bankruptcy sale of real estate that occurs prior to the issuance of the tax bill.  The fact that the lien is still inchoate is not held against the secured creditor.  Similarly, liens created by prejudgment attachments are inchoate, based on exactly the same contingency as an attorney's lien — the underlying result in a proceeding.  No one asserts, however, that this undermines the validity of the prejudgment attachment.  Rather, the creditor's claim and the collateral are valued like any other claim in a bankruptcy case, and in the event of an intervening Section 363 sale the lien is simply deemed to attach to the proceeds.  Typically the amount that the buyer attributes to the encumbered assets sets the value of the lien.

The Bankrupty Court attempts to escape the conclusion that R&G's attorney's lien on the Debtors' patent applications became choate and enforceable upon the closing of the Post-Petition Patent Sale by distinguishing patent applications from real estate tax liens.  However, this distinction is patently artificial when set against the underlying principle behind the analogy: the Bankruptcy Code both preserves the force of inchoate liens of all kinds and grants bankruptcy courts the power to value those claims to

facilitate the reorganization of a debtor under chapter 11 or the liquidation of a debtor's estate under chapter 7. Thus, nothing in the Bankruptcy Code or the Massachusetts Attorney's Lien Statute justifies extinguishing R&G's claim in the proceeds of the patent applications generated in the Post-Petition Patent Sale.

## CONCLUSION

Like all related statutes, the purpose of the Massachusetts Attorney's Lien Statute is to protect attorneys' interest in their fees "by disabling the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." *Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 248 (1993) (quoting *Matter of Heinsheimer*, 214 N.Y. 361, 364 (1915)(Cardozo, C.J.)). Both the plain text of the statute and case law authority suggest that the provisions of the Massachusetts Attorney's Lien Statute should be applied broadly. In denying R&G's secured claim against the proceeds of the Patent Sales, the Bankruptcy Court thwarted the purpose of the statute and the plainly expressed intent of the Massachusetts legislature. For these reasons, and the reasons set forth above, the Bankruptcy Court should be reversed on all issues addressed in this appeal.

Respectfully submitted,

ROPES & GRAY LLP


By:  /s/  Stephen Moeller-Sally
    D. Ross Martin (BBO#629853)
    Stephen Moeller Sally (BBO#652383)
    One International Place
    Boston, MA 02100-2624
    Telephone: (617) 951-7000