**ATTACHMENT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| | ) | Case Nos. 03-43655-JBR |
| ENGAGE INC., et al., | ) | et seq. |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

PROTECTIVE MOTION OF ROPES & GRAY LLP
UNDER 28 U.S.C. § 158(a)(3) AND BANKRUPTCY RULE 8003
FOR LEAVE TO FILE INTERCOLUTORY APPEAL

Ropes & Gray LLP ("R&G"), a creditor and party in interest herein, hereby moves the

District Court for leave to appeal from the order of the Bankruptcy Court [Docket No. 594]

sustaining the objection of the Liquidating Supervisor to the Claim of R&G (the "Lien Order")

on the grounds that Virginia law governs the question of whether a Massachusetts lawyer has a

lien on the proceeds of patents obtained and patent applications filed on behalf of a

Massachusetts client.[1]  A copy of the order and the accompanying Memorandum of Decision

[Docket No. 593], entered on October 8, 2004, are attached hereto as Exhibit A and Exhibit B,

respectively.   In further support of this motion, R&G states as follows.

---

[1] The order appealed from, which finally disallowed the secured claim of R&G, is a final order within the meaning of that term in 28 U.S.C. § 158(a)(1).  *In re Saco Local Dev. Corp.*, 711 F.2d 441, 448 (1st Cir. 1983) (Breyer, J.) (order determining priority of claim, even when precise amount of claim is not yet determined, is final and appealable); *In re J. Catton Farms, Inc.*, 779 F.2d 1242 (7th Cir. 1985) (Posner, J.) (order determining validity or priority of lien is separate and appealable from determination of final amount of secured claim); *In re Rodriguez*, 272 B.R. 64 (D. Conn. 2002) (an order determining secured status as a matter of law is final).  *Compare In re Empresas Noroeste, Inc.*, 806 F.2d 315 (1st Cir. 1986) (noting among the kind of discrete disputes final for bankruptcy appellate purposes are questions as to whether a particular creditor is or is not secured); *In re Stoeker*, 5 F.3d 1022, 1026 (7th Cir. 1993) (Posner, J.) (remaining issue as to amount of claim, dependent on allowable amount of attorney's fees, does not destroy finality of appeal because any issues therein are unrelated to the pending appeal).  This Motion is filed solely as a protective matter in the event that the Liquidating Supervisor contends that the Lien Order is not a final order.

## Statement of Facts

1.      The Debtors commenced voluntary bankruptcy cases on June 19, 2003 (the "Petition Date"). Prior to the Petition Date, R&G provided legal services to the Debtors, including the filing and prosecution of patent applications. The Debtors were companies located in Massachusetts, and all legal work performed by R&G was performed in Massachusetts. As of the Petition Date, R&G was owed $160,874.91 in total for legal services, of which $108,737.11 was for work performed in prosecuting patent applications for the Debtors.

2.      Shortly prior to the Petition Date, the Debtors sold a number of their patents and patent applications to a third party in an arm's length transaction for a price of $100,000 (the "Prebankruptcy Patent Sale"). Many of the patents and patent applications sold in the Prebankruptcy Patent Sale had been filed and prosecuted by R&G.

3.      After the Petition Date, pursuant to Section 363 of the Bankruptcy Code, the Debtors sold substantially all of their remaining assets for $2 million (the "Postbankruptcy Patent Sale" and, together with the Prebankruptcy Patent Sale, the "Patent Sales"), a substantial portion of which was allocated to intellectual property consisting almost entirely of patents and patent applications that had been filed and prosecuted by R&G.

4.      R&G was not paid prior to the Petition Date for the $108,737.11 of legal work relating to the patents and patent applications sold in the Patent Sales, nor has R&G since been paid for such work.

5.      Since the very commencement of the bankruptcy case, R&G has consistently asserted that, pursuant to the Massachusetts Attorney's Lien Statute, Mass. Gen. Laws c.221, § 50, it had an attorney's lien to secure payment for its $108,000 of patent prosecution work (but not for other services it rendered to the Debtors). R&G asserts as a matter of state law and

bankruptcy law that such lien attached to the cash proceeds of the Patent Sales (with respect to the patents and patent applications sold at each respective sale).

6.     R&G has filed a timely proof of claim in the bankruptcy case asserting these amounts, breaking down the amounts owed on a patent-by-patent basis.

7.     The Bankruptcy Court has separately held that R&G was adequately protected in the bankruptcy case, and in connection with the Postbankruptcy Patent Sale expressly required that a cash reserve be held in an amount equal to the asserted lien, pending litigation over the validity of the R&G Attorney's Lien.

8.     On or about May 20, 2004 the Bankruptcy Court confirmed a plan of liquidation for the Debtors, pursuant to which the Debtors (and their Liquidating Supervisor who is now charged with handling the remaining liquidation) are required to continue to maintain a $108,737.11 reserve pending the outcome of litigation over the R&G attorney's lien.

9.     The Liquidating Supervisor has objected to the R&G claim, specifically on the grounds that R&G has no attorney's lien. In his claim objection the Liquidating Supervisor also objected to the overall amount of R&G fees, but only on grounds that R&G had not attached any detailed time records to its proof of claim. R&G did not file those detailed records publicly in order to preserve the attorney-client privilege (which the Liquidating Supervisor controls, as successor to the Debtor), and has since provided full copies of its detailed time and expense records to the Liquidating Supervisor.

10.     The parties briefed to the Bankruptcy Court a number of issues relating to the applicability of the Massachusetts Attorneys Lien statute to patent prosecution work, and to whether such a lien attaches to the proceeds of the sale of patent applications. No party disputed that Massachusetts law of attorney's liens applied to the dispute.

11.    At oral argument before the Bankruptcy Court, the Liquidating Supervisor and

R&G agreed that the issues before the court – as to whether R&G had an attorney's lien for its

patent prosecution work and whether the lien attached to the cash proceeds being held in reserve

by the Liquidating Supervisor – were essentially a summary judgment motion by the Liquidating

Supervisor.  In the order being appealed from, the Bankruptcy Court sustained the Liquidating

Supervisor's claim objection, thus granting his summary judgment motion.

12.    The Bankruptcy Court gave several grounds for its ruling.  First, it concluded, *sua*

*sponte* and without ever having raised the issue with the parties, that Massachusetts choice of law

principles required the application of Virginia attorney's lien law to this dispute simply because

the federal government has chosen to locate the United States Patent and Trademark office in the

Commonwealth of Virginia.  Second, the Bankruptcy Court concluded that the Massachusetts

attorney's lien statute does not apply to patent prosecution work done by lawyers, and that even

if it did, that the attorney's lien was effectively stripped away from pending patent applications

when the Debtor sold those applications in the Patent Sales, leaving R&G with no lien

protection.

<u>Questions Presented By Appeal and Relief Sought</u>

13.    There are four questions presented by this appeal:

a.    When a Massachusetts lawyer is representing a Massachusetts client
before a federal administrative agency, is the existence of an attorney's lien established by
Massachusetts law or by the law of the state in which the federal agency's office happens to be
located?

b.    Does chapter 221, section 50 of the Massachusetts General Laws grant a
Massachusetts attorney a lien on patents and patent applications for patent prosecution work
performed on behalf of a client?

c.    As a matter of Massachusetts statutory or common law, when a
Massachusetts attorney has a lien on a particular cause of action or administrative proceeding,
and the action or administrative rights are sold during the pendency of such action or proceeding

(e.g., the sale of a receivable during a collection action or sale of a patent application), is the attorney's lien extinguished or does it attach to the proceeds of the sale?

        d.    As a matter of federal bankruptcy law, when a Massachusetts attorney has a lien on a particular cause of action or administrative proceeding, and the action or administrative rights are sold pursuant to a bankruptcy court order that specifically provided that liens attach to the proceeds of the sale, is the attorney's lien extinguished by the sale or does it attach to the proceeds of the sale?

        14.    Appellant seeks reversal of the order and decision below, and remand for an evidentiary hearing as to the valuation of the secured portion of the R&G secured claim.

Reasons Why Leave to Appeal Should Be Granted

        15.    The statute governing bankruptcy appeals, 28 U.S.C. § 158, expressly provides for the taking of appeals from interlocutory order, in the discretion of the district court:

> The district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and decrees.

28 U.S.C. § 158(a)(3); *see also* Bankruptcy Rules 8001(b), 8003. It is well established that because of the flexible nature of bankruptcy proceedings, appeals of interlocutory orders are more freely granted than in ordinary civil litigation. *See generally In re Salem Suede, Inc.*, 221 B.R. 586, 596 (D. Mass. 1998). The current appeal of the Lien Order presents a paradigm case of an appropriate interlocutory appeal.

        16.    The Bankruptcy Court's order sustaining the claims objection might be regarded as interlocutory because the final amount of the claim, as an unsecured claim, has been objected to but not yet resolved by the Bankruptcy Court. *But see In re Saco Local Dev. Corp.*, 711 F.2d 441, 448 (1st Cir. 1983) (order determining priority of claim, even when precise amount of claim is not yet determined, is final and appealable). As noted above, R&G's proof of claim asserted an aggregate claim for fees and expenses relating to all work performed by R&G on behalf of the Debtors prior to the Petition Date and a secured claim for that portion of the total fees and

expenses relating to patent prosecution work. The Liquidating Supervisor disputed the existence

of R&G's attorney's lien and objected to the amount of R&G's claim based solely on the fact

that, although all of unpaid invoices were attached to the proof of claim, R&G had not included

detailed time and expense records. Thus the overall litigation between R&G and the Liquidating

Supervisor involved two claims or counts: (i) the secured claim asserted by R&G and (ii) and the

aggregate amount of the claim asserted by R&G. The Lien Order is essentially a grant of

summary judgment in favor of the Liquidating Supervisor on the dispute over R&G's secured

claim.

17.    Leave to pursue an interlocutory appeal should be granted in bankruptcy cases

when the underlying order "conclusively determine[s]" a discrete dispute in the underlying case.

and when the order is "surrounded by" finality or exceptional circumstances. *See Salem Suede*,

221 B.R. at 585-86 (citing *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 801 (1st

Cir. 1985) and *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987)). A discrete dispute in

this context is to be determined with "more flexibility than in other civil litigation contexts."

*American Colonial Broadcasting*, 758 F.2d at 801.

18.    The Lien Order presents exactly the kind of finality that warrants granting leave

to take this appeal. Indeed, an order finally resolving allowance or disallowance of a claim, or

the priority of a claim, is a final order for bankruptcy appellate purposes. *In re Saco Local Dev.

Corp.*, 711 F.2d 441, 448 (1st Cir. 1983). The Bankruptcy Code by its express terms divides any

secured claim into two severable, distinct claims, one secured and another unsecured. *See*

Bankrutpcy Code Section 506(a). The Bankruptcy Court order regarding R&G's attorney's lien

clearly resolves, finally and in its entirety, the R&G secured claim. Looked at another way, it

fully and finally resolves the priority of the R&G claim, making it entirely an unsecured claim.

Either of these effects makes the order sufficiently final under the holding of the First Circuit in the *Saco Development Corporation* case. Furthermore, even in the context of ordinary civil litigation, this is the kind of summary judgment order that would be susceptible to separate appeal. *Compare* Fed R. Civ. P. 54(b) (permitting appeals from the final disposition of a claim in an action with multiple claims, if there is no just reason for delay). The Bankruptcy Court has already entered a separate order regarding the secured claim; this is the order from which R&G appeals.

19.    Indeed, an interlocutory appeal is often deemed appropriate in litigation over the secured status of claims. For example, in *In re Kruckenberg*, 160 B.R. 663 (D. Kan. 1993), the district court granted leave for an interlocutory appeal on the issues of whether a state statute granted a lien under certain circumstances, even though some other issues regarding the allowance of a secured claim remained. The court granted leave to appeal because there was a controlling issue of law on which substantial ground for difference of opinion existed, and the appeal would materially advance the ultimate termination of the litigation. *Id.* at 666. As indicated above, R&G is not aware of any actual dispute over the aggregate amount of R&G's claim, and therefore, as a practical matter, resolution of the underlying dispute would provide a final resolution of the claim.

20.    Indeed, to the extent there is any remaining uncertainty over the precise amounts of the secured and unsecured R&G claims, it should be put to rest as soon as possible. One of the major tasks remaining in the case is a separate litigation that the Liquidating Supervisor is pursuing against an unrelated third party, litigation that the Liquidating Supervisor hopes will afford a substantial recovery for unsecured creditors. The Liquidating Supervisor has informed R&G that he desires to know what the size of the unsecured claims pool is in the case (a matter

that will be affected by the question of whether R&G is secured) in order to facilitate settlement discussions in that third-party litigation. Because settlements in these situations are often structured as a payment of fixed percentage recoveries to all creditors in a case, an interlocutory appeal from the Lien Order would likely facilitate the overall resolution of the Debtors' bankruptcy cases. *See id.* (interlocutory appeal on lien issues would resolve lien issues quickly and in turn might assist in final resolution of the bankruptcy case).

WHEREFORE, R&G respectfully requests the District Court to enter an order (i) granting leave to appeal the Lien Order and (ii) granting such other and further relief as it deems just and proper.

ROPES & GRAY LLP

Dated:  October 18, 2004

D. Ross Martin (BBO#629853)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110
Telephone:   617-951-7000
Telecopier:   617-951-7050

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| ENGAGE, INC., *et al.*, | ) | |
| | ) | Case Nos.03–43655-JBR through 03- |
| DEBTOR | ) | 43657-JBR, 03-43659-JBR |
| | ) | 03-43661-JBR and 03-43662-JBR |
| | ) | (Jointly Administered) |
| _____ | ) | (Substantively Consolidated) |

For the reasons set forth in the Memorandum of Decision, the Liquidating Supervisor's

Objection to the Secured Claim of Creditor Ropes & Gray [# 520] is SUSTAINED.

Dated: October 8, 2004

*Joel B. Rosenthal*
Joel B. Rosenthal
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| ENGAGE, INC., *et al.*, | ) | |
| | ) | Case Nos.03-43655-JBR through 03- |
| DEBTOR | ) | 43657-JBR, 03-43659-JBR |
| | ) | 03-43661-JBR and 03-43662-JBR |
| | ) | (Jointly Administered) |
| _____ | ) | (Substantively Consolidated) |

### MEMORANDUM OF DECISION

This matter is before the Court on Liquidating Supervisor Craig Jalbert's Objection

to the Secured Claim of Creditor Ropes & Gray [# 520], Ropes & Gray's Response [# 563], and

the Liquidating Supervisor's Reply thereto [# 569]. The Court held a hearing and took the matter

under advisement. For the reasons set forth herein, the Liquidating Supervisor's Objection is

hereby SUSTAINED.

**BACKGROUND**

On June 19, 2003, Engage, Inc. and five of its wholly-owned domestic subsidiaries

(hereinafter the "Debtors") filed their voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. Ropes & Gray (hereinafter "Ropes"), which

provided legal services to the Debtors in connection with the prosecution of various patents, was

scheduled as a creditor in the Debtors' bankruptcy. Shortly after the petition was filed,

substantially all of the Debtors' assets were sold to JDA Software Group, Inc. (hereinafter

"JDA"). Ropes alleges it has an attorney's charging lien pursuant to Mass. Gen. Laws, ch. 221,

§ 50 in "(i) certain patents and patent prosecution actions of the Debtor and (ii) cash proceeds of

-1-

a prepetition sale of other patents."[1]

Ropes timely filed a proof of claim asserting an attorney's charging lien in the amount of $108,737.11; $45,198.29 was for unpaid fees and expenses allegedly secured by the proceeds of the JDA Sale, with the remaining $63,538.82 for unpaid fees and expenses allegedly secured by the proceeds of the pre-petition sale. Ropes also asserted a secured claim in the amount of $737.50 for fees and expenses associated with collection costs pursuant to 11 U.S.C. § 506(b) as well as a general unsecured claim in the amount of $51,400.30 on account of licensing work for which Ropes was unpaid.

This Court entered the Order Confirming Debtors' Seconded Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code on May 20, 2004. Paragraph 13 of this Confirmation Order authorized Craig Jalbert to serve as Liquidating Supervisor. His timely Objection to Ropes' secured claim and the Responses thereto ensued.

**DISCUSSION**

Confronting this Court is a question of first impression in this jurisdiction: whether the Massachusetts charging lien statute, M.G.L. c. 221 § 50[2], applies to proceeds derived from the

---

[1] This pre-petition sale took place on February 20, 2003, approximately four months prior to the date of Debtors' Chapter 11 petition, and yielded $100,000 in cash proceeds.

[2] The Massachusetts attorney's charging lien statute, M.G.L. c. 221 § 50, provides as follows:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon request of the client or of the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien; provided, that the provisions of this

-2-

sale of patents and patent applications. For the reasons that follow, the Court concludes it does not.

Before determining whether Ropes has an attorney's charging lien under Massachusetts law, however, the Court first must grapple with a threshold question: does Massachusetts law even apply? Ropes' office is located in Massachusetts yet the administrative proceedings on which Ropes bases its liens took place before the United States Patent and Trademark Office in Virginia. This initial determination is of paramount importance, as the substantive law that applies will dictate the Court's analysis of the issues before it.

Ropes and the Liquidating Supervisor assume that Massachusetts law applies and base their arguments on this assumption. Indeed, neither party even raises the possibility that substantive law other than that of Massachusetts should apply to this dispute. In support of its argument that it has an attorney's charging lien on certain patents, patent prosecution actions and cash proceeds, Ropes cites decisions from Minnesota and New York, the only jurisdictions to address the issue of whether an attorney's lien could attach to patents. See *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.*, 295 N.W.2d 514 (Minn. 1980); *Hedman, Gibson & Costigan, P.C. v. Tri-Tech Systems International, Inc.*, 1994 WL 18536 (S.D.N.Y. 1994), modified by 1995 WL 555702 (S.D.N.Y. 1995).

In both cases, the attorney's sued under the charging lien statutes of the state in which their offices were located. In this instance, Ropes assumes that the Massachusetts charging lien statute applies, presumably because that is where its office is located. Nevertheless, at no point did either court rule that this is the controlling factor and, upon review of various authorities, this

---

sentence shall not apply to any case where the method of the determination of attorneys' fees is otherwise expressly provided by statute.

Court concludes that it is not.

A litany of authority suggests that the determination of what state law should apply to a given proceeding is a qualitative analysis determined by the "law of the state in which the legal services are to be performed." *Matter of Fitterer Engineering Associates, Inc.*, 27 B.R. 878, 879-80 (Bankr. E.D. Mich. 1983), citing 7 Am.Jur.2d § 351 at 354 (holding that "the existence and effect of an attorney's lien is governed by the law of the state in which the legal services are to be performed"). That statement, however, begs the question of where "services are performed" when a law firm located in one state represents its client in a different jurisdiction. "The controlling law is that of the state where the judgment was recovered rather than the law of the state where the collection is attempted." John S. McCann, *The Attorney's Lien in Massachusetts*, 69 Mass.L.Rev. 68, 75 (1984) (citations omitted) (hereinafter "McCann"). *See also Lehigh & N.E.R. Co. v. Finnerty*, 61 F.2d 289, 290 (3rd Cir.), *cert. denied* 287 U.S. 668, 53 S.Ct. 292, 77 L.Ed. 576 (1932) ("The contract does not expressly state where the parties intended that suit should be brought, but the employment of an attorney of New Jersey and the bringing of suit in New Jersey indicate that the parties intended that from the first that suit should be brought in that state. And being brought there, the laws of that state control as to the lien."); *U.S. v. 72.71 Acres of Land, More or Less, Situate in Montgomery County, Md.*, 167 F. Supp. 512, 516 (D.Md. 1958) (applying Maryland law in federal condemnation proceeding brought in Maryland and "where the attorneys' contract for compensation was made in and intended to be performed mostly in Maryland."). *See generally* E.H. Schopler, *Conflict of Laws as to Attorneys' Liens*, 59 A.L.R.2d 564 (1954)

> The general rule that the true test for the determination of the
> proper law of contract is, in the absence of a countervailing public
> policy, the intent of the parties, express or implied, has been
> applied in deciding questions of choice of law with respect to

-4-

> attorney's liens. However, a contract between an attorney and his
> client does not ordinarily contain express provisions as to the
> governing law. The generally accepted rule is that the existence
> and effect of an attorney's lien arising under such a contract is
> governed by the law of the place where the contract is to be
> performed, that is, where the contemplated action or proceeding is
> to be instituted, and not by the place where the contract was
> made...

*Id.* *(footnotes omitted).*

That the law of the jurisdiction where judgment entered should control seems obvious:

but for the judgment, there is no right to enforce a charging lien. Applying Massachusetts choice

of law for contract actions leads to the same conclusion.

"In determining what state law pertains, the court must employ the choice-of-law

framework of the forum state....." *Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d

1, 4 (1st Cir. 1994). Since the underlying right to attorneys' fees arises from its contract, express

or implied, with the Debtor,[3] the Massachusetts choice of law governing contracts should apply.[4]

In *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622, 631-32, 473 N.E.2d 662, 668-69

(1985), the Supreme Judicial Court adopted a "functional" approach, based in large part upon the

Restatement (Second) of Conflicts of Law. It is essentially a "significant contacts" test.[5]

---

[3] The charging lien statute is not merely procedural; it creates substantive rights. This
creation of substantive rights, at the very least, raises the specter that the statute is substantive.
"Where it is not clear that a rule of law is procedural in the Commonwealth for choice-of-law
purposes, we take a functional approach in determining the choice-of-law issues, using
established conflicts criteria and considerations." *See Bushkin Assocs., Inc. v. Raytheon Co.*, 393
Mass. 622, 631-636, 473 N.E.2d 662 668-69 (1985)." *Cosme v. Witin Mach. Works, Inc.*, 417
Mass. 463, 645, 632 N.E.2d 832, 834 (1994).

[4] Ropes has not suggested that its contract with the debtor, if it is express, designated
Massachusetts law as controlling any fee disputes.

[5] In the absence of a choice of law by the parties, their rights "are determined by the local
law of the state which, with respect to that issue, has the most significant relationship to the
transaction and the parties...." *See Restatement (Second) of Conflicts of Law §§ 186-87 (1971).*

-5-

Although the only contact with Virginia may be that the Patent and Trademark Office is located there, the filing of the patent applications and obtaining of some patents are fundamental to Ropes' assertion of its lien. But for the patent applications, all of the fees are unsecured. Therefore, while there are more contacts with Massachusetts, the Court finds that the most significant and meaningful one is with Virginia.

Moreover, since, as a general rule, state statutes should not be given extraterritorial effect, *Davis v. Whitt*, 211 Ky. 142, 277 S.W. 311 (1925), applying Virginia law to proceedings commenced there, whether in a state or federal forum, furthers this policy. As such, Virginia, not Massachusetts, law applies.

The Virginia attorney's charging lien statute provides, in pertinent part, as follows:

> A. Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract or for a cause of action for annulment or divorce, may contract with any attorney to prosecute the same, and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause or action or claim. When any such contract is made, and written notice of the claim of such lien is given to the opposite party, his attorney or agent, any settlement or adjustment of the cause of action shall affect the existing law in respect to champertous contracts. In causes of action for annulment or divorce, an attorney may not exercise his claim until the divorce judgment is final and all residual disputes regarding marital property are concluded. Nothing in this section shall affect the existing law in respect to exemptions from creditor process under federal or state law.
>
> B. Notwithstanding the provisions in subsection A, a court in a case of annulment or divorce may, in its discretion, exclude spousal support and child support from the scope of the attorney's lien.

By its very clear language, Virginia law gives a lien only to actions based upon tort or contract claims or in divorce actions; it is far more limited than Massachusetts law. Under Virginia law, Ropes has no lien.

-6-

ach-engage-1.TIF

Even if Massachusetts law were to apply, however, Ropes would not have an attorney's charging lien in the subject matter in question, as it fails to meet the statutory requirements of the Massachusetts attorney's charging lien statute. As an initial matter, Ropes argues at length that M.G.L. ch. 221 § 50 applies to administrative proceedings. The Court agrees with this assertion. The statute, by its express terms, covers proceedings "before any state or federal department, board or commission." Additionally, the Massachusetts Court of Appeals ruled that an attorney may be entitled to an attorney's lien under M.G.L. ch. 221 § 50 if he has "appeared and rendered representation in a Federal or State court or designated administrative agency." *Gormley v. Wilkins*, No. 00-P-1490, 2002 WL 31204473 at ***2 (Mass. App. Ct. October 3, 2002). Nevertheless, three additional requirements must also be met: the attorney's fees must be reasonable; a judgment, decree or other order must have entered in connection with the attorney's representation; the judgment must have been in the client's favor. *Id.*  Ropes appeared and rendered representation in the United States Patent and Trademark Office, a federal administrative agency, on behalf of the Debtors.  If Massachusetts law applied, there is thus little doubt that M.G.L. c. 221 § 50 would apply to Ropes if the other statutory requirements were met.

The statute and the tribunals to interpret M.G.L. c. 221 § 50 have uniformly required the entry of a judgment, decree or order in accordance with the statute's plain meaning in order for an attorney's lien to become enforceable. *In re Rothwell*, 159 B.R. 374, 380 (Bankr. D. Mass. 1993) (holding that "for an attorney's lien to be enforceable, a condition subsequent must occur, namely the entry of a judgment or other decree in the client's favor to which the lien can attach"). Furthermore, the lien "binds the *judgment or money decree* for payment of expenses incurred and for services rendered by an attorney with respect to the particular action or suit." *Torphy v. Reder*, 357 Mass. 153, 156, 257 N.E.2d 435, 437-38 (1970) (*emphasis added*).

-7-

Ropes asserts that a patent is "a valuable property right that must be issued by the government via administrative proceeding." [Response ¶8]. Ropes further asserts that "patent prosecution work is precisely the kind of work most in need of the support and incentives created by an attorney's lien." *Id.* Ropes falls short, however, of convincing the Court that patent prosecution work falls within the purview of the unambiguous terms of the statute. A patent issues upon notice of allowance to the applicant and payment of a fee, 35 U.S.C. § 151, and grants the patent holder the right to exclude others from making, using, offering for sale, selling or importing a particular invention or process. 35 U.S.C. § 154(a)(1). A patent does not order anyone to do anything or pay any money. Even if a patent could be deemed an order, however, the proceeds derived from its sale do not stem from the actual order of the Patent Office, but rather from the sale of the underlying intellectual property protected by the patent. Since allowance of the applications did not itself require or trigger the payment of any money and no judgment, decree or other order entered in connection with Ropes' representation, it thus follows that no charging lien attached.

Ropes has no greater success with respect to the patent applications. In Massachusetts, when an attorney commences an action on behalf of his client in a state or federal court or agency, an inchoate lien enters in the attorney's favor. *In re Albert*, 206 B.R. 636, 639 (Bankr. D. Mass. 1997); *In re Leading Edge Prods.*, 121 B.R. 128, 131 (Bankr. D. Mass. 1990). The lien matures and becomes choate when a judgment, decree or other order is entered in the client's favor. *Id.* *See also Torphy v. Reder*, 257 N.E.2d at 437-38 (Mass.1970) (holding that the attorney's lien attaches to and "binds the judgment or money decree for payment of expenses incurred and for services rendered by an attorney with respect to the particular action or suit"). Based on the foregoing, Ropes thus held an inchoate lien for each action it filed on behalf of the

-8-

Debtors in the United States Patent and Trademark Office, a federal administrative agency.[6]

Ropes acknowledges that its liens are "inchoate prior to the actual judgment, degree or other order." [Response ¶11]. It urges, however, that Section 363 of the Bankruptcy Code permits the sale of its property free and clear of the attorney's lien in exchange for a lien on the proceeds. According to Ropes, the inchoateness of its lien is overcome by other events that can make the lien choate, such as "realization of benefit for the client and immediately susceptible valuation." [Response ¶18]. Ropes then goes on to analogize its position with the manner in which bankruptcy courts "routinely deal" with other types of inchoate liens, such as real estate tax liens. On these assertions, Ropes is on unstable ground. The matter before the Court deals with patents, not real estate taxes. Furthermore, the Massachusetts attorney's charging lien statute and the courts interpreting it have clearly stated that an attorney's lien can only exist and become choate when all of the elements are met. Ropes' inchoate lien would thus only mature and become choate if the patents, patent applications and the proceeds deriving therefrom rightly constitute a "judgment, decree or other order" pursuant to M.G.L. c. 221 § 50. They do not.

In attempting to persuade this Court that it has a valid and enforceable attorney's lien, Ropes also points to two instances in which courts in other jurisdictions have ruled that an attorney's lien attaches to patents. In *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.*, 295 N.W.2d 514 (Minn. 1980), the Supreme Court of Minnesota applied the Minnesota charging lien statute, Minn. Stat. § 481.13, which provides, in relevant part, as follows:

(a) An attorney has a lien for compensation whether the agreement

---

[6] Under Massachusetts law, each patent must be examined independently because an attorney's lien is only valid with respect to the particular proceeding in which it arises. It cannot be transformed into a general lien for any other services. *Id.* at 438.

ach-engage-1.TIF

> for compensation is express or implied (1) upon the cause of action
> from the time of the service of the summons in the action, or the
> commencement of the proceeding, and (2) upon the interest of the
> attorney's client in any money or property involved in or affected
> by any action or proceeding in which the attorney may have been
> employed, from the commencement of the action or proceeding,
> and, as against third parties, from the time of filing the notice of
> the lien claim, as provided in this section.

The language encompassed in the Minnesota statute is significantly broader than that contained

in the Massachusetts statute. Indeed, if the Massachusetts statute were identical to that of

Minnesota, the Court's analysis, and indeed its conclusion, assuming *arguendo* Massachusetts

law applies, would be different. Nevertheless, the Court must interpret the statute at issue here

as it is plainly written, distinguishing it from other statutes that by their terms are broader in

scope. As the Massachusetts statute does not include within its ambit "any money or property

involved in or affected by any action or proceeding in which [the attorney] may have been

employed," this Court is simply unable to find an enforceable attorney's lien on the proceeds

associated with representation unaccompanied by a "judgment, decree or order."

Ropes also points to *Hedman, Gibson & Costigan, P.C. v. Tri-Tech Systems*

*International, Inc.*, 1994 WL 18536 (S.D.N.Y. 1994), modified by 1995 WL 555702 (S.D.N.Y.

1995), in which the court applied New York law in granting the attorneys a charging lien in their

client's patents. The New York statute, N.Y.Jud.L. § 475 provides as follows:

> From the commencement of an action, special or other proceeding
> in any court or before any state, municipal or federal government,
> except a department of labor, or the service of an answer
> containing a counterclaim, the attorney who appears for a party has
> a lien upon his client's cause of action, claim or counterclaim,
> which attaches to a verdict, report, determination, decision,
> judgment or final order in his client's favor, and the proceeds
> thereof in whatever hands they may come; and the lien cannot be
> affected by any settlement between the parties before or after
> judgment, final order or determination. The court upon the petition

-10-

of the client or attorney may determine and enforce the lien.

Although the language of the New York statute is slightly more akin to the language of the

Massachusetts statute, it includes within its purview a "verdict, report, determination [and]

decision." The finding of an enforceable lien under such a statute is much more plausible than it

is under a statute with far more limited language. Furthermore, the *Hedman* court made no

distinction between the intellectual property and the patent that protected it. This distinction is of

paramount importance because a lien must attach to proceeds from a "judgment, decree or

order," not to the proceeds resulting from a client's interest in property it already owns. *Petition*

*of Rosenman & Colin*, 850 F.2d 57, 61, 11 Fed.R.Serv. 595, 599 (NY.1988); *Ekelman v.*

*Marano*, 167 N.E. 211, 212, 251 NY 173, 174 (N.Y.1929); *Theroux v. Theroux*, 145 A.D.2d 625,

536 N.Y.S.2d 151, 153 (2d Dep't. 1988); *Matter of Golden*, 125 A.D.2d 942, 510 N.Y.S.2d 340

(4th Dept 1986); *Desmond v. Socha*, 38 A.D. 2d 22, 24, 327 N.Y.S.2d 178, 180 (3d Dept 1971),

aff'd, 31 N.Y.S.2d 687, 337 N.Y.S.2d 261, 289 N.E.2d 181 (1972); *Snitow v. Jackson*, 4 Misc.2d

351, 158 N.Y.S.2d 304, 306 (N.Y.Sup.Ct. 1956); *In re Schick*, 215 B.R. 13, 15 (Bankr. S.D.N.Y.

1997). Equally important, neither the Minnesota nor the New York court found an attorney's

lien to attach to the proceeds of patent applications. The Court knows of no authority in this

jurisdiction providing an attorney with a lien simply in the subject matter of his client's cause of

action. Indeed, for an attorney's charging lien to attach, the plain language of the statute

mandates that there be a "judgment, decree or other order."

The Court finds unpersuasive Ropes' assertion that a patent, patent application or patent

prosecution (or, for that matter, the proceeds stemming therefrom) constitutes a "judgment,

decree or other order." Faced squarely with this issue, Judge Gabriel refused to "torture the plain

meaning of G.L. c. 221, § 50" in holding that proceeds must result from the judgment, order or

-11-

decree in order for a choate attorney's lien to attach. *In re Leading Edge*, 121 B.R. at 132 . Ropes acknowledges yet argues that it was merely in "passing *dictum*" that the attorney's lien at issue in *In re Leading Edge* attached "only to proceeds of a judgment and not to proceeds of the action." (Response ¶17). Ropes asserts that this "dictum" is incorrect and invites the Court to repudiate it. The Court declines the invitation. As an initial matter, the Court disagrees with Ropes' characterization that this was merely "passing *dictum*." More than a mere passing matter in *In re Leading Edge* was how the phrase "proceeds derived therefrom" applied to a "judgment, decree or other order." *In re Leading Edge*, 121 B.R. at 131. Additionally, other courts confronted with this very issue have read the plain meaning of the statute in a manner consistent with Judge Gabriel's reading. Consequently, the "passing dictum" found in *In re Leading Edge* and its progeny interpreting M.G.L. c. 221 § 50 will remain in full force and effect.

## CONCLUSION

The Court need not go any further. Even if Massachusetts law applies to this dispute, and this Court rules it does not, Ropes has nothing more than an inchoate lien in the proceeds of its patents, applications and patent prosecution actions. Ropes' claim is not secured and the Objection of the Liquidating Supervisor is SUSTAINED.

A separate order will issue.

Dated: October 8, 2004

Joel B. Rosenthal
United States Bankruptcy Judge

-12-

**ATTACHMENT B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| *In re* | ) | Chapter 11 |
|  | ) | Case Nos. 03-43655-JBR through |
|  | ) | 03-43657-JBR, 03-43659-JBR |
| ENGAGE, INC., *et al.,*[1] | ) | 03-43661-JBR and 03-43662-JBR |
|  | ) | (Jointly Administered) |
| Debtors. | ) | (Substantively Consolidated) |
|  | ) |  |

## ANSWER OF THE LIQUIDATING SUPERVISOR TO THE "PROTECTIVE MOTION OF ROPES & GRAY LLP UNDER 28 U.S.C. § 158(a)(3) AND BANKRUPTCY RULE 8003 FOR LEAVE TO FILE INTERLOCUTORY APPEAL"

Craig R. Jalbert, the Liquidating Supervisor (the "Liquidating Supervisor") of and on

behalf of Engage, Inc. ("Engage"), five of its wholly-owned domestic subsidiaries, and their

administratively and substantively consolidated estates (collectively, the "Debtors"), hereby

submits, pursuant to Rule 8003(a) of the Federal Rules of Bankruptcy Procedure, this Answer to

the "Protective Motion of Ropes & Gray LLP Under 28 U.S.C. § 158 (a)(3) and Bankruptcy

Rule 8003 for Leave to File Interlocutory Appeal." The order which Ropes & Gray LLP

("R&G") seeks to appeal is not a final order appealable as of right, but the Liquidating

Supervisor does not object to the district court exercising its discretion to permit an interlocutory

appeal regarding some but not all of the issues raised by R&G.[2]

### FACTS

1.       On June 19, 2003 (the "Petition Date"), the Debtors filed their petitions for relief

under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

---

[1] The Debtors are the following entities: Engage, Inc., Media Bridge Technologies, Inc., Ad Smart Corp., Fly-cast
Communications Corp., Acknowledge, Inc., and Internet Profiles Corp.

[2] The Liquidating Supervisor reserves all of his rights to file a motion to dismiss R&G's notice of appeal.

FHBOSTON/1122551.4

"Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").

2.      On or about August 4, 2003, following an auction and sale conducted by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code, 11 U.S.C. § 363, JDA Software Group, Inc. purchased substantially all of the Debtors' assets, including certain of the patents and patent applications upon which R&G has asserted an attorney's lien, and assumed certain of the Debtors' liabilities (the "Section 363 Sale").

3.      On September 15, 2003, R&G filed a proof of claim in the aggregate amount of $160,874.91 "plus costs of collection" for allegedly unpaid pre-petition patent and licensing work rendered from in or around October 2001 through May 2003. More specifically, R&G asserted that it held attorney's liens under Mass. Gen. Laws ch. 221, § 50 in the amounts of (a) $45,198.29 against the proceeds from the sale of certain patents and patent applications sold during the Section 363 Sale, and (b) $63,538.82 against the proceeds from a pre-petition sale by the Debtors of other patents and patent applications which netted the Debtors $100,000 (the "Pre-Petition Sale"). R&G also asserted that it held an unsecured claim in the amount of approximately $49,517.37 for allegedly unpaid corporate licensing work performed for Engage in 2003. Finally, R&G asserted, pursuant to 11 U.S.C. § 506(b), a secured claim of not less than $737.50 for fees and expenses paid to outside collection counsel prior to the Petition Date.

4.      On May 20, 2004, the Bankruptcy Court entered the Order Confirming Debtors' Second Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code, Dated March 30, 2004 (the "Confirmation Order" and the "Plan," respectively). The Plan became effective on or about June 2, 2004. Pursuant to, *inter alia*, the Plan and the Confirmation Order, the

Liquidating Supervisor was charged with the responsibility, among other things, to commence and prosecute any and all objections to claims.

5.      On August 4, 2004, the Liquidating Supervisor filed the Objection to the Secured Claim of Ropes & Gray LLP (the "Objection"), arguing, among other things, that (a) the Massachusetts attorney's lien statute did not apply to patents and patent applications; (b) R&G was not entitled to collection costs under 11 U.S.C. § 506(b)[3]; and (c) R&G had failed to document adequately its claim. In the Objection, the Liquidating Supervisor specifically argued that R&G's detailed time and billing records would be necessary in assessing, among other things, the reasonableness of R&G's claim for $63,538.82 in fees and expenses against the $100,000 proceeds from the Pre-Petition Sale, assuming that the Debtors retained any of those proceeds as of the Petition Date and that R&G could trace them. The Liquidating Supervisor also requested that the Bankruptcy Court order R&G to produce detailed time records before ruling on R&G's claim on an unsecured basis.

6.      On September 17, 2004, the Liquidating Supervisor filed a Reply to the Response of Ropes & Gray LLP to the Objection in which the Liquidating Supervisor, among other things, again disputed that R&G held a secured claim and asserted that R&G's detailed time records were necessary to assess the reasonableness of R&G's fees. The Liquidating Supervisor further asserted that, to the extent it was asserting a secured claim, R&G had the burden of establishing how much of the consideration paid as part of the Section 363 Sale was allocable to the relevant patent and patent applications, and reiterated that, in the event that R&G was found to hold a secured claim, it was R&G's burden to trace the proceeds of the Pre-Petition Sale.

---

[3] R&G has since dropped its claim for collection costs.

7.      On September 21, 2004, the Bankruptcy Court held a hearing on the Objection. On the day before the hearing, R&G produced to counsel for the Liquidating Supervisor over 400 pages of time and billing records as support of its aggregate claim amount. According to these records, among other things, on or around October 18, 2002, R&G submitted a single invoice in the amount of $93,430.23 (representing approximately 58% of the total claim amount) for work allegedly performed over a ten month period, October 1, 2001 through July 31, 2002.

8.      On October 8, 2004, the Bankruptcy Court issued an Order and Memorandum of Decision sustaining the Liquidating Supervisor's Objection on two grounds (the "October 8 Order"). First, the Bankruptcy Court held that, under Massachusetts choice of law principles, Virginia's attorney's lien statute governed this dispute because the patent actions were filed in the United States Patent and Trademark Office which is located in Virginia, and that R&G did not hold a lien under the Virginia statute. The Bankruptcy Court ruled, in the alternative, that even if the Massachusetts attorney's lien statute governed, it did not apply to patent prosecution work because neither a patent nor a patent application constitute the requisite "judgment, decree or other order" under the plain language of the Massachusetts statute.

9.      The Bankruptcy Court did not determine the amount, if any, of the unsecured claim held by R&G. As will be reflected in the transcript of the September 21, 2004 hearing, the only issue then before the Bankruptcy Court was whether R&G's claim was secured. The parties have not yet joined issue on the extent to which R&G's aggregate claim amount is supported by the invoices and time records it has produced, and the Bankruptcy Court has not made any determination in that regard.

<u>ARGUMENT</u>

A.    **The October 8 Order Is Not A Final Order**

10.    The October 8 Order is not a final order under 28 U.S.C. § 158(a) even under the relaxed standard applicable in bankruptcy cases. "Finality is viewed more flexibly in the bankruptcy context than it is in other civil litigation contexts." *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir. 1985). This is because a myriad of discrete controversies involving different parties and issues may arise in the course of a protected bankruptcy case. As such, a "bankruptcy [court] order need not dispose of all aspects of a case in order to be final; an order disposing of a 'discrete dispute within the larger case' will be considered final and appealable." *Id.* (citing *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)). Relaxation of the finality doctrine is only appropriate, however, "on sufficient showing of 'special considerations'" that are unique to bankruptcy proceedings. *In re Harrington*, 992 F.2d 3, 5-6 (1st Cir. 1993) (stating that if appellate review was "available on demand whenever the district court definitively resolved a contested *legal issue*, without regard to whether the entire adversary proceeding had been resolved, the 'finality' rule would be eviscerated") (emphasis in original).

11.    For an order to be final, it must "conclusively determine" the particular dispute. *American Colonial Broad.*, 758 F.2d at 801. Thus, a final order is "one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree." *Id.* (citing *City of Louisa v. Levi*, 140 F.2d 512, 514 (6th Cir. 1944)). In contrast, an order "which 'does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to

be taken in order to enable the court to adjudicate the cause on the merits' is considered interlocutory." *Id.* (citations omitted).

12.    The October 8 Order did not decide several pending disputes between R&G and the Liquidating Supervisor and it does not present any "special considerations" that are unique to bankruptcy proceedings. All that the Bankruptcy Court has determined so far is that R&G does not hold a secured claim; it did not even find that R&G holds an unsecured claim, much less in what amount. Thus, even applying the more flexible definition of finality employed in the bankruptcy context, the October 8 Order did not "conclusively determine" the discrete dispute between R&G and Liquidating Supervisor.

13.    Acknowledging that the October 8 Order "might be regarded as interlocutory because the final amount of the claim, as an unsecured claim, has been objected to but not yet resolved by the Bankruptcy Court" (Protective Mot. ¶ 16), R&G relies on *In re Saco Local Dev. Corp.*, 711 F.2d 441 (1st Cir. 1983), in arguing that an order determining the priority of a claim is final, even when the amount of the claim has not yet been determined. (*Id.* at p.1, n.1.) R&G also asserts that it "is not aware of any actual dispute over the aggregate amount of R&G's claim, and therefore, as a practical matter, resolution of the underlying dispute would provide a final resolution of the claim." (*Id.*, at ¶ 19.) R&G is mistaken on both counts.

14.    Under *Saco*, an order that does not set a precise damages figure is final only if it "merely leave[s] the court with ministerial or mechanical tasks concerning damages." 711 F.2d at 446. In *Saco*, the bankruptcy court had entered an order allowing a claim as a priority claim under 11 U.S.C. § 507(a)(4), but the total claim amount remained subject to reduction for amounts entitled to priority status under 11 U.S.C. § 507(a)(3). *See id.* at 443. In holding the order to be final, the Court of Appeals emphasized that once the claims entitled to priority under

section 507(a)(3) were determined, "setting the section 507(a)(4) figure w[ould] be purely

mechanical." *Id.* at 446. Thus, the order left the claimant "with nothing more to do [other] than

await the outcome of third-party litigation" which would determine the section 507(a)(3)

amount. *Id.*

15.    *Saco's* rationale is inapplicable here. As discussed above, there are several

unresolved issues between R&G and the Liquidating Supervisor, including, without limitation,

those raised by the over 400 pages of records tendered by R&G the day before the September 21

hearing. Resolution of this and the other outstanding issues will require more than the

"ministerial or mechanical tasks" contemplated by *Saco*.[4]

> ### B.    The District Court Should Exercise Its Discretion And Hear
> ### An Appeal Of The Questions Presented By The October 8 Order

16.    The October 8 Order presents the following questions on appeal:

- Under Massachusetts choice of law principles, does the Virginia attorney's lien statute govern this dispute?

- If the Massachusetts attorney's lien statute governs this dispute, does it apply to patent prosecution work?

17.    Under 28 U.S.C. § 158(a)(3), a district court has the discretion to allow an appeal

of a non-final bankruptcy court order which presents "a discrete and well-framed issue of law."

*Stevens v. CSA, Inc.*, 271 B.R. 410, 413 (D. Mass. 2001); *see also In re Salem Suede, Inc.*, 221

B.R. 586, 597 (D. Mass. 1998) (exercising discretion under 11 U.S.C. § 158 to review "narrowly

tailor[ed]" determinations of the bankruptcy court). Moreover, the discretion granted under 28

---

[4] The non-First Circuit authority cited by R&G is inapposite or distinguishable. *In re Stoecker*, 5 F.3d 1022, 1026-27 (7th Cir. 1993) (order setting priority and claim amount was final where remand (1) to attach supporting documentation to claim was "purely ministerial"; (2) to litigate claim for attorney's fees was "collateral matter"; and (3) to calculate post-petition interest was merely "arithmetical"); *In re J. Catton Farms, Inc.*, 779 F.2d 1242, 1250 (7th Cir. 1985) (order establishing priority *and* claim amount was final); *In re Rodriguez*, 272 B.R. 54, 57 (D. Conn. 2002) (order setting forth calculation for valuing security interest was final though ultimate claim amount depended on value of the debtor's property).

U.S.C. § 158 is greater than the discretion under 28 U.S.C. § 1292(b). *See Salem Suede*, 221 B.R. at 596. The Liquidating Supervisor does not object to the district court addressing the Bankruptcy Court's decision holding that Virginia's attorney's lien statute governs, and that, alternatively, the Massachusetts attorney's lien statute does not apply to patent proceedings.

18.    This district court should not, however, grant R&G's motion in its entirety. R&G has attempted to present two additional issues, neither of which was decided by the Bankruptcy Court, concerning the alleged "extinguishment" of an attorney's lien as a result of a bankruptcy or non-bankruptcy sale of a patent application. (Protective Mot. ¶¶ 4-5.) R&G mischaracterizes the October 8 Order when it states that the Bankruptcy Court held that an "attorney's lien was effectively stripped away from pending patent applications when the Debtor sold those applications." (*Id.* ¶ 12.) Rather, the Bankruptcy Court stated that "an attorney's lien can only exist and become choate when all of the [statute's] elements are met," and held that neither patents nor patent applications satisfied the Massachusetts statute's elements. (October 8 Order ¶ 9.) Accordingly, it never reached the issue of what effect a sale of a patent application would have if an attorney's lien attached thereto. The district court should not address these novel issues in the first instance on appeal.

WHEREFORE, the Liquidating Supervisor respectfully requests that the Court enter an order granting (a) limited interlocutory review of the October 8 Order pursuant to 11 U.S.C. § 158(a)(3), confined to the two questions referenced in paragraph 16 above, and (b) granting such other and further relief as is just.

Respectfully submitted,

CRAIG R. JALBERT, LIQUIDATING
SUPERVISOR OF ENGAGE, INC., *et al.,*

By his attorneys,


　　/s/ Euripides D. Dalmanieras
Andrew Z. Schwartz (BBO #544653)
Richard W. Benka (BBO # 37320)
Euripides D. Dalmanieras (BBO #650985)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Tel.:  (617) 832-1000
Fax:  (617) 832-7000
*bctnotices@foleyhoag.com*

Dated: October 28, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re* )<br>)<br>ENGAGE, INC., *et al.,* Debtors. )<br>_____ )<br>)<br>ROPES & GRAY LLP, )<br>)<br>        Appellant, )<br>)<br>v. )<br>)<br>CRAIG R. JALBERT, LIQUIDATING )<br>SUPERVISOR OF ENGAGE, INC., )<br>)<br>        Appellee. )<br>_____ ) | Case No. 04-40225-DPW |

## CERTIFICATE OF SERVICE

I, Elizabeth A. Amoroso, hereby certify that, on this the 18th day of November, 2004, I caused a true and accurate copy of the following:

1.     Motion To Amend Or Clarify Procedural Order; and
2.     this Certificate Of Service

to be delivered to

D. Ross Martin, Esq.
Ropes and Gray LLP
1 International Place
Boston, MA 02210

by first class mail, postage prepaid.

/s/ Elizabeth A. Amoroso
Elizabeth A. Amoroso
Paralegal
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Tel.: (617) 832-1000
Dated: November 18, 2004              Fax: (617) 832-7000