UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re ) | |
| ) | |
| ENGAGE, INC., *et al.*, ) | Case Nos. 03-43655-JBR, *et seq.* |
| ) | |
| Debtors. ) | Chapter 11 |
| ) | |
| ) | |
| ROPES & GRAY, LLP, Appellant ) | |
| ) | |
| v. ) | Case No. 04-cv-40225-DPW |
| ) | |
| CRAIG J. JALBERT, *as* ) | |
| *Liquidating Supervisor*, Appellee ) | |

**OPPOSITION OF ROPES & GRAY LLP TO LIQUIDATING SUPERVISOR'S
MOTION TO AMEND OR CLARIFY PROCEDURAL ORDER**

Ropes & Gray LLP ("R&G") hereby opposes to the Motion to Amend or Clarify Procedural Order (the "Motion") of Craig J. Jalbert, the Liquidating Supervisor (the "Liquidating Supervisor") of the bankruptcy estate of Engage, Inc. and its affiliated debtors (the "Debtors" or "Engage"). R&G has taken an appeal from the bankruptcy judge's final order denying R&G's secured claim against Engage in its entirety (the "Lien Order"). In the Lien Order the bankruptcy judge first concluded that R&G's claim to an attorney's lien was governed by Virginia law. The bankruptcy judge then proceeded to issue three alternative bases for his ruling: that patents and patent prosecution work do not fall within the purview of chapter 221, section 50 of the Massachusetts General Laws

- 1 -

(the "Massachusetts Attorney's Lien Statute"), that the Massachusetts Attorney's Lien Statute does not provide for a lien on the proceeds of a "cause of action, counterclaim or claim" such as the claims made in a patent application, and that R&G had no lien on the proceeds of the free-and-clear bankruptcy sale of the Debtors' patents and patent applications.

The Liquidating Supervisor's Motion both misrepresents the nature of R&G's appeal and misinterprets the scope of the bankruptcy judge's decision. R&G's conduct and pleadings on appeal have consistently reflected the fact that the Lien Order was a final order from which R&G may appeal as of right: R&G paid the full filing fee (not the lower interlocutory appeal fee) and has complied with all deadlines set in the bankruptcy rules for an appeal from final order. As R&G has also consistently stated, its motion for leave to file an interlocutory appeal was filed as a *protective* measure, in anticipation of a raft of procedural objections and posturing from the Liquidating Supervisor. The procedural order that this Court issued for this bankruptcy appeal takes precisely the correct approach: it consolidates all issues for decision, avoiding a morass of procedural skirmishing.

Fundamentally, the Liquidating Supervisor has objected, but only by half measures. The Liquidating Supervisor does not dispute the propriety of an appeal from the bankruptcy judge's decision, but at the same time seeks to limit the portions of the Lien Order to be addressed. The Liquidating Supervisor's view is illogical, inconsistent with the broad reach of the Lien Order, and contrary to the interests of judicial economy.

**REPRISE OF QUESTIONS PRESENTED ON APPEAL**

1. For the convenience of the Court, R&G reproduces here the questions presented on appeal, which were set forth both in the Protective Motion of Ropes & Gray LLP Under 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8003 for Leave to File Interlocutory Appeal (the "Protective Motion") and the Designation of Items to be Included in the Record on Appeal from Order Sustaining Objection of the Liquidating Supervisor to the Secured Claim of Ropes & Gray LLP and Statement of Issues to be Presented by Ropes & Gray LLP:

> Question 1: When a Massachusetts lawyer is representing a Massachusetts client before a federal administrative agency, is the existence of an attorney's lien established by Massachusetts law or by the law of the state in which the federal agency's office happens to be located?
>
> Question 2: Does chapter 221, section 50 of the Massachusetts General Laws grant a Massachusetts attorney a lien on patents and patent applications for patent prosecution work performed on behalf of a client?
>
> Question 3: As a matter of Massachusetts statutory or common law, when a Massachusetts attorney has a lien on a particular cause of action or administrative proceeding, and the action or administrative rights are sold during the pendency of such action or proceeding (e.g., the sale of a receivable during a collection action or sale of a patent application), is the attorney's lien extinguished or does it attach to the proceeds of the sale?
>
> Question 4: As a matter of federal bankruptcy law, when a Massachusetts attorney has a lien on a particular cause of action or administrative proceeding, and the action or administrative rights are sold pursuant to a bankruptcy court order that specifically provided that liens attach to the proceeds of the sale, is the attorney's lien extinguished by the sale or does it attach to the proceeds of the sale?

**THE LIEN ORDER IS A FINAL ORDER**

2. As a general rule, a final order is one that disposes of a "judicial unit," a concept that includes both a single lawsuit and discrete disputes within a larger, complex litigation. *See, e.g., In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983). Courts broadly recognize, and the Liquidating Supervisor concedes, that the

circumstances of a bankruptcy case require that the finality doctrine be applied more liberally than in traditional civil litigation. *See, e.g.*, *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir. 1985) ("Finality is viewed more flexibly in the bankruptcy context than it is in other civil litigation contexts."); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 647 (B.A.P. 1st Cir. 1998) ("Compared to the traditional civil case, a bankruptcy case holds more potential for the resolution of discrete disputes that might qualify as 'judicial units' for the purposes of appeal.").

        3.      First Circuit case law provides unambiguous support for the proposition that an order determining the validity of a creditor's claim to security is a final order that may be appealed as of right. In *Stubbe v. Banco Cent. Corp. (In re Empresas Noroeste, Inc.)*, 806 F.2d 315 (1st Cir. 1986), the First Circuit explicitly acknowledged that a dispute over a creditor's secured status was the kind of "discrete dispute within a larger case" that gives rise to an appealable final order. *Id.* at 316–17. The *Saco* case also supports this view. In *Saco*, then-Judge Breyer, writing for a unanimous panel, reasoned that an order granting priority status to an insurer's claim for unpaid insurance premiums was a final order, notwithstanding the fact that the bankruptcy judge had not determined the amount of the priority claim. *In re Saco*, 711 F.2d at 446–48. The challenge to the finality of the order determining the priority of the insurer's claim in *Saco* was directed at the fact that the judge's order had not determined the *extent* of the insurer's priority claim. *Id.* at 446 ("The present order does not settle the entire dispute between the trustee and Northwestern; it leaves open the question of how much of the claim will be entitled to the priority."). The crux of the matter lay in the fact that the extent of the insurer's

priority claim was conditional upon the resolution of other priority disputes. *Id.* Notwithstanding these contingencies, the First Circuit concluded that the order establishing priority was a final order for the purposes of a bankruptcy appeal: to decide otherwise "would mean that no order recognizing a claim or priority would be 'final' until the entire bankruptcy case was completed — or at least until all other claims of equal or greater priority were resolved." *Id.* at 448.  The Liquidating Supervisor's attempt to distinguish the priority order in the *Saco* case from the Lien Order is unsuccessful.  Not only does the *Saco* apply to the present appeal, but the logic of Justice Breyer's opinion supports the finality of the Lien Order with even greater force than the facts of that case.

    4.    The Lien Order fully and finally disposed of a controversy that is a single judicial unit.  This dispute was joined, in the first instance, as a result of the Liquidating Supervisor's Objection to the Secured Claim of Ropes & Gray LLP (the "Objection").  The Objection presented to the Bankruptcy Court a discrete dispute regarding the validity of R&G's secured claim.  Except for a minor objection regarding the documentation of R&G's claim — an objection that R&G has separately disposed of by providing the requested billing detail to the Liquidating Supervisor — the Objection addressed only the extent to which R&G held a valid secured claim against the Debtors by virtue of the Massachusetts Attorney's Lien Statute.[1]  The Objection did not address the allowed amount of R&G's claim, nor did it challenge the validity of R&G's claim on any other

---

[1] The introductory paragraph of the Objection clearly indicates that the Liquidating Supervisor was objecting not to R&G's claim generally, but only to the secured claim arising from R&G's attorney's lien: " the Liquidating Supervisor . . . hereby objects to the secured claim of Ropes & Gray LLP ("R&G"), and to the validity, priority, perfection and/or extent of R&G's alleged attorney's charging liens on the proceeds of certain sales of the Debtors' patents and patent applications." Objection, at 1.

grounds.[2]  By filing the Objection in this form, the Liquidating Supervisor clearly acknowledged that the question of R&G's secured claim was separable from the question of the allowed amount and validity of R&G's claim generally and, therefore, constituted a discrete judicial controversy as to which a final order might be granted.

### ALL QUESTIONS PRESENTED BY R&G ARE PROPER FOR APPEAL

5. For some reason, the Liquidating Supervisor seeks to delay resolution of this relatively simple litigation by asking this Court not to address essential questions relating to the status of R&G's claim.  On the one hand, the Liquidating Supervisor has expressed his support for an appellate determination of whether Virginia law establishes the existence of R&G's attorney's lien and whether the protections of the Massachusetts Attorney's Lien Statute extend to patent prosecution work (respectively, Question 1 and Question 2 set forth in ¶ 1 above).  On the other hand, the Liquidating Supervisor resists an appeal on the issues regarding the attachment of R&G's attorney's lien to the proceeds of patents and patent applications sold by the Debtors before (Question 3) and after (Question 4) the filing of their chapter 11 cases.  Notwithstanding the Liquidating Supervisor's views, there is nothing "hypothetical" about these latter two questions. Motion, at 3.  It is undisputed that all the Debtors' patents and patent applications have been liquidated.  Consequently, the only thing to which R&G's attorney's lien now attaches are the proceeds.  Any appeal that failed to address Questions 3 and 4 would be incomplete.

---

[2] The Supervisor incorrectly describes these issues as "pending."  Answer of the Liquidating Supervisor to the "Protective Motion of Ropes & Gray LLP Under 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8003 for Leave to File Interlocutory Appeal," ¶ 12 at 6.  These issues are not raised in the Objection. Nor has the Supervisor raised them in any other pleading.  Consequently, the presumptive validity of the amount of R&G's claim against the Debtors as set forth in its proof of claim remains in full force.

6. Questions 3 and 4 were fully briefed and argued before the bankruptcy judge and decided in the Lien Order. Indeed, recognizing that R&G's status as a secured creditor depended on the validity of its lien against proceeds, the bankruptcy judge explicitly addressed the interpretation of the phrase "proceeds derived therefrom" in the Massachusetts Attorney's Lien Statute. The bankruptcy judge specifically affirmed the reading of this phrase set forth in *In re Leading Edge Prods. Inc.*, 121 B.R. 128 (Bankr. D. Mass. 1990). Disagreeing with R&G's contention that the *Leading Edge* court's interpretation was *dictum* (and in any event incorrect), the bankruptcy judge held that the phrase "proceeds derived therefrom" modifies only the words "judgment, decree or other order" and not "cause of action, claim or counterclaim." There would be no reason for the bankruptcy judge to take up this issue, had he not been addressing R&G's central argument in Question 3 and Question 4, *i.e.* that R&G's attorney's lien attached to the proceeds of the patents and patent applications sold by the Debtors.

7. Furthermore, the issue of whether events, such as intervening sales, can perfect an attorney's lien was also presented to and decided by the bankruptcy court. Again, the Liquidating Supervisor overlooks and ignores specific passages of the Lien Order, for example, the bankruptcy judge's response to R&G's argument regarding the effects of a post-bankruptcy sale. In rejecting R&G's contention that "Section 363 of the Bankruptcy Code permits the sale of its property free and clear of the attorney's lien in exchange for a lien on the proceeds," the bankruptcy court held (erroneously) that such a bankruptcy sale of a patent application would not make an attorney's lien choate, on the theory that the state statute confers a protectable lien interest only upon the issuance of a "judgment, decree or other order." Again, the Court considered and disagreed with one

of R&G's central arguments; intriguingly, on the grounds that a state law trumps the undisputed (even by the Bankruptcy Court) manner in which the Bankruptcy Code operates.

8.  The Liquidating Supervisor essentially argues that Questions 3 and 4 were not decided because they were "hypothetical," by which the Liquidating Supervisor appears to mean that they were not necessary to the bankruptcy judge's primary holding. By this logic, no alternative holding in any case would be eligible for decision on appeal. Indeed, this logic shows the incoherence of the Liquidating Supervisor's argument – if alternative holdings are not to be addressed on appeal, then presumably this Court also should not address Question 2, which the Liquidating Supervisor actually supports for appeal, because the bankruptcy judge's choice of Virginia law rendered the application of Massachusetts law to R&G's claim moot. As this Court well knows, this is not how trial courts and appellate courts interact. In fact, federal district courts routinely issue alternative holdings as part of their rulings precisely so that appellate panels can efficiently dispose of cases, and so that the lower courts are not burdened by serial remands.

9.  Notwithstanding the Liquidating Supervisor's peculiar parsing of the bankruptcy court's decision, the plain terms of the Lien Order show that the bankruptcy judge addressed the choice of law governing R&G's attorney's lien, the application of the Massachusetts Attorney's Lien Statute to patents and patent applications, and the effect of the Debtors' sale of patents and patent applications on the continuation of R&G's attorney's lien in the proceeds thereof. Accordingly, because these issues were

presented, considered, and decided, they are appropriate for appeal. To hold otherwise would be to eviscerate the very purpose of taking an appeal.

### ALL QUESTIONS PRESENTED SATISFY THE REQUIREMENTS FOR AN INTERLOCUTORY APPEAL

10. Should this Court decide that the Lien Order is not a final order, R&G respectfully submits that all four questions presented satisfy the requirements for an interlocutory appeal. It is proper for a District Court to hear a discretionary interlocutory appeal from a bankruptcy court order when the order appealed from involves a "controlling question of law" as to which there is "substantial ground for disagreement" and when "an immediate appeal may advance the ultimate termination of the litigation." *Fleet Data*, 218 B.R. at 652 (citing the standards set forth in 28 U.S.C. §1292(b) for discretionary appeals from the District Courts to the Courts of Appeals); *see also Monahan v. Mass. Dep't of Revenue*, 215 B.R. 287, 289 (D. Mass. 1997); *In re Dino's, Inc.*, 183 B.R. 779, 781 (S.D. Ohio 1995) (citing cases).

11. Each of the four questions presented by R&G involves a controlling question of law. R&G's entitlement to a secured claim against the Debtors derives entirely from the Massachusetts Attorney's Lien Statute. Consequently, the bankruptcy judge's choice of Virginia law to determine the existence of R&G's lien (Question 1) and his determination that the Massachusetts Attorney's Lien Statute does not apply to patents, patent applications or the proceeds thereof (Questions 2, 3 and 4) are questions that "control the outcome of the underlying case." *Fleet Data*, 218 B.R. at 652. In this respect, Questions 3 and 4 are no less controlling than Questions 1 and 2, because the only property of the bankruptcy estate currently encumbered by R&G's liens is proceeds: if R&G's lien does not attach to the proceeds of the patents and patent applications, "no

alternate theory exists on which [R&G] could succeed" against the Liquidating Supervisor's objection to its secured claim. *Watson v. Boyajian (In re Watson)*, 309 B.R. 652, 659 (B.A.P. 1st Cir. 2004).

12. The issues outlined by R&G present precisely the kind of "difficult and *pivotal* questions of law not settled by controlling authority" that merit an interlocutory appeal. *Fleet Data*, 218 B.R. at 653 (quoting *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)) (emphasis in original); *see also Pacamor Bearings v. Minebea Co., Ltd.*, 892 F. Supp. 347, 361 (D.N.H. 1995). The question whether the Massachusetts Attorney's Lien Statute protects a Massachusetts lawyer representing a Massachusetts client before the United States Patent and Trademark Office is no mere occasion for "garden variety legal argument." *Fleet Data*, 218 B.R. at 653. Rather, the questions presented on appeal are a matter of first impression under Massachusetts law and clearly provide substantial grounds for a difference of opinion: witness only the bankruptcy judge's disagreement with the conclusions of the Minnesota Supreme Court and the Southern District of New York on the basis of analogous and similarly worded statutes.

13. Finally, a resolution of the status of R&G's attorney's lien on appeal would not only materially advance the dispute over R&G's secured claim, but also would assist in the ultimate resolution of the Debtors' bankruptcy cases. First, as described above, a consideration of all four questions presented on appeal is necessary to resolve the status of R&G's secured claim. If the Court finds in favor of R&G on Questions 1 and 2, the validity of R&G's secured claim can only be fully and finally established by a determination of R&G's claim to the proceeds of the sales of patents and patent applications (Questions 3 and 4). Furthermore, to the extent there is any

remaining uncertainty over the precise amounts of the secured and unsecured R&G claims, it should be put to rest as soon as possible.  One of the major tasks remaining in the case is a separate litigation that the Liquidating Supervisor is pursuing against an unrelated third party, litigation that the Liquidating Supervisor hopes will afford a substantial recovery for unsecured creditors.  The Liquidating Supervisor has informed R&G that he desires to know what the size of the unsecured claims pool is in the case — a matter that will be directly affected by the question whether R&G is secured — in order to facilitate settlement discussions in that third-party litigation.  Because settlements in these situations are often structured as a payment of fixed percentage recoveries to all creditors in a case, an interlocutory appeal from the Lien Order would likely facilitate the overall resolution of the Debtors' bankruptcy cases.  *See In re Kruckenberg*, 160 B.R. 663 (D. Kan. 1993) (holding that interlocutory appeal was appropriate from order regarding secured status of claims where such appeal would resolve lien issues quickly and, in turn, might assist in final resolution of the bankruptcy case).

### BRIEFING SCHEDULE

14. Under the circumstances, R&G opposes the Liquidating Supervisor's motion to amend the schedule set forth in the Court's Procedural Order of November 16, 2004.  R&G has already filed its appellant's brief on all four questions presented and is content to address any additional issues (*e.g.*, certification to the Supreme Judicial Court) in its reply brief, unless the Court directs otherwise.  For its part, the Liquidating Supervisor should be in no need of an extension, having had notice for over a month of the full range of questions presented.  Even assuming that the Liquidating Supervisor is

successful in restricting the questions to be addressed by this Court on appeal, R&G fails to understand why the Liquidating Supervisor needs extra time to brief fewer issues.

WHEREFORE, R&G respectfully requests the District Court to enter an order (i) denying the Liquidating Supervisor's Motion in its entirety and (ii) granting such other and further relief as it deems just and proper.

Dated: November 24, 2004

                        ROPES & GRAY LLP

                        /s/ Stephen Moeller-Sally
                        D. Ross Martin (BBO#629853)
                        Stephen Moeller-Sally (BBO#652383)
                        ROPES & GRAY LLP
                        One International Place
                        Boston, Massachusetts 02110
                        Telephone:   617-951-7000
                        Telecopier:   617-951-7050