UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: <br><br> ENGAGE INC., <u>et</u> <u>al</u>., <br><br><br> Debtors. <br>——————————————— <br><br> ROPES & GRAY LLP, Appellant <br><br> v. <br><br> CRAIG J. JALBERT, <br> *as Liquidating Supervisor*, Appellee | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case Nos. 03-43655-JBR, <br> *et seq*. <br><br> Chapter 11 <br><br><br><br><br><br><br><br> Case No. 04-cv-40225-DPW |

# **REPLY BRIEF OF APPELLANT**

9620876_3

## TABLE OF CONTENTS

                                                                                                                                  Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

    I.    Massachusetts law governs the attorney-client relationship between Massachusetts lawyers and the clients they represent before federal administrative agencies like the PTO. .............................................................. 3

    II.    The Massachusetts Attorney's Lien Statute provides for a lien for patent prosecution work ..................................................................................... 6

    III.    The Massachusetts Attorney's Lien Statute provides for a lien on proceeds of patents and patent applications. ................................................................ 11

    IV.    Certification to the Supreme Judicial Court of all state law issues raised in this appeal is appropriate. .................................................................... 13

CONCLUSION ................................................................................................................ 14

**TABLE OF AUTHORITIES**

**CASES**

*Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241 (1993). ..........................................................5

*Dow v. Donovan*, 150 F.Supp.2d 249, 260 (D. Mass. 2001) ............................................13

*Hedman, Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l Inc.*,
    No. 92 Civ. 2757, 1994 WL 18536 (S.D.N.Y. 1994) ..............................................9

*In re American Colonial Broadcasting, Corp.*, 758 F.2d 794 (1st Cir. 1985)...................10

*In re American Metrocomm Corp.*, 274 B.R. 641 (Bankr. D. Del. 2002) .........................5

*In re Leading Edge Prods., Inc.*, 121 B.R. 128 (Bankr. D. Mass. 1991).............................7

*Koons Buick Pontiac GMC, Inc. v. Nigh*, 125 S.Ct. 460 (2004) ........................................12

*Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods, Inc.*,
    295 N.W.2d 514 (Minn. 1980)................................................................................9

*Stewart v. Milford-Whitinsville Hospital,* No. Civ. A. 00-4021-NMG, 2004 WL 2181588
    (D. Mass Aug. 3, 2004) at *2 ...............................................................................13

*United States Steel v. DeMatteo Const. Co.,* 315 F.3d 43, 53 (1st Cir. 2002) ..................13

*Webber v. Napolitano*, 320 Mass. 765 (1947) ....................................................................8

**STATUTES AND RULES**

Mass. Gen. Laws. Ch. 221, § 50 ......................................................................................4, 11

Mass. Gen. Laws, ch. 221, § 50A ...................................................................................11, 12

Mass S.J.C.R. 1:03...............................................................................................................13

**SECONDARY AUTHORITY**

*Black's Law Dictionary* (Abridged, 7th ed.).......................................................................10

Erwin Chemerinsky, *Federal Jurisdiction* 308-309 (2d ed. 1994).......................................8

iii

## **INTRODUCTION**

Although framed by four distinct issues, this appeal revolves around one basic question of Massachusetts law: Does chapter 221, section 50 of the Massachusetts General Laws (the "Massachusetts Attorney's Lien Statute") protect Massachusetts attorneys engaged in patent prosecution work for their clients? The answer to this question will not only determine whether Ropes & Gray LLP ("R&G") has a secured claim against the bankruptcy estates of Engage, Inc. and its affiliated debtors (collectively, the "Debtors"), but also will have a broader impact on the Massachusetts patent bar, the availability of essential legal services to entrepreneurial technology companies and the promotion of innovation through the efficient operation of the patent system. For these reasons, all the issues presented by R&G deserve to be addressed on appeal, and the three questions of Massachusetts law should be certified to the Supreme Judicial Court.

This appeal first presents a preliminary issue of choice of law. In his Appellee's Brief, Craig J. Jalbert, the Liquidating Supervisor of the Debtors (the "Liquidating Supervisor"), struggles to defend the Bankruptcy Court's erroneous conclusion that Virginia law determines whether R&G has an attorney's lien for patent prosecution work. As discussed in detail below, choice of law analysis demands that Massachusetts law govern. However, the error of the Bankruptcy Court's and Liquidating Supervisor's logic can be seen quickly and clearly by recognizing that their choice-of-law analysis produces the absurd result of the extraterritorial application of Virginia law to patent lawyers in all forty-nine other states of the Union.

On the central issue – whether patent prosecution work is protected by the attorney's lien statute – the Liquidating Supervisor's arguments are essentially an

1

exercise in sophistry intended to divert attention from the plain text of the statute, the clear purpose of the statute, and the most direct guidance from other courts confronting this question. The Liquidating Supervisor supports an interpretation of the Massachusetts Attorney's Lien Statute that effectively nullifies the 1945 amendment that extended the reach of the attorney's lien and expressly confers a lien on all "claims" made in "any federal administrative proceeding." To this end, the Liquidating Supervisor ignores the fact that both courts that have been asked whether modern attorney's lien statutes cover patent prosecution work have ruled that the attorney's lien applies.

Finally, the Liquidating Supervisor attempts to create a parade of horribles that he asserts would result from attorney's receiving lien protection for their patent prosecution work. The Liquidating Supervisor speaks of "roving liens" and clouds on titles to intellectual property. This is just smoke and mirrors. The attorney's lien is not some secret lien. Indeed, the potential holder of such a lien can be simply identified by looking at the signature on the patent application, which is a public document (indeed, a public document that anyone interested in title to the patent would presumably examine as part of diligence). And every lien exists for a reason – to protect a right to payment. The attorney's lien is no more a cloud on title than any mechanic's lien on a building, mortgage on a home or UCC financing statement on receivables. Liens exist to secure payment, and the legislature has said clearly that it wants attorneys to have liens to protect their work in federal administrative proceedings. There is nothing inappropriate at all about the effect that any lien has on the property encumbered. After all, the attorney's lien, like any other lien, can be extinguished at any time, by payment of the debt.

# ARGUMENT

**I.  Massachusetts law governs the attorney-client relationship between Massachusetts lawyers and the clients they represent before federal administrative agencies like the PTO.**

The Bankruptcy Court's holding that Virginia law governed R&G's claim to an attorney's lien was erroneous. The "most significant relationship" test under the Massachusetts law of conflicts applies in this case,[1] and R&G is at a loss to understand how the Commonwealth of Virginia has *any* relationship to proceedings before the PTO. Following the lead of the Bankruptcy Court, the Liquidating Supervisor mechanically cites numerous cases in which courts determined that an attorney's lien was governed by the law of the state in which the attorney's services were performed.  At the same time, the Liquidating Supervisor ignores the underlying reasons why these courts decided that the place of performance gave rise to the "most significant relationship."[2]  In the cases cited by the Liquidating Supervisor indicate, the significance of the relationship between the place of performance and the attorney's lien depended primarily on the fact that the attorneys would be subject to the local rules, regulations and standards of professional conduct of that state's jurisdiction.  Having no regulatory authority over — or even any conceivable state interest in — proceedings before the PTO, the Commonwealth of Virginia simply cannot have the "most significant relationship" to patent proceedings under fundamental choice of law principles.

On the other hand, in our federal system each state of the union has a clear interest in regulating the practice of its attorneys before federal administrative tribunals.

---

[1] Notwithstanding the Bankruptcy Court's explicit holding that Massachusetts conflict of laws principles govern this dispute, the Liquidating Supervisor argues this point under both Massachusetts and federal law.

[2] R&G would also note that the Liquidating Supervisor's reliance on these cases, all of which address the choice of law principles in contract actions, flatly contradicts his assertion that R&G's lien does not arise under contract for the purposes of any choice of law analysis.

3

In many cases those administrative hearings will take place in the state in which the attorney practices and the client resides or does business. For this very reason, by its own terms the Massachusetts Attorney's Lien Statute applies without limitation to an attorney's authorized appearance in "*any* proceeding before *any* state or federal department, board or commission." Mass. Gen. Laws, ch. 221 § 50 (emphasis added). However, in some instances the federal government will choose to locate certain administrative offices in particular states, or in cases of specialized federal agencies perhaps there will be only one office in the nation, sited in a particular state. The site of the particular federal office building, whether Providence, Rhode Island (for certain Social Security appeals), Oklahoma City, Oklahoma (for the Federal Aviation Administration), or Arlington, Virginia (for the Patent and Trademark Office), should not have any effect on the relationship between an attorney and client in any state of the union. A Massachusetts lawyer hired by a Massachusetts client to prosecute a patent has every expectation that he will be governed by the rules of the attorney-client relationship in Massachusetts, including his ability to get paid. Virginia is the last thing he is expecting.[3]

Again, the only cases cited by the Liquidating Supervisor address situations where an out-of-state attorney appears in another state court or a federal district court. Of course, since federal district courts are located in every state in the union (unlike the

---

[3] For reasons not entirely clear, the Liquidating Supervisor points to several professional biography pages from R&G's website. The Liquidating Supervisor's brief first notes that the identity of the specific attorneys who performed work for the Debtors is not part of the record in this appeal. Then the Liquidating Supervisor chooses biographies of a number of nonlawyers in an apparent attempt to suggest that the work for which the lien is sought in this case is nonlawyer work. This seems odd, because Ropes & Gray has provided – months ago and at the specific request of the Liquidating Supervisor – all of its time and billing detail. As shown in those invoices, substantially all of the work for which attorney's liens are sought was performed by Massachusetts attorneys, none of whose biographies the Liquidating Supervisor chose to include in his submission to this Court. Further only one of the included biographies belongs to a person who actually worked on the matter.

4

USPTO), in all those cases a choice was being made by the attorney appearing out of state. No such choice is available for patent attorneys – there is only one place to file a patent.

The primary case relied on by the Liquidating Supervisor for its choice of law analysis, *In re American Metrocomm Corp.,* 274 B.R. 641 (Bankr. D. Del. 2002) is not even a case about the same kind of attorney's lien as is at issue here. That case involved a retaining lien, as opposed to the charging lien that R&G asserts in this case. Importantly, the Delaware bankruptcy court had to confront a situation in which two different state's laws could not be harmonized; i.e. either the attorney was entitled to retain papers until paid, or not. However, with the charging lien this is not the case. The fact that one jurisdiction does not provide for a lien does not mean that the client who hires a Massachusetts lawyer should be able to hinder and delay his lawyer's collection of a fee. And on this point the <u>statute</u> is undeniably clear – the lien protects the Massachusetts attorney who appears in any state or federal proceeding, judicial or administrative. It may be that an out-of-state court would decline to enforce the Massachusetts attorney's lien for prudential reasons, because of the interpretation of the attorney-client relationship. That should not prohibit a Massachusetts lawyer from prosecuting his attorney's lien granted under this statute against his Massachusetts client in a Massachusetts court. To have the rule proposed by the Liquidating Supervisor is to do no more that to assist clients in evading payment of their lawyers. *See Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 248 (1993) (quoting *Matter of Heinsheimer*, 214 N.Y. 361, 364 (1915)(Cardozo, C.J.) ("[T]he attorney's lien protects attorneys 'against the knavery of their clients, by disabling the clients from receiving the fruits of recoveries

5

without paying for the valuable services by which the recoveries were obtained'"). Indeed, in this case Ropes & Gray is seeking to enforce its Massachusetts attorney's lien, for work conducted in a specialized federal administrative forum (the USPTO), in the Massachusetts-based specialized federal forum that exists precisely for the purpose of collecting debts (the bankruptcy court).  There is no possible unfairness, uncertainly or unreasonable expectation in that.

In their choice-of-law analysis, both the bankruptcy court and the Liquidating Supervisor engage in a blind application of precedents that have nothing to do with the reality of federal administrative proceedings and our federal system.  Indeed, the choice of law rule proposed by the Bankruptcy Court and the Liquidating Supervisor would effectively make Virginia state law the federal law of attorney's liens for patent lawyers. The very absurdity of this result alone warrants the reversal of the Bankruptcy Court's decision regarding the choice of law.

II.     **The Massachusetts Attorney's Lien Statute provides for a lien for patent prosecution work**

On the central question in this appeal, the Liquidating Supervisor sets up a number of disjointed arguments in an attempt to obscure certain unassailable facts about the Massachusetts Attorney's Lien Statute and the arguments made by R&G.

At the outset, it bears repeating that in this case of statutory construction, the text of the statute is exquisitely clear: it provides for a lien (i) <u>from the commencement of an administrative proceeding</u>, (ii) <u>on any claim</u> (iii) <u>in any federal administrative proceeding</u>. In trying to deal with this express statutory grant, the Liquidating Supervisor and the Bankruptcy Court below focus and argue around subsequent language in the statute that grants an additional lien on "judgments, decrees and other orders."  And even then the

6

best argument they can muster is that a federal patent is not an "order" because it (according to them) does not order anyone to do anything. On the contrary, a patent is in fact one of the most powerful and commanding of all federal administrative decisions: when a patent examiner grants the patent, after a sometimes adversarial process, the patent holder has a federally granted right to exclude all other persons from manufacturing, using and selling the patented invention. Tellingly, the Liquidating Supervisor and the Bankruptcy Court have no real answer for – and never deal with – the actual statutory language that gives an actual lien on the administrative proceeding itself – the patent application (a thing that in this situation and many others is worth a substantial amount of money). They cite only to cases dealing with civil lawsuits, which are sold far less often that patent applications. None of the Liquidating Supervisor's cited cases deal with the sale of litigation rights, and these cases simply make the observation that in most civil litigation the attorney's lien is not, as a practical matter, "choate" or really worth much, until the litigation is won. However, the statute demands no judgment, decree or other order for the lien to exist.

  Essentially, both the Bankruptcy Court and the Liquidating Supervisor argue that the current Massachusetts Attorney's Lien Statute should be applied no differently from its predecessor statute, notwithstanding the expressly extended scope of the 1945 amendment. The Liquidating Supervisor cites a line of cases emanating from the prior bankruptcy court decision of *Leading Edge*, 121 B.R. 128 (Bankr. D. Mass. 1991), for the proposition that an attorney has a lien only after a judgment is rendered. The relevant holdings in these cases all rely solely on, directly or indirectly, the *Leading Edge* case. With respect, that decision and its progeny are incorrect in their reasoning. There is no

reason to deny an attorney, whose work has produced a favorable settlement of an action that the attorney filed, a lien on the proceeds of the settlement. The purpose of the 1945 amendment of the attorney's lien statute was to broaden the lien so as not to require a favorable judgment. These courts cited by the Liquidating Supervisor have simply reimposed that requirement. Furthermore, several Massachusetts Appeals Court decisions, at least one of which is unpublished (and therefore is not precedent at all), do not make binding authority on the question. It is the duty of federal courts, when interpreting state laws, to decide what the highest court of the state would decide, leaving this court free to reexamine questions only addressed to date by the bankruptcy courts and the Massachusetts Appeals Court. *See generally* Erwin Chemerinsky, *Federal Jurisdiction* 308-309 (2d ed. 1994) (collecting cases) ("The law is now settled that a federal court must try to predict how the state's highest court is likely to decide the case; the federal court is not obligated to follow lower state court precedents.")

The single Supreme Judicial Court case interpreting the Massachusetts Attorney's Lien Statute in the administrative context, *Webber v. Napolitano,* 320 Mass. 765 (1947), suggests that its protections apply to patent prosecution work. Moving past the invective and supposition in the Liquidating Supervisor's brief,[4] the Apellee's argument boils down to a contention that *Webber* did not deal with the attorney's lien, and that R&G has no Massachusetts case supporting its position that the attorney's lien should apply to patent prosecution work. Nothing could be further from the truth. There can be no dispute that the Superior Court judge held that the Massachusetts attorney's lien applied in the *Webber* case. The SJC's recounting of the facts notes that the statute was at issue in the

---

[4] Of course, the Bankruptcy Court never even mentioned the case, and thus provided no illumination as to its reasons for disagreeing with R&G's arguments on this issue. That the Bankruptcy Court ignored such a case is serious reason to question its analysis.

8

case below and that the lower court judge held that the fees were reasonable, a requirement under the statute that would not otherwise apply to the case. It also cannot be disputed that the SJC affirmed the decision. While it is true that the SJC concluded that the plaintiff attorney would have prevailed regardless of whether he had a statutory lien, what the SJC expressly held was that the attorney had a right to hold and possess the lodging house license he had obtained for his client either under the statute or as a matter of common law. In simple legal terms: the attorney had a lien. Again, resort to the most basic authority shows that a lien is "a legal right or interest that a creditor has in another's property lasting usually until a debt or duty that it secures is satisfied." *Black's Law Dictionary* 745 (Abridged, 7th ed.). Liens include "possessory liens," which is exactly what the SJC said that the attorney in *Webber* had. Properly understood, *Webber* directly supports the conclusion that an attorney's lien applies to patent prosecution work. Like a lodging house license, a patent is a sovereign grant of a valuable commercial property right granted by an administrative body. There is no logical reason to find that the Massachusetts Attorney's Lien Statute protects an attorney's interest in one but not the other.

The Liquidating Supervisor uses similar argumentative tactics to divert attention from the decisions of the only two courts that have actually confronted the issue at hand. On the one hand, R&G notes that the Liquidating Supervisor has not pointed to a single case that denies the attorney's lien for patent prosecution work. On the other hand, the Liquidating Supervisor tries to sweep under the rug the decisions of the federal district court for the Southern District of New York and the Supreme Court of Minnesota by making arguments such as (to paraphrase): "the words 'determination or decision of a

9

court' mean something different than 'decree or order of a court.'" *See Hedman, Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l Inc.*, No. 92 Civ. 2757, 1994 WL 18536 (S.D.N.Y. 1994); *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods, Inc.*, 295 N.W.2d 514 (Minn. 1980). As discussed more fully in R&G's principal brief, basic resort to a dictionary, and to First Circuit case law construing these precise words, belies this distinction. Notably, the Liquidating Supervisor does not even address the fact that the First Circuit has already decided that these phrases mean the same thing. He tries to ignore the inconvenient, on-point case of *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 801 (1st Cir. 1985). No discussion of *In re American Colonial Broadcasting* can be found in his brief.[5]

Finally, on the central issue the Liquidating Supervisor uses the tactic of a supposed parade of horribles. Notwithstanding the dire warnings, an attorney's lien covering patent prosecution work would not "create a roving lien putting at risk every purchaser, assignee, mortgagee, and licensee of any 'economically valuable asset'" or work an "unprecedented and unwarranted expansion of Section 50." Appellee's Brief, at 31. Although it is not entirely clear what a "roving lien" is, as the United States District Court for the Southern District of New York and the Minnesota Supreme Court clearly understood, an attorney's lien on a patent or patent application would operate no differently than a tax lien, a mechanic's lien or a contractual lien. The lien would not "rove" but would attach to a specific piece of property: a patent application and any patent issued in respect thereof. There is public notice of any such lien, because any person interested in purchase or licensing the patent can examine the public record at the USPTO and see what attorney filed the patent. Like a tax lien, an attorney's lien would

---

[5] This is much like the Bankruptcy Court's simple ignoring of *Webber*.

10

become choate once the patent application was no longer contingent and unliquidated, either when the patent issued or when the patent or patent applications were sold, thereby affixing a value to the property. Finally, it should also be clear that the Liqudiating Supervisor's argument regarding a secret or roving lien is an attempt by the Debtor, which has not paid its legal bill, to interpose concerns of third parties (potential purchasers of patents) to avoid payment.

### III. The Massachusetts Attorney's Lien Statute provides for a lien on proceeds of patents and patent applications.

Turning to the Liquidating Supervisor's primary arguments regarding the extension of the attorney's lien to proceeds, it is the Liquidating Supervisor who proposes a rule that would have the attorney's lien operate differently from every other kind of lien. A lien typically operates by giving the secured party a right to any proceeds of the sale of collateral, as well as a continuing interest in the property in the hands of the seller. That is what it means to have a right in the property to secure payment. There is nothing nefarious about this concept; it is fundamentally how liens operate in our legal system.

The simple and straightforward language of the Massachusetts Attorney's Lien Statute comports with this basic understanding. The Liquidating Supervisor instead urges the court to limit the scope of the phrase "proceeds derived therefrom" in a way that curtails the broad intention of the statute. The statute clearly states that the lien is "upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and *upon the proceeds derived therefrom*." Mass. Gen. Laws ch. 221, § 50 (emphasis added). If there is any doubt concerning the meaning of this provision, it is allayed by reference to a companion provision of the statute. Section 50A of chapter 221 of the Massachusetts General Laws,

11

which addresses the liability of the Commonwealth and its political subdivisions for an attorney's lien, provides in pertinent part:

> Payment by the commonwealth or by any political subdivision thereof to a client in full or in settlement of any claim, counterclaim, cause of action, judgment, execution, order or decree shall discharge the commonwealth or such political subdivision from all liability *on account of any attorney's liens thereon or on the proceeds derived therefrom*….

Mass. Gen. Laws ch. 221, § 50A (emphasis added). Both the words "thereon" and "therefrom" plainly refer back to all elements of the enumerated subjects of the attorney's lien under Section 50: "claim, counterclaim, cause of action, judgment, execution, order or decree." The parallel construction "*liens thereon* and *on* the proceeds derived therefrom" leaves no doubt that the attorney's lien attaches to any proceeds of each item in the list.[6] The Supreme Court of the United States has just recently reminded that

> Statutory construction is a holistic endeavor…A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in the context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

*Koons Buick Pontiac GMC, Inc. v. Nigh,* 125 S.Ct. 460, 466–67 (2004) (internal quotations and cites omitted). This Court should interpret Section 50 in light of Section 50A and find that the Massachusetts Attorney's Lien Statute grants a lien on the proceeds of claims, counterclaims and causes of action.

By the plain language of the Massachusetts Attorney's Lien Statute as interpreted in the overall statutory framework — and specifically in tandem with Section

---

[6] The Liquidating Supervisor incorrectly argues that the language of Section 50A supports the argument that an attorney's lien may attach to a payment in settlement of a claim only because a court would enter an order of settlement. Section 50A explicitly contemplates that an attorney's lien may attach not only to amounts paid in settlement of claims, but also to amounts paid *in full* on such claims. In such circumstances, a court would likely not enter an order of settlement, but instead simply dismiss the case.

50A — an attorney's lien would apply to the proceeds of any such sale. Such a lien would be treated in bankruptcy like any other secured interest.

IV.    **Certification to the Supreme Judicial Court of all state law issues raised in this appeal is appropriate.**

The decision to grant a motion to certify questions to a state's highest court "rests in the sound discretion of the federal court." *Stewart v. Milford-Whitinsville Hospital*, No. Civ.A.00-4021-NMG, 2004 WL 2181588 (D. Mass Aug. 3, 2004) at *2 (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). As a general rule, certification is proper when there is no controlling precedent on an issue which might prove dispositive to the disputed claim or cause of action before the certifying court. *See, United States Steel v. DeMatteo Const. Co.*, 315 F.3d 43, 53 (1st Cir. 2002) (quoting *Nett v. Belucci*, 269 F.3d 1, 8 (1st Cir. 2001)). Such is the case here. There is no controlling precedent for the question whether the protections of the Massachusetts Attorney's Lien Statute extend to patent prosecution work, or even any authority on the operation of the statute in federal administrative proceedings generally. This question hinges both on the application of the Massachusetts law of conflicts and on the interpretation of the Massachusetts Attorney's Lien Statute itself. At the same time, the answer to this question is entirely dispositive of this appeal and the underlying motion of the Liquidating Supervisor objecting to R&G's secured claim. These facts satisfy the standards for certification both in this Court and in the Supreme Judicial Court of the Commonwealth of Massachusetts. *See Mass. S.J.C.R.*, 1:03.

Courts also recognize that certification is particularly warranted when the issue at hand requires a federal court to predict "novel" or "trailblazing" issues of state law. *See, e.g., U.S. Steel*, 315 F.3d at 53–54; *Dow v. Donovan*, 150 F. Supp.2d 249, 260 (D. Mass.

13

2001). This appeal not only presents a matter of first impression under Massachusetts law, but also has broad implications for the practice of Massachusetts patent attorneys and the efficient operation of the patent system. By its very nature, attorneys often do patent prosecution work for new business ventures that are not on the soundest financial footing. In addition, the innovation promoted by the patent system necessarily entails substantial risk: not all patent applications will be granted by the PTO and not all patented inventions will prove commercially successful. Under these circumstances, patent attorneys naturally have concerns about getting paid. A holding that the fees and expenses of Massachusetts patent attorneys are secured under the Massachusetts Attorney's Lien Statute would encourage patent attorneys to take risks on clients they would otherwise avoid, thereby expand the availability of legal services to inventors and promoting the very innovation the patent system is intended to support.

Finally, R&G submits that certification to the Massachusetts Supreme Judicial Court is uniquely appropriate in this case, which involves not just any novel question of Massachusetts law, but a question of first impression regarding the attorney-client relationship. The conduct of this relationship is under the direct regulatory authority and supervision of the Supreme Judicial Court. Consequently, certification of the state law issues in this appeal will not only ensure a correct outcome in this case, but will provide authoritative guidance to the bar of the Commonwealth of Massachusetts and to the bar of this Court.

## **CONCLUSION**

The Liquidating Supervisor attempts to persuade the Court that certification is not appropriate because it would add "needless 'time and expense to litigation that is already overly long and overly expensive.'" Appellee's Brief, at 34. Indeed, persisting in the

mistaken view that this is an interlocutory appeal, he has retreated from his earlier point of view and now questions whether the appeal "is worth the time or trouble for either side, or for this Court." *Id.* at 2. In defense of this new position, the Liquidating Supervisor raises the point that the final recovery to unsecured creditors in the Debtors' bankruptcy cases may render the issue of R&G's secured claim moot. R&G would remind the Court that this appeal was taken from the Liquidating Supervisor's own motion. If R&G's status as a secured creditor might ultimately prove of no consequence, why did the Liquidating Supervisor file its objection to R&G's secured claim in the first place? The Liquidating Supervisor is in no position to complain of the costs that he himself has imposed on the parties at his own election. Nor should R&G, having been compelled to defend its secured claim by the Liquidating Supervisor, now be denied the opportunity to pursue its legal rights to their fullest extent. Any recoveries to the Debtors' unsecured creditors are the merest speculation at this point. R&G's appeal, in contrast, is now properly before this Court and deserves to be addressed on the merits.

Respectfully submitted,

ROPES & GRAY LLP

By: /s/ Stephen Moeller-Sally
D. Ross Martin (BBO#629853)
Stephen Moeller Sally (BBO#652383)
One International Place
Boston, MA 02100-2624
Telephone: (617) 951-7000