FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 SEP 30 P 12: 21

U.S. DISTRICT COURT
DISTRICT OF MASS.

In re:

ENGAGE INC., et al.,

Debtors.

Case Nos. 03-43655-JBR,
*et seq.*

Chapter 11

ROPES & GRAY LLP, Appellant

v.

Case No. 04-cv-40225-DPW

CRAIG J. JALBERT,
*as Liquidating Supervisor*, Appellee

## NOTICE OF APPEAL TO
## UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

Ropes & Gray LLP ("R&G"), a creditor and party in interest herein, appeals to the United States Court of Appeals for the First Circuit from the final judgment of the district court for the district of Massachusetts, entered in this case on September 1, 2005, affirming the bankruptcy court's determination that R&G's claim for attorneys' fees owed by the above-referenced debtor are unsecured [Docket No. 20] (the "Judgment"). A copy of the Judgment and the accompanying Memorandum and Order [Docket No. 19] are attached hereto as Exhibit A and Exhibit B, respectively.

The names of all parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

    Party:    Craig J. Jalbert, as Liquidating Supervisor
    Attorney:    Andrew Z. Schwartz
                Foley Hoag LLP
                Seaport World Trade Center West
                155 Seaport Boulevard
                Boston, Massachusetts 02110
                (617) 832-1000

                                  ROPES & GRAY LLP

Dated: September 30, 2005        _____
                                    D. Ross Martin (BBO#629853)
                                    ROPES & GRAY LLP
                                    One International Place
                                    Boston, Massachusetts 02110
                                    Telephone:  617-951-7000
                                    Telecopier:  617-951-7050

## Notices

**4:04-cv-40225-DPW In Re: Engage Inc., et al CASE CLOSED on 09/01/2005**

United States District Court

District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Moeller-Sally, Stephen entered on 9/30/2005 at 11:3  .M EDT and filed on 9/30/2005
**Case Name:**       In Re: Engage Inc., et al
**Case Number:**     4:04-cv-40225
**Filer:**           Ropes & Gray LLP
**WARNING: CASE CLOSED on 09/01/2005**
**Document Number:** 21

**Docket Text:**
NOTICE OF APPEAL as to [20] Judgment by Ropes & Gray LLP. $ 255 NOTICE TO COUNSEL A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals site at http://www.ca1.uscourts.gov/clerks/transcript.htm MUST be completed and submitted to the Court of Appeals. Appeal Record due by 10/20/2005. (Attachments: # (1) Exhibit A# (2) Exhibit B (Moeller-Sally, Stephen)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=9/30/2005] [FileNumber=1145531-0
] [38dce3ecdb88168e5f97e7dc31baa4f0512187d0246c61710647273dc1ab1fa76d8
be2e5a3a3d309b9a3f20a230b949cd3efb9590f922138c3546f5ccfaadc09]]
**Document description:** Exhibit A
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=9/30/2005] [FileNumber=1145531-1
] [7daa2b092b852c1c37910e23769ee9182581b1053c860eb9e5705c3a0d8f27709ab
aebd419f4773e933b17420bb78d6d5f9b6644fc575b732dfe5ec56902c1f1]]
**Document description:** Exhibit B
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=9/30/2005] [FileNumber=1145531-2
] [93eaf3e63b900b66321abcd88e929fcadcce1e980bae3617cf675836c7efa202d97
03020c9d562c855f6c2f81318c77c4d513dcc897b707c4b92a3373dfe052d]]

**4:04-cv-40225 Notice will be electronically mailed to:**

Richard W. Benka     bctnotices@foleyhoag.com, azs@foleyhoag.com; rwb@foleyhoag.com;

edalmani@foleyhoag.com

D. Ross Martin    RMartin@ropesgray.com

Stephen Moeller-Sally    ssally@ropesgray.com

**4:04-cv-40225 Notice will not be electronically mailed to:**

Andrew Z. Schwartz
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210-2600

United States Bankruptcy Court
595 Main Street
Worcester, MA 01608

**EXHIBIT A**

Case 4:04-cv-40225-DPW    Document 23    Filed 09/30/2005    Page 5 of 20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br><br>ENGAGE INC., et al.,<br><br>Debtors.<br><br><br>ROPES & GRAY LLP, Appellant<br><br>v.<br><br>CRAIG J. JALBERT,<br>*as Liquidating Supervisor,* Appellee | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case Nos. 03-43655-JBR,<br>*et seq.*<br><br>Chapter 11<br><br><br><br><br><br>Case No. 04-cv-40225-DPW |

NOTICE OF APPEAL TO
<u>UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT</u>

Ropes & Gray LLP ("R&G"), a creditor and party in interest herein, appeals to the United States Court of Appeals for the First Circuit from the final judgment of the district court for the district of Massachusetts, entered in this case on September 1, 2005, affirming the bankruptcy court's determination that R&G's claim for attorneys' fees owed by the above-referenced debtor are unsecured [Docket No. 20] (the "Judgment"). A copy of the Judgment and the accompanying Memorandum and Order [Docket No. 19] are attached hereto as Exhibit A and Exhibit B, respectively.

-2-

The names of all parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| | |
|---|---|
| Party: | Craig J. Jalbert, as Liquidating Supervisor |
| Attorney: | Andrew Z. Schwartz |
| | Foley Hoag LLP |
| | Seaport World Trade Center West |
| | 155 Seaport Boulevard |
| | Boston, Massachusetts 02110 |
| | (617) 832-1000 |

ROPES & GRAY LLP

Dated: September 30, 2005        /s/ D. Ross Martin
                                 D. Ross Martin (BBO#629853)
                                 ROPES & GRAY LLP
                                 One International Place
                                 Boston, Massachusetts 02110
                                 Telephone:   617-951-7000
                                 Telecopier:  617-951-7050

**EXHIBIT B**

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


In re:                          )
                                )
ENGAGE INC., et al.,            )    Case Nos. 03-43655-JBR et seq.
     Debtors.                   )    Chapter 11
                                )
_____  )
                                )
ROPES & GRAY, LLP,              )
     Appellant,                 )
                                )
                                )    CIVIL ACTION NO.
          v.                    )    04-40225-DPW
                                )
CRAIG J. JALBERT,               )
as Liquidating Supervisor,      )
     Appellee.                  )
```

MEMORANDUM AND ORDER
September 1, 2005

In the underlying bankruptcy action from which it now appeals, Appellant Ropes & Gray, LLP ("R&G"), filed a secured claim against the debtor, Engage, Inc. ("Debtor"). R&G represented the Debtor in various patent prosecution proceedings before the United States Patent and Trademark Office ("USPTO"). R&G contended that its claim was secured by virtue of the Massachusetts attorney's lien statute, Mass. Gen. Laws ch. 221, § 50, which it argued afforded it a lien against the proceeds of various patents and patent applications sold by the debtor pre- and post-petition. The Liquidating Supervisor Craig Jalbert ("Liquidating Supervisor") objected to the secured claim and the

-1-

Bankruptcy Court sustained the objection. R&G appeals the decision of the Bankruptcy Court and, in conjunction with its appeal, has moved for the certification of various questions to the Massachusetts Supreme Judicial Court ("SJC").[1]

---

[1] R&G sought to have the following three questions -- which it asserted were determinative of the case and for which there was no controlling precedent in the decisions of the SJC - certified pursuant to Rule 1:03 of the Rules of the Supreme Judicial Court:

> 1. When a Massachusetts lawyer is representing a Massachusetts client before a federal administrative agency is the existence of an attorney's lien established by Massachusetts law or by the law of the state in which the federal agency's office happens to be located?
>
> 2. Does chapter 221, section 50 of the Massachusetts General Laws grant a Massachusetts attorney a lien on patents and patent applications for patent prosecution work performed on behalf of a client?
>
> 3. As a matter of Massachusetts statutory or common law, when a Massachusetts attorney has a lien on a particular cause of action or administrative proceeding, and the action or administrative rights are sold during the pendency of such action or proceeding (e.g., the sale of receivables during a collection action or sale of a patent application) is the attorney's lien extinguished or does it attach to the proceeds of the sale?

As R&G argues, there is no SJC decision squarely holding whether an attorney's lien attaches to patents and patent applications pursuant to the Massachusetts attorney's lien statute, Mass. Gen Laws ch. 221, § 50, which, based on my choice of law analysis, governs the resolution of this dispute. As will appear below, I find, however, that this issue, and the appeal itself, can be resolved through application of a well-developed body of case law from state and federal courts, including the SJC, interpreting the Massachusetts attorney's lien statute. See Losacco v. F.D. Rich Constr. Co., Inc., 992 F.2d 382, 384 (1st Cir. 1993) ("When the highest state court has not issued a definitive ruling on the precise issue at hand, the federal courts may refer to analogous decisions, considered dicta, scholarly works, or other reliable sources to ascertain how the highest court would rule. The decisions of intermediate state appellate courts are trustworthy

The success of R&G's appeal turns on the resolution of two issues: (1) whether the Virginia or the Massachusetts attorney's lien statute govern this dispute; and (2) if the Massachusetts statute governs, whether it grants an attorney representing a client in patent prosecution proceedings before the USPTO a lien on patents and patent applications related to that representation.

For the reasons set forth below, I depart from the Bankruptcy Court to conclude that the attorney's lien statute of Massachusetts, not Virginia, governs this action. I agree, however, with the Bankruptcy Court's alternative holding that no attorney's lien can arise in this case under Massachusetts law because patent prosecution before the USPTO cannot, by definition, yield the "judgment, decree or other order" necessary for a lien under this law to become enforceable. Accordingly, the decision of the Bankruptcy Court denying R&G a secured claim will be affirmed.

I. BACKGROUND

The findings of the Bankruptcy Court set the context for this dispute.

> On June 19, 2003, Engage, Inc. and five of its wholly-owned domestic subsidiaries (hereinafter the "Debtors") filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. Ropes & Gray (hereinafter "Ropes"), which provided legal services to the

---

data for ascertaining state law.") (internal citations omitted). I will deny, therefore, the motion by R&G for an order certifying questions to the SJC.

> Debtors in connection with the prosecution of various patents, was scheduled as a creditor in the Debtors' bankruptcy. Shortly after the petition was filed, substantially all of the Debtors' assets were sold to JDA Software Group, Inc. (hereinafter "JDA"). Ropes alleges it has an attorney's charging lien pursuant to Mass. Gen. Laws, ch. 221, § 50 in "(i) certain patents and patent prosecution actions of the Debtor and (ii) cash proceeds of a prepetition sale of other patents."[FN1] [Text of FN1: This pre-petition sale took place on February 20, 2003, approximately four months prior to the date of Debtors' Chapter 11 petition, and yielded $100,000 in cash proceeds.]
>
> Ropes timely filed a proof of claim asserting an attorney's charging lien in the amount of $108,737.11; $45,198.29 was for unpaid fees and expenses allegedly secured by the proceeds of the JDA Sale, with the remaining $63,538.82 for unpaid fees and expenses allegedly secured by the proceeds of the pre-petition sale. Ropes also asserted a secured claim in the amount of $737.50 for fees and expenses associated with collection costs pursuant to 11 U.S.C. § 506(b) as well as a general unsecured claim in the amount of $51,400.30 on account of licensing work for which Ropes was unpaid.
>
> This Court entered the Order Confirming Debtors' Seconded Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code on May 20, 2004. Paragraph 13 of this Confirmation Order authorized Craig Jalbert to serve as Liquidating Supervisor. His timely Objection to Ropes' secured claim and the Responses thereto ensued.

In re Engage, Inc., 315 B.R. 208, 210-11 (Bankr. D. Mass. 2004).

A few points of clarification are necessary. First, the pre-petition sale referenced above involved the sale by the Debtor not only of patents but also of patent applications pending in the USPTO. All of these patents and patent applications had been filed and prosecuted by R&G on behalf of the Debtor. Second, with respect to the post-petition sale of the remainder of Debtor's assets, a sale which included various patents and patent applications filed and prosecuted by R&G, the Bankruptcy Court ordered that the patents and patent applications

-4-

be sold free and clear of liens. The Bankruptcy Court ordered that a cash reserve be maintained in an amount equal to R&G's asserted lien, $108,737,11, thereby providing R&G with adequate protection in the event that the pending litigation over the existence and validity of the attorney's lien it asserted was resolved in its favor.

## II. DISCUSSION

### A. Jurisdiction

I find this Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). Section 28 U.S.C. § 158 (a) provides:

> The district courts of the United States shall have jurisdiction to hear appeals
> (1) from final judgments, orders, and decrees;
> (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
> (3) with leave of the court, from other interlocutory orders and decrees;
> and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Id. (footnote omitted).

R&G maintains that the decision of the Bankruptcy Court from which it appeals is a final order, appealable as of right under 28 U.S.C. § 158(a)(1). The Liquidating Supervisor, on the other hand, contends that order below was interlocutory -- analogous to the grant of partial summary judgement -- and therefore may not

-5-

be appealed as of right but only upon the exercise of the district court's discretion. I agree with the Liquidating Supervisor that the order below did not "conclusively determine" R&G's claim. Although the order was a final determination that R&G's claim was not secured -- and, therefore, not entitled to priority over unsecured claims -- it did not address and conclusively resolve the amount of the claim, a matter over which there is some dispute, despite the gloss R&G puts on the issue.

Had the Bankruptcy Court decided that (1) R&G was entitled to a specific dollar amount and (2) its claim for those monies was not secured, there is no question that the decision would constitute a final order from which an appeal could be taken as of right. See In re Morse Elec. Co., Inc., 805 F.2d 262, 264-65 (7th Cir. 1986) (holding that the "disposition of a creditor's claim in bankruptcy is 'final' for purposes of [28 U.S.C. § 158]" when the court has "accepted and valued" the claim and determined the creditor's position (i.e., secured or unsecured), because such an order "leaves a claimant nothing more than to await the outcome of third-party litigation") (internal quotations omitted).

Following the Bankruptcy Court's order sustaining the Liquidating Supervisor's objection, however, R&G could not simply sit on the sidelines and await payment on its claim, subject to proration only based on the amount of assets available for distribution and the relative priority of the other unsecured

-6-

claims.  R&G still needed to establish the <u>amount</u> of its claim -- in the face of an objection by the Liquidating Supervisor to the amount originally alleged -- to the satisfaction of the Bankruptcy Court.

The decision of the Bankruptcy Court sustaining the objection by the Liquidating Supervisor to R&G's secured claim, therefore, is not a "final determination" of R&G's claim appealable as of right.  I will, however, exercise my discretion under § 158(a)(3) to hear the appeal because the legal issues are fully framed and their prompt resolution through interlocutory appeal is likely to contribute to a more expeditious resolution of the case.

**B. Choice of Law Analysis**

In the absence of any effective choice of law by the two contracting parties -- and apparently without any argument below by the parties that a conflict of law actually existed -- the Bankruptcy Court determined that under the applicable Massachusetts choice of law principles governing contracts, the attorney's lien law of Virginia, rather than that of Massachusetts, governed the relevant patent prosecution representation before the USPTO, whose offices are located in Alexandria, Virginia.  I review the Bankruptcy Court's decision regarding the appropriate choice of law de novo, but apply a clearly erroneous standard in the course of "reviewing the factual findings that underlie the choice of law determination."

Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005 (9th Cir. 2001).

In reaching the conclusion that the Virginia attorney's lien statute applied to proceedings in the USPTO, the Bankruptcy Court did not directly address the predicate question of which choice of law rules it should apply: "it's own (the 'federal common law') or those of the state in which it sits." In re Morse Tools, Inc., 108 B.R. 384, 385 (Bankr. D. Mass. 1989). Rather, it immediately applied the "'significant contacts' test" that it had determined was "the Massachusetts choice of law governing contracts." Engage, 315 B.R. at 212-13. This avoided the unsettled question regarding "whether or not a federal court exercising bankruptcy jurisdiction must follow the choice-of-law rules of the state in which it sits or the federal common law choice-of-law rules." In re American Metrocomm Corp., 274 B.R. 641, 659 n.16 (Bankr. D. Del. 2002); see also Morse Tool, 108 B.R. at 385 & n.1; In re Gaston & Snow, 243 F.3d 599, 605 & N.6, 607 (2d Cir. 2001) (holding that bankruptcy court, in the manner of a federal court sitting in diversity, should apply the choice of law rules of the forum state in which it sat, but "necessarily [limiting this] holding to cases where no significant federal policy, calling for the imposition of a federal conflicts rule, exists"). Because both the federal common law and Massachusetts law follow the "multiple factor, 'interest analysis' or 'most significant relationship' analysis exemplified by the Restatement (Second) of Conflict of Laws (1971))," Morse Tool, 108 B.R. at

-8-

385 (quoting <u>Bi-Rite Enterprises, Inc. v. Bruce Miner Co., Inc.</u>, 757 F.2d 440, at 442-43 (1st Cir. 1985)), however, this controversy need not be resolved for purposes of the present action. <u>See also</u> <u>Bushkin Assoc., Inc. v. Raytheon Co.</u>, 393 Mass 622, 632-33 (1985) (emphasizing the "choice-influencing factors listed in § 6(2) of the Restatement (Second) of Conflict of Laws in conducting choice of law analysis in contract action); <u>Nile v Nile</u>, 432 Mass. 390, 401 (2000) (in resolving breach of contract issue, "look[ing] to factors such as those enumerated in Restatement (Second) of Conflicts of Laws"). The choice of law question, whether as a matter of federal common law or Massachusetts, is resolved under the "most significant relationship," test set forth in the Restatement (Second) of Conflict of Laws § 188(1).

The Restatement sets forth the following examples of principles relevant to the choice of law analysis:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability, and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971). In circumstances such as those presented here, where the parties to a contract have failed to make an effective choice of law themselves, the Restatement states that the "contacts to be taken

-9-

into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

Id. at § 188(2). With respect to order of importance, the Restatement directs that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." Id.

In determining that Virginia law regarding attorney's liens applied pursuant to what it termed the "significant contacts" test called for under Massachusetts choice of law analysis, the Bankruptcy Court concluded:

> [a]lthough the only contact with Virginia may be that the Patent and Trademark Office is located there, the filing of the patent applications and obtaining of some patents are fundamental to Ropes' assertion of its lien. But for the patent applications, all of the fees are unsecured. Therefore, while there are more contacts with Massachusetts the Court finds that the most significant and meaningful one is with Virginia.

Engage, 315 B.R. at 213.[2] By referring to the applicable test as

---

[2] Before turning to Massachusetts choice of law analysis as an alternative, the Bankruptcy Court made its primary conclusion "[t]hat the law of the jurisdiction where judgment entered [i.e., Virginia] should control seems obvious: but for the judgment there is no right to enforce a charging lien." Engage, 315 B.R. at 212. The court reached this conclusion based on "[a] litany of authority suggest[ing] that the determination of what state law should apply to a given proceeding is a qualitative analysis determined by the 'law of the state in which the legal services are to be performed.'" Id. at 211-12. With respect to the question of where "the legal services are to be performed" when a law firm in state A represents its client in proceedings in state

-10-

"significant contacts," rather than as "significant relationship," the Bankruptcy Court appears to have focused too narrowly on where the most significant contact was found rather than on the state with the most significant relationship to the transaction.

A broader consideration of the relevant § 188(2) contacts leads to the conclusion that Massachusetts is the state with "the most significant relationship to the transaction and the parties under the principles stated in § 6"[3] and its laws will determine "[t]he rights and duties of the parties with respect to an issue in contract." Id. at § 188(1). Without mentioning the § 6

---

B, the court cited with approval a secondary source stating that:

> '[t]he generally accepted rule is that the existence and effect of an attorney's lien arising under such a contact is governed by the law of the place where the contract is to be performed, that is, where the contemplated action or proceeding is to be instituted, and not by the place where the contract was made...'

Id. at 212 (quoting E.H. Schopler, Annotation, Conflict of Laws as to Attorneys' Liens, 59 A.L.R. 2d 564, 1958 WL 11124 (1958) (footnotes omitted)). At the conclusion of this line of analysis, the court noted that "[a]pplying Massachusetts choice of law for contract actions leads to the same conclusion," Engage, 315 B.R. at 212, and proceeded to re-address the question employing Massachusetts choice of law principles.

[3]As set forth, supra, those principles are: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6(2) (1971).

principles or discussing how they applied, the Bankruptcy Court concluded that the "most significant and meaningful" contact was with Virginia because the patent applications and patents "fundamental to Ropes' assertion of its lien" were filed and obtained at the federal Patent and Trademark Office in Virginia. 315 B.R. at 213. I find this conclusion to be clearly erroneous.

In defense of the Bankruptcy Court's choice of Virginia law, the Liquidating Supervisor contends that "[n]o reasoned distinction can be drawn between the application of Virginia's lien law to proceedings before the USPTO, on the one hand, and the application of any state's attorney's lien law to a federal cause of action in a federal court sitting in that state." Brief of Appellee at 16. I disagree. The fundamental distinction to be drawn is that the USPTO is a nationwide federal administrative agency, not a court sitting within a particular state. Proceedings in the USPTO are governed by its own laws, rules, Code of Professional Responsibility, and admissions standards, which allow for attorneys and non-attorneys alike to register to practice before the Office. Unlike the customary approach of the local rules of United States District Courts, they do not incorporate particular state rules by reference.

The needs of the interstate system, the initial § 6(2) principle, would be compromised, rather than advanced, by finding that Virginia attorney's lien law governs all proceedings in the USPTO. Such a holding potentially would give nationwide effect, at least within this federal field of practice, to the policy