determination of a single state regarding the tools available for attorneys to collect fees for work performed. To the extent that other states whose attorneys practice in the field of patent law -- and, consequently, appear before the USPTO -- have attorney's lien statutes allowing for such liens to attach in patent prosecution work, a finding that Virginia attorney's lien law applies to all USPTO proceedings would defeat the related principle of advancing "relevant policies of other interested states." § 6(2)(c). Although this result might tend to enhance "certainty, predictability, and uniformity of result," another of the § 6(2) principles, it would only do so if all states accepted the extrajurisdictional reach of Virginia attorney's lien law with respect to USPTO proceedings. See Bushkin, 393 Mass. at 635 (finding § 6(2) uniformity principle not advanced where other jurisdictions had not accepted analogous "extrajurisdictional reach"). Courts in two states, Minnesota and New York, have held that their own attorney's lien law applies to representation of clients in patent proceedings before the USPTO. Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Products, Inc., 295 N.W.2d 514, 516 (Minn. 1980); Hedman, Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l Inc., No. 92 Civ. 2757, 1994 WL 18536, at *1, *4 (S.D.N.Y. Jan. 14, 1994), modified by 1995 WL 555702 (S.D.N.Y. Sept. 18, 1995).

In addition to consideration of the "relevant policies," § 6(2)(c) suggests a balancing test to identify "the relative

-13-

interests of [other interested] states in the determination of the particular issue." Neither the Bankruptcy Court nor the appellee explain why Virginia would have an interest in this "particular issue" in the first place, much less why its interest should be found paramount. No Virginia parties or counsel appeared in the federal administrative proceedings at issue, no Virginia law was applied, and none of the Virginia's mechanisms for regulating the legal profession were employed. In a head-to-head comparison with Massachusetts, whose attorneys appeared in the action, it is difficult to see how Virginia law should prevail.

Section 6(2)(b), the "relevant policies of the forum" principle, also weighs in favor of applying Massachusetts law in this instance.[4] As discussed by the Bankruptcy Court and conceded by R&G, if Virginia attorney's lien law applies to all proceedings in the USPTO, it would not be possible for R&G -- or for an attorney from any other state, for that matter -- to effect a lien based on representing a client in that forum.[5] The

---

[4] I am assuming, for purposes of this analysis, that the USPTO is the forum.

[5] The Virginia attorney's lien statute, set forth below in relevant part, only allows for such liens when the attorney represents a client in a tort action, an action to recover liquidated or unliquidated damages in contract, or a divorce action, therefore excluding patent prosecution actions before the USPTO.

Any person having or claiming a right of action sounding in

-14-

Consolidated Patent Rules applicable to patent prosecution proceedings in the USPTO indicate that the forum contemplated a different result. Rule 10.64, titled "Avoiding acquisition of interest in litigation or proceeding before the Office," provide that:

> (a) A practitioner shall not acquire a proprietary interest in the subject matter of a proceeding before the Office which the practitioner is conducting for a client, except that the practitioner may:
> (1) Acquire a lien granted by law to secure the practitioner's fee or expenses; or
> (2) Contract with a client for a reasonable contingent fee; or
> (3) In a patent case, take an interest in the patent as part of all of his or her fee.

37 C.F.R. § 10.64 (2005). By carving out an exception for attorney's liens from the general prohibition against practitioners "acquiring a proprietary interest" in patent claims

---

> tort, or for liquidated or unliquidated damages on contract or for a cause of action for annulment or divorce, may contract with any attorney to prosecute the same, and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause or action or claim. When any such contract is made, and written notice of the claim of such lien is given to the opposite party, his attorney or agent, any settlement or adjustment of the cause of action shall affect the existing law in respect to champertous contracts. In causes of action for annulment or divorce, an attorney may not exercise his claim until the divorce judgment is final and all residual disputes regarding marital property are concluded. Nothing in this section shall affect the existing law in respect to exemptions from creditor process under federal or state law.

Va. Code Ann. § 54.1-3932 (2004).

-15-

they prosecute for clients in the USPTO, the USPTO itself clearly indicated a policy choice permitting attorney's liens "granted by law." A determination that Virginia law regarding such liens governs all proceedings before the USPTO would render this choice a nullity.

The final § 6(2) principle necessary to address specifically, the "protection of justified expectations," is one the SJC has highlighted as a "significant consideration" in the choice of law analysis. Bushkin, 393 Mass. at 635. In support of its argument that the Bankruptcy Court's choice of law conclusion should be upheld, the Liquidating Supervisor points to a well-developed body of case law holding that the attorney's lien law of the state in which a lawsuit was brought -- and for cases commenced in federal court under diversity jurisdiction, the law of the state in which the federal court sits -- applies. See, e.g. American Metrocomm, 274 B.R. at 660-62; Great Lakes Transit Corp. v. Marceau, 154 F.2d 623, 626 (2d Cir. 1946); Peresipka v. Elgin, Joliet & Eastern Ry. Co., 231 F.2d 268, 271-72 (7th Cir. 1956); Lehigh & N.E. R. Co. v. Finnerty, 61 F.2d 289, 290 (3d Cir. 1932); Hoxsey v. Hoffpauir, 180 F.2d 84, 86 (5th Cir. 1950).

But the reasoning underlying these decisions implicates different considerations of intent and expectation. The bankruptcy court in American Metrocomm, for example, responded to and rejected the argument by the claimant law firm that the

-16-

attorney's lien law of Illinois applied.  Although the client representation contract was negotiated and executed at the law firm's office in Illinois and the client's case files were there the bankruptcy court found that the attorney's lien law of California and/or Louisiana, "the places where performance of the contract was intended, anticipated, and actually took place," applied:

> [] Duane Morris cannot argue that it had a justified expectation that only Illinois law would control.  As members of the legal profession, Duane Morris attorneys know, or should know, that they become subject to the professional rules of conduct in each state in which they appear on behalf of a client.  Two Illinois attorneys appeared on behalf of AMC in California, were admitted pro hac vice for that purpose, and therefore, agreed to abide by California's Rules of Professional Conduct.  One of the attorneys representing AMC is a member of the California Bar.  Cisco's action against AMC was transferred to Louisiana upon motion submitted by these attorneys.  At the same time, AMC's action against Cisco was pending in Louisiana. Therefore, Duane Morris should have reasonably expected that Louisiana and California might govern the determination of whether it has a valid lien on the Attorney Files.

Id. at 662.  See also Lehigh, 61 F.2d at 290 (holding that "the employment of an attorney of New Jersey and the bringing of suit in New Jersey indicate that the parties intended from the first that suit should be brought in that state.  And being brought there, the laws of that state control as to the lien."); Hoxsey, 180 F.2d at 86 (finding that "by his employment of counsel and the institution of suit in the Court in New York the appellant [client] became subject to the statutes of New York regulating

-17-

and controlling the attorney-client relationship with reference to the fixing and enforcing of the respective rights between the parties" and "Federal Courts sitting in a State enforce that State's statutes creating attorney's liens").

By contrast, the USPTO has its own standards of admission and Code of Professional Responsibility. Proceedings before the USPTO are governed by the agency's own rules and regulations. Attorneys appearing before the USPTO, therefore, would have a "justified expectation" of being subject to the USPTO rules of professional conduct. Absent some other basis -- for example, being admitted to practice in Virginia, representing a client from Virginia, specifically agreeing with a client that Virginia law governed the representation -- an attorney representing a client before the USPTO would have no rational basis for supposing that Virginia attorney's lien law governed the representation.

Furthermore -- and in contrast to an attorney representing a client in state or federal court proceedings in Virginia -- an attorney appearing in the USPTO would have received no prior notice that Virginia law might apply. While the caselaw is rife with decisions, as the Liquidating Supervisor points out, explaining the applicability of the attorney's lien law of the state in which <u>a suit</u> was brought to those proceedings, it contains not a single ruling -- other than the one that is the subject of this appeal -- holding that proceedings in the USPTO

-18-

are governed by Virginia attorney's lien law, or any other aspect of Virginia law for that matter.

Accordingly, pursuant to the "most significant relationship choice of law analysis applicable under both Massachusetts law and federal common law, I find that the USPTO proceedings at issue were governed by the attorney's lien law of Massachusetts, not Virginia.

### C. Applicability of Massachusetts Lien Statute to Patent Prosecution

To determine whether R&G has a valid lien against the proceeds of the patents and patent applications, it is necessary first to resolve whether the Massachusetts attorney's lien statute, Mass. Gen. Laws ch. 221, § 50, allows for a lien in patent prosecution work at all. The statute reads:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the <u>judgment</u>, <u>decree</u> or <u>other order</u> in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon request of the client or of the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien; provided, that the provisions of this sentence shall not apply to any case where the method of the determination of attorneys' fees is otherwise expressly provided by statute.

<u>Id.</u>

Prior to the enactment of the current attorney's lien statute in 1945, Massachusetts law provided for an attorney's lien only in limited circumstances:

-19-

> An attorney who is lawfully possessed of an execution, or who has prosecuted a suit to final judgment in favor of his client, shall have a lien thereon for the amount of his fees and disbursements in the cause, but this section shall not prevent the payment of the execution or judgment to the judgment creditor by a person who has no notice of the lien

R.L. 1902 ch. 165, § 48 (text available in statutory history annotation to Mass. Gen. Laws ch. 221, § 50 (West 1993)).

The current attorney's lien law is much broader in scope than its predecessor, allowing for such liens not only when attorneys represented their clients in court actions but also when they appeared for clients "in any proceeding before any state or federal department, board or commission." Mass. Gen. Laws ch. 221, § 50. The new law also expanded the range of terminal events upon which a lien could attach from only an execution or "final judgment" in favor of the client, to include a "judgment, decree or other order in his client's favor." Id. Thus, for example, if an attorney represented his client in proceedings before the Massachusetts State Board of Retirement and obtained a favorable decision awarding his client a lump sum payment, the attorney would have an attachment on that award pursuant to the attorney's lien statute for his reasonable fees and expenses related to representing his client in those proceedings.

The Bankruptcy Court agreed that the Massachusetts attorney's lien statute applies to administrative agency proceedings, citing both the "before any state or federal

-20-

department, board or commission" language in the statute, as well as an unpublished Appeals Court of Massachusetts decision finding that an attorney asserting a lien could satisfy the first of four requisite elements for an attorney's lien by appearing and rendering representation in an administrative agency. Engage, 315 B.R. at 213-14 (citing Gormley v. Wilkins, No. 00-P-1490, 2002 WL 31204473 at ***2 (Mass. App. Ct. Oct. 3, 2002)).

The Bankruptcy Court went on to list the "three additional requirements [that] must also be met" for an attorney to be entitled to such a lien: (1) the attorney's fees must be reasonable; (2) a judgment, decree or order must have entered in connection with the attorney's representation of the client; and (3) the judgment, decree or order must be in the client's favor. Engage, 315 B.R. at 214 (citing Gormley, 2002 WL 31204473 at ***2). It was on the second of these grounds that R&G's argument faltered, the Bankruptcy Court concluded. The court found that:

> the Massachusetts attorney's charging lien statute and the courts interpreting it have clearly stated that an attorney's lien can only exist and become choate when all of the elements are met. Ropes' inchoate lien would thus only mature and become choate if the patents, patent applications and the proceeds deriving therefrom rightly constitute a "judgment, decree or other order" pursuant to M.G.L. c. 221 § 50. They do not.

Id. at 215.

In explaining why it remained unconvinced that patent prosecution work "falls within the purview of the unambiguous terms of the statute," id. at 214, the Bankruptcy Court stated that:

-21-

> A patent does not order anyone to do anything or pay any money. Even if a patent could be deemed an order, however, the proceeds derived from its sale do not stem from the actual order of the Patent Office, but rather from the sale of the underlying intellectual property protected by the patent. Since allowance of the applications did not itself require or trigger the payment of any money and no judgment decree or other order entered in connection with Ropes' representation, it thus follows that no charging lien attached.

Id.

The Court concluded that "if Massachusetts law applies to this dispute,. . . Ropes has nothing more than an inchoate lien in the proceeds of its patents, applications and patent prosecution actions." Id. at 217.

Following de novo review of this issue, I conclude that R&G does not have even an inchoate lien on the "proceeds of [the] patents, applications and patent prosecution actions" pursuant to Mass. Gen. Laws ch. 221, § 50, because patent prosecution actions in the USPTO, by definition, cannot yield the sort of "judgment, decree or order" required for such a lien to be perfected.

The Massachusetts Supreme Judicial Court has clearly explained what sort of lien the Massachusetts statute allows. "[T]he type of lien created by G.L. c. 221, s 50, is a charging lien which binds the judgment or money decree for payment of expenses incurred and for services rendered by an attorney with respect to the particular action or suit." Torphy v. Reder, 357 Mass. 153, 156 (1970). In Torphy, an attorney petitioned to establish and enforce an attorney's lien under Mass. Gen. Laws ch. 221, § 50, against certain of his client's stock certificates

-22-

and bankbooks, which had been placed in escrow in a safety deposit box in the course of the underlying lawsuit and were removable only with the signature of counsel for both parties in that action.  Id. at 153-55.  The court in the underlying action determined that one-half of the property at issue, including the stock certificates and bankbooks placed in escrow, belonged to the client's wife, who had commenced the lawsuit.

Responding to his former attorney's petition for a lien on the escrowed property, the client argued that "since there was no decree in his favor there was nothing to which the statutory lien could attach."  Id. at 155-56.  The SJC agreed, and determined that the petitioning attorney "sought to assert, if anything, a possessory or retaining lien," as distinguished from the charging lien provided for by the statute.  Id. at 156.  The Court declined to resolve the open question of "[w]hether in this Commonwealth an attorney has a lien for his fees on the moneys, papers, books or other property of his client which come in to his possession," finding that no necessary lien could be claimed where, as in this case, the attorney held his client's property in conjunction with another and pursuant to a voluntarily assumed fiduciary duty as escrow agent.  Id.

In the teeth of this determination by the SJC that the charging lien available under Mass. Gen. Laws ch. 221, § 50, depends upon a "judgment or money decree" being entered in favor of the client in the "particular action or suit" for which the

attorney seeks compensation, R&G argues that the statute imposes no requirement for a "judgment, decree or other order" in order for such a lien to attach. To support this contention, the sole Massachusetts decision R&G relies on is Webber v. Napolitano, 321 Mass. 765 (1947), an SJC rescript opinion R&G contends "directly supports the conclusion that the attorney's lien applies to patent prosecution work." I disagree.

In Webber, an attorney brought suit in equity to recover $250 from his former client allegedly due as fees for legal services provided in obtaining a lodging house license for the client from the City of Boston Licensing Board. Id. at 766. The defendant-client filed a counterclaim alleging that the attorney "unreasonably, maliciously and without right retained possession of the lodging house keeper's license" issued in the name of the client for twenty days, despite the client's repeated demands that he release it, and thereby deprived the client of "earning any income from said lodging house" during that time period. Id. at 765. In response to the counterclaim, the attorney admitted that he had retained the license issued in his client's name but that he "did so legally as he had an attorney's lien on the said license as provided by [the Massachusetts attorney's lien statute]." Id.

The trial court entered judgment for the attorney on his claim, ordered the client to pay the attorney $250 -- which it found was "fair and reasonable compensation" for the services

-24-

rendered -- plus interest thereon, and dismissed the client's counterclaim. Id. The report of material facts by the trial court supporting its decision included the following findings:

> 'the plaintiff received from the licensing board a lodging house license which he obtained from the licensing commission for the benefit of his client the defendant, but I do not find that he retained said license unreasonably, maliciously and without right.'

Id. The defendant appealed the decision, contending that his counterclaim based on the attorney's retention of the license for twenty days was dismissed in error.

In affirming the decision of the trial court, the SJC held that:

> The decree is supported by the findings of material facts. These facts are not mutually inconsistent, nor are they plainly wrong or incompatible with the pleadings. They are not incompatible with the admission by the plaintiff of 'the alleged demands' by the defendant for the license or with the plaintiff's admission that he re[]tained possession of the license and refused to turn it over to the defendant. The admitted facts, which did not include the terms of the employment of the plaintiff by the defendant or the period of retention of the license by the plaintiff, did not require a finding that the plaintiff retained the license 'unreasonably, maliciously and without right.' This is true whether or not the plaintiff had any right under [the Massachusetts attorney's lien statute].

Id. at 765-66 (internal citation omitted). Based on this text, R&G argues that "[i]n Webber, the Supreme Judicial Court recognized that an attorney is entitled to a lien on economically valuable assets that are created by virtue of that attorney's services. Indeed, the Court acknowledged the existence of the lien both under the Massachusetts Attorney's Lien Statute and as

-25-

a matter of general equitable principles." Brief of Appellants at 16-17. That is, at best, a hopeful reading of the decision.

The ruling in Webber makes only glancing reference to the Massachusetts attorney's lien statute and then only to observe the statute was immaterial to the outcome.[6] This reference simply cannot support R&G's contention that the attorney's lien provided for by Mass. Gen. Laws ch. 221, § 50, extends to any "economically valuable assets [] created by virtue of that attorney's services." Webber cannot be read as a specific, affirmative finding by the court that the attorney had a lien on the license pursuant to the attorney's lien law. In concluding that a different result was not compelled by law, the SJC noted -- for purposes of completeness, presumably -- that the attorney's defense to the counterclaim did not depend on the rights he had, if any, to a lien on the license under that law.

Even if its interpretation of Webber as extending the Massachusetts attorney's lien law to "economically valuable assets that are created by virtue of that attorney's services" were accepted, R&G would bear a further burden. The patents and patent applications on which it asserts liens have since been sold. For R&G to prevail, therefore, requires another interpretive leap, a finding that the phrase "the proceeds derived therefrom" in the Massachusetts attorney's lien statute

---

[6]The Court reached its decision "whether or not the plaintiff had any right under [the Massachusetts attorney's lien statute]." Webber, 320 Mass. at 766.

-26-

has dual antecedents and thereby modifies both "judgment, decree and other order in his client's favor" (the phrase immediately preceding it) and also "[the] client's cause of action, counterclaim, or claim."  Such an interpretative undertaking is supported neither by precedent nor by logic.

The Bankruptcy Court rejected both this proposed interpretation and also the invitation by R&G to repudiate what it characterizes as "passing dictum" in a prior Bankruptcy Court decision finding that the phrase "the proceeds derived therefrom" in Mass. Gen. Law ch. 221, § 50, "modifies the prior phrase, 'upon the judgment, decree or other order . . .' only."  In re Leading Edge Products, Inc., 121 B.R. 128, 131 (Bankr. D. Mass. 1990), aff'd Civ. A. No. 90-13112-Z, 1991 WL 97459, at *1 (D. Mass. May 28, 1991).  In Leading Edge, a law firm asserted that it possessed an attorney's lien under Mass. Gen. Laws ch. 221, § 50, on the post-petition settlement of a breach of contract action it had commenced on behalf of the debtors pre-petition. The settlement entailed the mutual release of claims between the parties, "[t]here was no cash exchanged in the context of the settlement, and the litigation was voluntarily dismissed without judgment entering in favor of either party."  Leading Edge, 121 B.R. at 129.  As R&G does in the present action, the claimant attorneys in Leading Edge argued that the words "the proceeds derived therefrom" in the attorney's lien statute modified "cause of action, counterclaim or claim," not just "judgment, decree or other order."  Id. at 130.  The court did not accept this

-27-

reading, reasoning that:

> It seems likely to the Court that the drafters of section 5⟩ contemplated the existence of a fund, either made up of cas⟨ or capable of being reduced to cash, generated from a judgment, decree or other order, including an order approving a settlement. The benefit derived from the elimination of [the opposing party's claim against the Debtor in the breach of contract case] did not bring anything into the estate per se--it merely reduced the amount of money that had to be paid out of the Debtors' estate. The Court finds that this is not equivalent to "proceeds."

Id. at 131. In affirming the Bankruptcy Court's decision in Leading Edge, the district court held that:

> [] Leading Edge received no cash or cash equivalent as the result of the settlement. Rather, the benefit derived from the elimination of [the opposing party's] claim was merely the elimination of Leading Edge's debt to this creditor . . . . No case in Massachusetts recognizes such a benefit as attachable proceeds under the charging lien statute; all of the relevant cases apply the statute only to a cash fund. Indeed, the use in § 50 of the word "proceeds" (as opposed to a broader term, such as "benefits") indicates that the section's drafters contemplated such a fund.

Leading Edge, 1991 WL 97459, at *1.[7]

The reasoning employed by both courts in Leading Edge regarding the use of the word "proceeds" in the Massachusetts attorney's lien statute is fully consistent with the later

---

[7] The open question identified in the decision of the district court regarding whether an attorney's lien may attach pursuant to Mass. Gen. Laws ch. 221, § 50, to a pre-judgment settlement has since been answered, at least with respect to settlements that entail the filing of a stipulation of dismissal with prejudice pursuant to Mass. R. Civ. Pro. Rule 58. See, e.g., Craft v. Kane, 51 Mass. App. Ct. 648, 653 (Mass. App. Ct. 2001) (holding that "[b]ecause G.L. c. 221, § 50 expressly refers to judgments 'entered or made,' the stipulation of dismissal constituted a judgment within the meaning of the attorney's lien statute"); Phalon v. Technical Communications Corp., No. 9802553, 1999 WL 1326754, at *1, *3 (Mass. Super. Feb. 26, 1999).

decision by the Massachusetts Appeals Court in Cohen v. Lindsey, 38 Mass. App. Ct. 1, 4 (1995), where the attorney client prevailed. In Cohen, an attorney representing a landlord in an eviction action obtained a court-ordered injunction requiring the defendant-tenant to pay funds into an escrow account pending final resolution of the action. The attorney asserted a lien against the funds under Mass. Gen. Laws ch. 221, § 50. A creditor of the attorney's client challenged the asserted lien and the Superior Court denied the attorney the relief sought.

The Appeals Court reversed the lower court, finding that the attorney did have a lien on the court-ordered escrow account.

> [T]he judge ordered [the tenant] to pay $10,000 per month into the fund for the use and occupancy of the [subject property], subject to a final determination of each party's rights and liabilities. The order established the fund as potential security for [the landlord], pending an entry of final judgment in the case. The effect of the order was the same as an equitable attachment to reach and apply credits of [the tenant] to satisfy [the landlord's] claim. That the order actually required a transfer of funds in favor of [the attorney's] client differentiates the order from a simple attachment, which might not be the occasion of giving ground for an attorney's lien. . . . When, as occurred in this case, [the attorney's] efforts resulted in a fund available to satisfy [the client's] liability to the [challenging creditor], we may conclude from the language of the first sentence of G.L. c. 221, § 50, that the use of the fund for the payment of legal fees was appropriate.

Id. at 4-5 (internal citations omitted).

I concur in interpretation of the phrase "the proceeds derived therefrom" in Mass. Gen. Laws ch. 221, § 50, to modify only "the judgment, decree or other order in his client's favor." Indeed, finding otherwise would impermissibly expand the scope the attorney's lien statute beyond its plain terms. To be sure,

-29-

the drafters of the Massachusetts attorney's lien statute could have provided for an attorney's lien that attached not only to proceeds deriving from a "judgment, decree or other order in [the] client's favor" but also to the client's property. But the drafters chose not to do so.

One of the two cases relied upon by R&G that address whether an attorney's lien can attach to a patent, Schroder, 295 N.W.2d 514, involves just such an expansive statute. The Minnesota attorney's lien law at issue there provided that:

> An attorney has a lien for compensation whether the agreement for compensation is expressed or implied (1) upon the cause of action from the time of the service of the summons in the action, or the commencement of the proceeding, and (2) upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed, from the commencement of the action or proceeding, and, as against third parties, from the time of filing the notice of the lien claim, as provided in this section.

Minn. Stat. Ann. § 481.13(a) (2005). The decision by the Schroder court that the plaintiff law firm did have an attorney's charging lien on a patent "obtained in part because of [the law firm's] work on the application for the patent," Schroder, 295 N.W.2d at 515, is thus readily distinguishable.

As the Bankruptcy Court in this action noted, "[t]he language encompassed in the Minnesota statute is significantly broader than that contained in the Massachusetts statute." Engage, 315 B.R. at 215. Under Minnesota law, the reach of an attorney's lien extends to "the interest of the attorney's client in <u>any money or property</u> involved in or affected by any action or

-30-

proceeding in which the attorney may have been employed." Minn. Stat. Ann. § 481.13 (2005) (emphasis supplied). If that law were applicable to this action, it would vest R&G with an attorney's lien on the proceeds of the sale of Debtor's patents and patent applications, as those funds constitute "money . . . affected by [an] action or proceeding" in which R&G was employed, i.e., the patent prosecution proceedings before the USPTO. Under the more restrictive Massachusetts attorney's lien statute, however, a different result must obtain.

As a final matter, I note the effort by R&G to conflate the word "claim" in the text of the Massachusetts attorney's lien statute with the patent "claims" granted to the Debtor by the USPTO. As the Liquidating Supervisor points out and the Bankruptcy Court suggested, the proceeds that R&G seeks to attach stem from the underlying intellectual property of the Debtor, not from the "claim" it made before the USPTO for a patent protecting that property. "Claim" is a term of art in patent law, constituting a "formal statement describing the novel features of an invention and defining the scope of the patent's protection." Black's Law Dictionary 241 (7th ed. 1999).[8] Absent some

---

[8] It is this term of art definition that distinguishes Hedman, Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l Inc., 1994 WL 18536 (S.D.N.Y. 1994), the other case R&G relies upon for the proposition that a patent prosecution can give rise to an attorney's lien. The New York statute at issue in Hedman recognizes attorney's liens in a broad range of events capaciously stated: "verdict, report, determination, decision, judgment." N.Y. Judiciary Law § 475 (McKinney 1983). This language can be read to encompass the determination or decision to grant a patent for a claim.

principled basis or justification for substituting this specialized meaning of "claim" in patent law for the general one applicable to the litigation context,[9] I am not free to subject the attorney's lien statute to such a tortured interpretation. Cf. United Housing Foundation v. Forman, 421 U.S. 837, 848-851 (1975) (holding that housing transaction evidenced by shares called "stock" did not by that choice of nomenclature fall within securities law definition of "stock").

I conclude, therefore, that no attorney's lien under Mass. Gen. Laws ch. 221, § 50, attached in favor of R&G to the patents, patent applications, or proceeds from the sale of the same, based on R&G's representation of the Debtor in patent prosecution proceedings before the USPTO.

### III. CONCLUSION

For the reasons set forth more fully above, I affirm the determination of the Bankruptcy Court that the claim by R&G for attorney's fees owed by the debtor is unsecured.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[9] For example, "the assertion of an existing right;" "a demand for money or property to which one asserts a right;" "an interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing," id. at 240.